UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.

STEVEN D. GREEN                                                             DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Dismissal of the Indictment, Grand Jury Related Discovery, and Appropriate Sanctions (Docket #47).  Plaintiff has filed a response (Docket #50).  This matter is now ripe for adjudication.  For the reasons that follow, Defendant's Motion is DENIED.

## BACKGROUND

On October 26, 2006, Defendant filed a motion to quash grand jury subpoenas compelling the testimony of his father, stepmother, and brother.  Subpoenas were served on October 17, 2006, compelling testimony for October 24.  A supplemental motion to quash was filed on October 30, 2006, to include defendant's sister, who was subpoenaed on October 26 for testimony on November 1.  The Defendant argued that the testimony of his family was beyond the power of the grand jury to obtain because it related to the potential penalty phase and case in mitigation.  The Court denied the motion finding that "Green has failed to demonstrate that there is no reasonable possibility that the subpoenas to Green's [family] will produce information relevant to the general subject of the grand jury's investigation."

Defendant asserts that Defendant's various family members were questioned about the following topics when they testified before the grand jury:

- what kinds of books defendant read, include whether any books were about World War II

- whether defendant had problems or fights in school and the content of parent-teacher conferences

- whether or not defendant used illegal drugs or drank alcohol

- whether or not defendant had vision or hearing problems

- whether defendant was ever on medication

- whether defendant played with fire or fireworks

- defendant's relationship with his mother and whether or not she was upset about the charges against him

- why defendant moved in with his father

- where defendant lived at various times in his life

- what they and defendant talked about during post arrest visits and who was present

- why defendant joined the Army, whether he liked basic training, and whether he was interested in guns

- whether defendant had a learning disability

- "to tell positive things about" defendant

- whether other family or friends thought defendant was guilty

- whether defendant was a risk taker and whether he was smart

- whether defendant had any girlfriends

- whether defendant was ever violent

- whether or not defendant was cruel to animals

- defendant's high school extracurricular activities

Defendant also states that witnesses who have spoken to the defense after their grand jury

appearances indicated that they were questioned about various recorded calls Defendant made to them from jail.  The Defendant states that one witness was questioned about whether or not defense counsel had told her what to say, and asked why she had declined to be interviewed by the prosecution prior to testifying before the grand jury.  This witness indicated that she was promised by an FBI agent that if she talked with the FBI, she would not be subpoenaed to the grand jury, and that, relying on this assurance, she had talked with the FBI, but was still subpoenaed to testify.

On November 1, 2006, the indictment was returned.

After the indictment was returned, FBI Special Agent Frank Charles contacted the detention facility where Defendant is housed and asked that the facility respond to a grand jury subpoena that had been issued for telephone calls between October 6, 2006, and November 1, 2006.  Special Agent Charles also asked the facility to go back and search for phone calls to specific numbers.[1]

## ANALYSIS

The grand jury's responsibilities include "the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974).  "The law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498 U.S. 292, 300-01 (1991).  As an independent body, the grand jury remains "free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it." *United States v. Williams*, 504 U.S. 36, 48-49 (1992) (quoting *United States v. Dionisio*, 410 U.S. 1, 17-18

---

[1]  Defense counsel states that it understands that there is another outstanding grand jury subpoena for Defendant's military and psychiatric records.   However, the United States has provided information that this subpoena has been withdrawn.

(1973)).  "A court may not interfere with the grand jury's investigation so long as it is not the sole or dominant purpose of the grand jury to discover facts relating to a defendant's pending indictment." *United States v. Breitkreutz*, 977 F.2d 214, 217 (6th Cir. 1992) (internal quotation omitted).  "Dismissal of a grand jury indictment is appropriate only where a defendant can establish a long standing pattern of prosecutorial misconduct before a grand jury and actual prejudice." *United States v. Castro*, 908 F.3d 85, 89 (6th Cir. 1990).

"The court may authorize disclosure -- at a time, in a manner, and subject to any other conditions that it directs -- of a grand jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury."  FED. R. CRIM. P. 6(e)(3)(E)(ii).  The defendant bears the burden of showing that a particularized need exists for the production of grand jury transcripts which outweighs the policy of secrecy.  *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959).

## I.     GRAND JURY TESTIMONY

Defendant argues that much of the questioning of his family members appears to go to Defendant's "life history" or "the kinds of information that a mitigation investigator would be interested in to develop a social history for a capital case penalty phase."  The Court finds that although this testimony may relate to mitigation, these topics are relevant to the Defendant's ability to form the specific intent and premeditation to commit the crimes for which he was under investigation as well as factors regarding the Defendant's intent set forth in Title 18, United States Code, Sections 3591 and 3592.  *See United States v. Furrow*, 125 F. Supp. 2d 1170, 1175-76 (C.D. Ca. 2000) (finding testimony as to defendant's mental health; use of prescription medication, illicit drugs, and alcohol; and ability to behave as functioning member of society relevant to grand jury's

4

determination of defendant's ability to form criminal intent necessary to warrant charges ultimately

brought).

