UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                                                           PLAINTIFF

v.

STEVEN D. GREEN                                                      DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's Motion to Dismiss (Docket #92). The Government has filed a response (Docket #108) to which Defendant has replied (Docket #125). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Dismiss is DENIED.

**BACKGROUND**

On February 16, 2005, Defendant enlisted in the U.S. Army, 101st Airborne Division. In September 2005, Defendant was deployed to Iraq. On April 14, 2006, Defendant's Company Commander, Captain John Goodwin, notified Defendant that Goodwin was initiating action to separate Defendant from the military for a personality disorder pursuant to Army Regulation 635-2005-13. On April 2, 2006, Brigade Commander, Colonel Todd Ebel, requested Defendant's release from theater in Iraq on grounds of a discharge for personality disorder. After his arrival at Ft. Campbell, Defendant was administratively out-processed and discharged from the Army on May 16, 2006.

Approximately five weeks after Defendant's discharge, U.S. Army command in Mahmoudiyah, Iraq, first received information that Defendant was involved in the rape and murder of an Iraqi family in Yousifiyah, Iraq. Defendant's co-conspirators, who were all still in the Army

and subject to the Uniform Code of Military Justice ("UCMJ"), were interviewed by the Army's Criminal Investigation Division and criminally charged on June 6, 2006. On June 30, 2006, a sealed criminal complaint was filed in the Western District of Kentucky charging Defendant with numerous violations of the Military Extraterritorial Jurisdiction Act ("MEJA") for his role in the Yousifiyah offenses. Defendant was arrested and made initial appearance on July 3, 2006, in the Western District of North Carolina. An agreement was reached to waive venue. On November 7, 2006, an indictment was returned against Defendant charging him with sixteen counts of conspiracy, aggravated sexual abuse, premeditated murder, and firearm charges pursuant to MEJA, and an additional count of obstruction of justice under 18 U.S.C. § 1512(c)(1).

Defendant's co-conspirators Sergeant Paul Cortez, Specialist James Barker, and Private First Class Jesse Spielman, all tried for rape and murder, were convicted by courts-martial. Cortez was sentenced to life without parole while Barker and Spielman were sentenced to life with possibility of parole. All three sentences were reduced pursuant to plea agreements to 100, 90, and 110 years imprisonment, respectfully. All are eligible for parole in ten years.

By letter dated February 15, 2007, Defendant volunteered to reenlist in the Army in order to subject himself to the military justice system. The Army declined to pursue this course of action.

## DISCUSSION

Defendant moves this Court, pursuant to Article I, § 1; Article II, § 1; Article III, § 1, and the Fifth Amendment to the Constitution of the United States, to dismiss the indictment on the ground that 18 U.S.C. § 3262, on its face and as applied by the Government in this case, is violative of the separation-of-powers principle; the nondelegation doctrine; and the Due Process Clause of the Fifth Amendment.

Article 2(a)(1) of the UCMJ, 10 U.S.C. § 802(a)(1), extends military criminal jurisdiction to members of the armed forces in the Iraqi theater of war. Article 2(a)(10), 10 U.S.C. § 802(a)(10), extends military criminal jurisdiction to civilians "serving with or accompanying an armed force in the field" in the Iraqi theater of war.

MEJA extends civilian criminal jurisdiction to military personnel in the Iraqi theater of war. It provides, in pertinent part:

> (a) Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States --
>
> (1) while employed by or accompanying the Armed Forces outside the United States; or
>
> (2) while a member of the Armed Forces subject to chapter 47 of title 10 [10 U.S.C. §§ 801 et seq.] (the Uniform Code of Military Justice),
>
> shall be punished as provided for that offense.

18 U.S.C. § 3261. No prosecution may be commenced against a member of the Armed Forces unless he is no longer subject to the UCMJ at the time of indictment or information or if he committed the offense with one or more other defendants, at least one of whom is not subject to the UCMJ. 18 U.S.C. § 3261(d).

**I.      SEPARATION OF POWERS**

Defendant argues that MEJA constitutes an unconstitutional delegation by Congress to the Executive of the exclusive power and responsibility of Congress to define crimes, ranges and types of punishments, and adjudicative procedures. Defendant asserts that MEJA provides no standards to constrain administrative discretion, granting the Executive Branch unfettered discretion to prosecute crimes committed outside the United States by members of the Armed Forces under either

3

the Federal Criminal Code and Federal Rules of Criminal Procedure or the Uniform Code of Military Justice.

The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1. It is well-settled that this provision bestows upon Congress the power to define crimes, determine the range and types of punishment, and regulate the practice and procedure of the courts. *Mistretta v. United States*, 488 U.S. 361, 364 (1989); *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 9 (1941).