Furthermore, the scope of the grand jury's investigation in capital cases has expanded in light

of *Ring v. Arizona*. In *Ring*, the Court held that, for purposes of *Apprendi v. New Jersey*, 530 U.S.

466 (2000), aggravating factors operate as the functional equivalent of an element of a greater

offense, and therefore must be found by a jury under the Sixth Amendment. *Ring v. Ariz.*, 536 U.S.

584, 609 (2002). In federal prosecutions an aggravating factor must be charged in the indictment.

*United States v. Cotton*, 535 U.S. 625, 627 (2002). Therefore, relevant evidence on those factors

must be presented to the grand jury.

Defendant also argues that grand jury misuse occurred where a witness was questioned about

why she had refused to meet with the prosecutors before her grand jury testimony. Defendant claims

that this witness had been led to believe that if she spoke with FBI agents she would not be

subpoenaed to testify before the grand jury. Defendant states that although the witness did talk to

the FBI agents, she was still subpoenaed to testify. However, Defendant has "offered nothing

beyond [his] own unproved suspicions to prove that [the witness was] improperly summoned before

the grand jury for the sole or dominant purpose of preparing the pending indictment[] for trial."

*Breitkreutz*, 977 F.2d at 214 (internal quotation omitted).

As the Defendant has failed to provide any evidence other than his unsupported assertions

that the sole or dominant purpose of this testimony was to discover facts relating to the Defendant's

pending indictment, this Court will refuse to interfere with the grand jury's functions.[2] *See*

---

[2] As the Government correctly notes, the Defendant has failed to attach an affidavit,
declaration, or an exhibit or file a sworn motion to support his contentions.

5

*Breitkreutz*, 977 F.2d at 217.

## II.   GRAND JURY SUBPOENAS

Defendant argues that the government abused the power of the grand jury in seeking compliance with subpoenas for recorded telephone calls after return of the indictment.  In support of his argument, Defendant attaches a letter from FBI Special Agent Frank Charles to Defendant's detention facility dated November 16, 2006.  In the letter Special Agent Charles indicates that there have been three grand jury subpoenas issued to the detention facility and notes that the last of these subpoenas is still outstanding.    Special Agent Charles states in the letter that:

> Review of the recordings from the first two subpoenas reveals GREEN talking about calls to his brother [] and his sister [].  GREEN makes reference to talking with both of them, but we don't have any of these calls on the two (2) CD's that we have received from the jail.  Would it be possible to go back and search for phone calls to these specific numbers during the period of the above subpoenas?

> Also, if able, please advise if GREEN is able to use more than one phone call to make each of his calls, especially from a phone line that is not recorded/not located in his cell.

"Once a targeted individual has been indicted, the government must cease its use of the grand jury in preparing its case for trial."  *United States v. Phibbs*, 999 F.2d 1053, 1077 (6th Cir. 1993).  Defendant was indicted on November 1, 2006, thus, the government was required to cease its use of grand jury subpoenas on that date.  Although Special Agent Charles' letter of November 16, 2006, references the grand jury subpoenas, in the letter he does not state that he is seeking compliance with the subpoenas.  The only affirmative action that the letter asks the detention facility to undertake is to advise if Defendant is able to use more than one phone to make calls.  Thus, this Court finds that Special Agent Charles did not invoke the power of the grand jury subpoena and therefore no abuse of the grand jury power occurred.   Accordingly Defendant has failed to demonstrate that a

particularized need exists for the production of the grand jury transcripts which would outweigh the policy of secrecy.  *See Pittsburgh Plate Glass Co.*, 360 U.S. at 400.

## III.    INSTRUCTIONS TO THE GRAND JURY

Defendant states that the prosecution may have improperly instructed the grand jury if the grand jury was not informed that its decision to return "special findings" as to aggravating factors would make Defendant eligible for capital punishment.

An indictment need only charge the elements necessary to constitute the offense and need not charge the ultimate punishment sought for the offense committed.  Specifically, the Supreme Court has stated:

> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, so long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."

*Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).

In *United States v. Haynes*, the defendant argued that grand jury could not fulfill its role as a check on prosecutorial power because there was no indication that the grand jury knew that its special findings might make defendant eligible for the death penalty.  269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003).  The court finding no authority in support of the defendant's proposition and rejecting defendant's argument, stated:

> The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense.

*Id.* (citing *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972); *Stirone v. United States*, 361 U.S. 212,

217-19 (1960)).

This Court finds that the prosecutors were not required to inform the grand jury that its decision to return "special findings" as to aggravating factors would make Defendant eligible for capital punishment.  Accordingly Defendant has failed to demonstrate that a particularized need exists for the production of the grand jury transcripts which would outweigh the policy of secrecy. *See Pittsburgh Plate Glass Co.*, 360 U.S. at 400.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion is DENIED.

An appropriate order shall issue.