The Constitution divides the delegated powers of the federal government into three defined categories: Legislative, Executive, and Judicial. *INS v. Chadha*, 462 U.S. 919, 951 (1983). The Supreme Court "consistently has given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty. *Mistretta*, 488 U.S. at 380. Thus, the courts remain guarded against the exercise by one branch of any power assigned to another. *Id.* at 382. Likewise, one branch is not allowed to impair another's exercise of its constitutionally delegated powers. *Loving v. United States*, 517 U.S. 748, 757-58 (1996).

Just as neither the Executive nor the Judiciary may arrogate unto itself the power of the Legislative Branch, Congress is forbidden by the separation of powers doctrine from voluntarily abdicating its responsibility to another branch of government. "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government. . . . [W]e have long insisted that 'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta*, 488 U.S. at 371-72 (quoting *Field v. Clark*, 143 U.S. 649, 692 (1892)).

It is not an unconstitutional delegation of legislative power for Congress to legislate "in broad terms, leaving a certain degree of discretion to executive or judicial actors." *Touby v. United States*, 500 U.S. 160, 165 (1991). So long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform, such legislative action is not a forbidden delegation of legislative power."[1] *Id.* (quoting *J. W. Hampton, Jr., & Co., v. United States*, 276 U.S. 394, 409 (1928))."

MEJA specifically limits its application against members of the Armed Forces to only those no longer subject to the UCMJ at the time of the indictment or information or to those who committed the subject offense with at least one other defendant who is not subject to the UCMJ. 18 U.S.C. §§ 3261(a) and (d). Thus, the only possible discretion provided to the Executive is whether to extend civilian criminal jurisdiction to members of the armed forces who commit the subject crime with a defendant not subject to the UCMJ; alternatively these defendants would be subject to military criminal jurisdiction under the UCMJ. MEJA provides no discretion to the Executive in the case of a former member of the armed forces like Defendant; such a person is subject to civilian criminal jurisdiction only. 18 U.S.C. § 3261(d); *see also United States ex. rel. Toth v. Quarles*, 350 U.S. 11, 23 (1955).

The Executive's discretion to prosecute a member of the armed forces who committed the subject crime with a defendant not subject to the UCMJ under either the civil criminal system or the military criminal system is not a legislative responsibility that would be prohibited by the non-delegation principle. The Supreme Court "has long recognized that when an act violates more than

---

[1] Defendant, citing *Touby v. United States*, argues that in the criminal context more than an "intelligible principle" is necessary; however the Court specifically declined to address that issue. *Touby*, 500 U.S. at 166.

5

one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979). Such a decision rests within the discretion of the Executive. *Id.* at 124. "[T]here is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements." *Id.* at 125.

Therefore, this Court finds that MEJA does not violate the nondelegation doctrine.

## II.     EQUAL PROTECTION

Defendant argues that his prosecution in the civilian justice system violates equal protection as his alleged co-conspirators were subjected to prosecution in the military system. Defendant states that like his alleged co-conspirators, he was subject to the UCMJ when the offense was committed; however, the Government chose to discharge Defendant, a discretionary act, allowing the Government to prosecute Defendant in the civilian system. Defendant asserts that his alleged co-conspirators could have just as easily been discharged by the Government before commencing prosecution, but the Government chose not to do so. Defendant asserts that this grossly disparate treatment of similarly situated individuals is the epitome of a denial of equal protection of the law. The Government states that, although Defendant does not call it such, Defendant is making a selective prosecution claim.

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). A presumption of regularity supports the prosecutorial decisions of the Attorney General and United States Attorneys and, "in

the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464 (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)).

To make a selective prosecution claim, the defendant must provide clear evidence that the challenged prosecutorial decision was based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). The defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.* (quotation omitted). Furthermore, the Sixth Circuit requires a criminal defendant in this situation to "demonstrate that a government actor had a bad reason for enforcing the law against [him] and not against a similarly situated party," or that the "actor had no reason at all -- that the action had no rational basis." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004).

Here Defendant has failed to demonstrate that the Government had no rational basis for prosecuting Defendant under the civilian justice system. In *United States ex. rel. Toth v. Quarles*, 350 U.S. 11 (1955), the United States Supreme Court held that civilian ex-servicemen such as Defendant could not be subjected to trial by court-martial, finding that these civilians "are entitled to have the benefit of safeguards afforded those tried in the regular courts authorized by Article III of the Constitution."[2]  *Id.* at 23.

Defendant has also failed to demonstrate that the Government had a bad reason for trying him under the civilian justice system while his alleged co-conspirators were subjected to prosecution

---

[2] The Supreme Court stated that the courts have more independence in passing on the life and liberty of people than do military tribunals due to the degree of control that the Executive exerts over courts-martial.  *Toth*, 350 U.S. at 17.

in the military system. Defendant asserts his alleged co-conspirators cover-up of the offense led to his discharge. Defendant states that the Government's discovery indicates that Defendant confessed his involvement in the crime to Sergeant Yribe, head of a team investigating the incident, who failed to report Defendant's actions to superiors. Defendant further indicates that, instead of taking the proper steps to have Defendant prosecuted under the UCMJ, Sergeant Yribe told Defendant to "either get out of the Army or I"m going to help you do it." However, Defendant has not alleged any claims of improper motive on behalf of those Government actors involved in his prosecution. *See Boone*, 385 F.3d at 932.

Therefore, this Court finds that Defendant's prosecution in the civilian judicial system does not violate equal protection.

## III.   DUE PROCESS

Defendant argues that his prosecution in a civilian court amounts to a violation of both procedural and substantive due process because all of the post-crime events that enabled the United States to acquire jurisdiction in federal court were initiated by military or civilian personnel and not by Defendant.

The Fifth Amendment of the United States Constitution provides, in pertinent part, that "No person shall be . . . deprived of life, liberty, or property, without due process of law." "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). To prevail on a procedural due process claim, the defendant "must first establish that he has a property or liberty interest." *Guerra v. Scruggs*, 942 F.2d 270, 277 (4th Cir. 1991).

Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Courts have held that "an enlisted member of the armed forces does not have a property interest in [his] employment." *Canonica v. United States*, 41 Fed. Cl. 516, 524 (1998); *see Guerra*, 942 F.2d at 278; *Rich v. Sec'y of Army*, 735 F.2d 1220, 1226 (10th Cir. 1984). Thus, Defendant did not have a property interest in his continued status as a member of the armed forces.

An enlisted member of the armed forces may have a liberty interest in his employment. *Canonica*, 41 Fed. Cl. at 524. "This liberty interest prevents the military from discharging a service member without due process -- but only in cases where a 'stigma' would attach to the discharge." *Id.* Defendant does not argue that any stigma has attached because of his discharge and the Court notes that Defendant was given an honorable discharge.[3]

The substantive component of the Fifth Amendment's Due Process Clause "forbids the government to infringe certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). "[N]arrow tailoring is required only when fundamental rights are involved," if no fundamental right is involved, the government action must simply bear a reasonable relation to a legitimate governmental interest. *Id.* at 305-06.

---

[3] Even had Defendant argued that a stigma had attached because of the reason of his separation - a personality disorder - Defendant would have to demonstrate that the reason for his discharge was false in order to assert a liberty interest. *Guerra*, 942 F.2d at 278. Defendant has not made that showing.

To determine if an asserted right is fundamental, a court must consider two factors: (i) whether the asserted right is "deeply rooted in this Nation's history and tradition,"and (ii) whether the asserted right is "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal citations and quotations omitted). The list of fundamental rights is short, and includes "the right to marry, the right to have children, the right to direct the educational upbringing of one's child, the right to marital privacy, the right to use contraception, the right to bodily integrity [and] the right to abortion." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 393-94 (6th Cir. 2005). The Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The Court "must therefore exercise the utmost care whenever [it is] asked to break new ground in the field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court." *Glucksberg*, 521 U.S. at 720 (internal citations and quotations omitted).

Defendant asserts that he has a fundamental liberty interest in being subjected to prosecution by court-martial for crimes committed while he was in the military. Defendant asserts that this right was violated when the Government chose to discharge him from the Army after the offenses for which he was on trial were committed, thereby giving the Government the grounds to prosecute him under MEJA.

The Supreme Court has previously found that it violates the Constitution to try civilian ex-servicemen such as Defendant by court-martial, even for crimes committed while in the service. *Quarles*, 350 U.S. at 23. Thus, this Court cannot find that the right of an ex-serviceman to trial by

court-martial is deeply rooted in the Nation's history and tradition or that it is implicit in the concept of ordered liberty, and therefore, this Court cannot find the right fundamental. *See Glucksberg*, 521 U.S. at 720-21.

As Defendant has no fundamental right to trial by court-martial, the contested Government action must bear a reasonable relation to a legitimate governmental interest. *Flores*, 507 U.S. at 306. The Government asserts, and this Court agrees, that the Government has a legitimate governmental interest in ensuring that its soldiers are fit to serve in the United States Army. *See United States v. Bickel*, 27 M.J. 638, 642 (A.C.M.R. 1988). Defendant's Brigade Commander requested Defendant's release from theater in Iraq on grounds of a discharge for personality disorder on April 2, 2006, and on April 14, 2006, Defendant's Company Commander notified Defendant that he was initiating action to separate Defendant from the military for a personality disorder. Defendant has made no argument denying his personality disorder or that such personality disorder would not impair his fitness to serve. This Court finds that Defendant's discharge was reasonably related to the Government's interest in ensuring that its soldiers are fit to serve.

Therefore, this Court finds that Defendant's prosecution in a civilian court does not amount to a violation of either procedural or substantive due process.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED.

An appropriate order shall issue.