UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

STEVEN DALE GREEN                                              DEFENDANT

## MEMORANDUM OPINION

This matter has come before the Court upon the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Aggravators, and Dismiss the Government's Death Penalty Notice (Docket #93). The United States has responded (Docket #102) and the Defendant has replied (Docket #123). This matter is ripe for adjudication. For the following reasons, the Defendant's Motion is **DENIED.**

## BACKGROUND

On February 16, 2005, Defendant Steven Green enlisted in the U.S. Army, 101st Airborne Division. In September 2005, he was deployed to Iraq. On April 14, 2006, the Defendant's Company Commander, Captain John Goodwin, notified him that Goodwin was initiating action to separate Green from the military for a personality disorder pursuant to Army Regulation 635-200 5-13. On April 2, 2006, Brigade Commander Colonel Todd Ebel requested Defendant's release from theater in Iraq on grounds of a discharge for personality disorder. After his arrival at Ft. Campbell, the Defendant was administratively out-processed and discharged from the Army on May 16, 2006.

Approximately five weeks after the Defendant's discharge, U.S. Army command in Mahmoudiyah, Iraq, first received information that the Defendant was involved in the rape and murder of an Iraqi family in Yousifiyah, Iraq. The Defendant's co-conspirators, who were all still

in the Army and subject to the Uniform Code of Military Justice ("UCMJ"), were interviewed by the Army's Criminal Investigation Division and criminally charged on June 6, 2006. On June 30, 2006, a sealed criminal complaint was filed in the Western District of Kentucky charging Defendant with numerous violations of the Military Extraterritorial Jurisdiction Act ("MEJA") for his role in the Yousifiyah offenses. The Defendant was arrested and made his initial appearance on July 3, 2006, in the Western District of North Carolina. An agreement was reached to waive venue. On November 7, 2006, an indictment was returned against the Defendant, charging him with sixteen counts of conspiracy, aggravated sexual abuse, premeditated murder, and firearm charges pursuant to MEJA, and an additional count of obstruction of justice under 18 U.S.C. § 1512(c)(1).

The Defendant's alleged co-conspirators Sergeant Paul Cortez, Specialist James Barker, and Private First Class Jesse Spielman, all tried for rape and murder, were convicted by courts-martial. Cortez was sentenced to life without parole while Barker and Spielman were sentenced to life with possibility of parole. All three sentences were reduced pursuant to plea agreements to 100, 90, and 110 years imprisonment, respectfully. All are eligible for parole in ten years.

By letter dated February 15, 2007, the Defendant volunteered to reenlist in the Army in order to subject himself to the military justice system. The Army declined to pursue this course of action.

On July 3, 2007, the Government filed its Notice of Intent to Seek the Death Penalty ("Notice of Intent"), pursuant to 18 U.S.C. § 3593(a) of the Federal Death Penalty Act.[1]

---

[1]18 U.S.C. § 3593(a) states: If, in a case involving an offense described in section 3591 [18 USCS § 3591], the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

   (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter [18 USCS §§ 3591

**DISCUSSION**

The Notice of Intent sets forth the Government's belief that the circumstances of the offenses charged in Counts Three through Ten and Thirteen through Sixteen of the Indictment are such that, in the event of a conviction, a sentence of death is justified under the Federal Death Penalty Act (FDPA).

Pursuant to the requirements of § 3593(a), the Notice of Intent sets forth the aggravating factors that the Government proposes to prove as justifying a sentence of death. The Notice of Intent sets forth four statutory aggravating factors and two non-statutory aggravating factors.

In this Motion, the Defendant argues (1) the "substantial planning and premeditation" statutory aggravating factor should be dismissed as duplicative and vague; (2) the "heinous, cruel, and depraved manner" statutory aggravating factor should be dismissed as vague; (3) the non-statutory aggravating factors should be dismissed because they constitute an unlawful delegation of legislative authority; (4) the non-statutory aggravating factors should be dismissed because they violate the ban on ex post fact laws; (5) the "victim impact" non-statutory aggravating factor should be dismissed because it does not "narrow the class of murders for whom the death penalty is available" and is prejudicial; and (6) the "witness elimination" non-statutory aggravating factor should be dismissed because it does not "narrow the class of murders for whom the death penalty is available." The Court will address each of the Defendant's arguments in turn.

**A.  The Sentencing Phase of the Federal Death Penalty Act**

---

et seq.] and that the government will seek the sentence of death; and

  (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

To impose a death sentence under FDPA, the capital jury must first determine that the defendant is guilty of the underlying death-eligible crimes.[2]   If a capital case reaches the sentencing phase, the jury's duties are divided into two stages: eligibility and selection.  During the eligibility phase,  the defendant becomes death-eligible only if the jury finds unanimously and beyond a reasonable doubt that: (1) the defendant was 18 years of age or more at the time of the offense, 18 U.S.C. § 3591(a); (2) the defendant had the requisite mental state when he committed the offense, 18 U.S.C. § 3591(a)(2)(A)-(D); and (3) at least one statutory aggravating factor listed at 18 U.S.C. §3592(c)(1)-(16) exists.

The FDPA lists sixteen statutory aggravating factors for homicide, and as noted above, in order to seek the death penalty under the FDPA, the United States must proffer at least one to the jury.  *See* 18 U.S.C. §3592(c)(1)-(16).  To determine whether the death penalty is appropriate, the jury must consider the statutory aggravating factor or factors, plus any non-statutory aggravating factors[3] that the Government has set forth, and weigh them against any mitigating factors. 18 U.S.C. § 3593(e).  Non-statutory aggravating factors must be unanimously found by the jury beyond a reasonable doubt, while the defendant has the burden of proving mitigating factors by a preponderance of the evidence.  18 U.S.C. § 3593(c).  While findings with respect to both types of aggravating factors must be unanimous, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision.  18 U.S.C. § 3593(d).

---

[2]Here, the death-eligible crimes are listed in Counts Three through Ten (premeditated murder) and Thirteen through Sixteen (unlawful killing in perpetration of aggravated sexual abuse) of the Indictment.

[3]"The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists."  18 U.S.C. § 3592(c)

4

If at least one mitigating factor is found, the jury then decides whether all the aggravating factors found to exist "sufficiently outweigh" the mitigating factor(s) found to exist.  18 U.S.C. § 3593(e).  Based upon its consideration of the aggravating and mitigating factors, the jury, by unanimous vote, recommends whether the defendant should be sentenced to death, to life imprisonment without possibility of release, or some other lesser sentence.  *Id.*

A capital sentencing scheme, to comport with the Eighth Amendment, "must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.'"  *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 867 (1983)).  Legislatively defined "statutory aggravating circumstances...circumscribe the class of persons eligible for the death penalty."  *Zant*, 462 U.S. at 878.  However, non-statutory aggravating factors come into play because "the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death."  *Id.*

Thus, as noted above, there are "two different aspects of the capital decision-making process: the eligibility decision and the selection decision."  *Tuilaepa v. California*, 512 U.S. 967, 971 (1994).  As indicated above, the first step in any capital case is convicting the defendant of a crime for which the death penalty is a proportionate and available punishment.  *Id.* (citing *Coker v. Georgia*, 433 U.S. 584 (1977)).  No defendant is eligible for the death penalty unless the trier of fact convicts him or her and also finds one "aggravating circumstance."  *Id.* at 972 (citing *Lowenfield*, 484 U.S. at 244-246; *Zant*, 462 U.S. at 878.  Under the FDPA, this is the *statutory* aggravating factor, which must meet two requirements.  First, it "may not apply to

every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder" (i.e., it may not be overbroad).  *Id.* (citing *Arave v. Creech*, 507 U.S. 463, 474 (1993)).  To meet this first requirement, the statutory aggravating factor must narrow the class of persons eligible for the death penalty.  *Arave*, 507 U.S. at 474.

Second, the statutory aggravating factor "may not be unconstitutionally vague."  *Id.* (citing *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980)).  A statutory aggravator is unconstitutionally vague if it "fails to furnish [the sentencer with] principled guidance for the choice between death and a lesser penalty."  *Richmond v. Lewis*, 506 U.S. 40, 46 (1992).  An aggravating factor required to render defendant eligible for death penalty is only unconstitutionally vague if it does not possess some "'common-sense core of meaning...that criminal juries should be capable of understanding.'"  *Tuilaepa*, 512 U.S. at 973 (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)).  The Supreme Court stated in *Tuilaepa* that because "'the proper degree of definition' of eligibility and selection factors often 'is not susceptible of mathematical precision,'" a court's vagueness review "is quite deferential."  *Id.*  (quoting *Walton v. Arizona*, 497 U.S. 639, 655 (1990)).  The Supreme Court has found only a few factors vague.  *Id.*

The statutory aggravating factors are used in the eligibility phase of the capital sentencing stage, which is separate from the selection phase.  The United States District Court for the Southern District of Ohio recently explained the distinction well in *United States v. Henderson*:

> Only the statutory factors are required to narrow the class of murderers who might properly face the death penalty ("eligibility"); the nonstatutory factors serve as additional information for the sentencer ("selection").  Once the jury has narrowed the class of defendants by finding guilt, the gateway mes [sic] rea, and at least one statutory

6

> aggravating factor, the focus appropriately shifts to providing the sentencer with all possible relevant information to enable it to tailor its verdict to the individual before it.

*Henderson*, 485 F. Supp. 2d 831, 868 (S.D. Ohio 2007).

The FDPA is a weighing statute, which requires the jury to balance statutory and non-statutory aggravating factors against mitigating factors to determine if the death penalty is warranted. *See* 18 U.S.C. § 3593(e). Non-statutory aggravating factors, like aggravating factors, must be unanimously found by the jury beyond a reasonable doubt. 18 U.S.C. § 3593(c). A jury never considers non-statutory factors unless it first unanimously determines that at least one statutory aggravating factor exists. "The establishment of nonstatutory aggravating factors is neither necessary nor sufficient to authorize imposition of the death penalty." *United States v. Fields*, 483 F.3d 313, 325 (5th Cir. 2007). It is the existence of a statutory aggravating factor alone that allows a defendant to become eligible for the death penalty, because, as set forth above, they "circumscribe the class of persons eligible for the death penalty." *Zant,* 462 U.S. at 878.

The jury only considers non-statutory aggravating factors "in selecting an appropriate sentence once a defendant is found eligible for the death penalty, but they are not, and cannot be, used to determine that eligibility." *Field*s, 483 F.3d at 325. The establishment of a statutory aggravating factors serves to narrow the class of defendants eligible for the death penalty; once that class is established, the jury weighs the statutory, non-statutory, and mitigating factors in order to determine whether or not the death-eligible defendant will be sentenced to death.

The narrowing function is performed by the statutory aggravating factors set forth in the FDPA, "and the non-statutory factors only serve to characterize the defendant and individualize the defendant's sentence." *United States v. Regan*, 228 F. Supp. 2d 742, 753 (E.D. Va. 2002).

7

As the court explained in *Henderson*:

> This Court agrees with the Government in that, "as long as that information is relevant to the character of the defendant or the circumstances of the crime," consideration of non-statutory aggravating factors (like the consideration of non-statutory mitigating circumstances) serves the purpose of ensuring an individualized sentence that minimizes the risk of arbitrary and capricious action.  In addition this Court is aware that the FDPA requires that any information proffered at the penalty phase "may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury," 18 U.S.C. § 3593(c) (2004), and makes clear that any such factors must be "sufficiently relevant to the consideration of who should live and who should die."  Furthermore, the "heightened reliability doctrine" applicable to capital sentencing also governs "the admissibility of nonstatutory aggravating factors."

*Henderson*, 485 F. Supp. 2d at 868 (internal citations omitted).

## B.  The Defendant's Challenges to the Statutory Aggravating Factors

The Government set forth four statutory aggravating factors in its Notice of Intent: (1) the Defendant committed the offenses alleged in Counts 3, 7, and 13 in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim, 18 U.S.C. § 3592(c)(6); (2) the Defendant committed the offenses alleged in Counts 3-10 and 13-16 after substantial planning and premeditation to cause the death of a person or commit an act of terrorism, 18 U.S.C. § 3592(c)(9); (3) the victims of the charged offenses, Abeer Kassem Hamza Al-Janabi and Hadeel Kassem Hamza Al-Janabi, were particularly vulnerable due to youth, 18 U.S.C. § 3592(c)(11); and (4) the Defendant intentionally killed or attempted to kill more than one person in a single criminal episode, 18 U.S.C. § 3592(c)(16). In this Motion, the Defendant only challenges 18 U.S.C. § 3592(c)(6) and 18 U.S.C. § 3592(c)(9).

### 1.  18 U.S.C. § 3592(c)(9): Substantial Planning and Premeditation

The Defendant argues that the "substantial planning and premeditation" statutory aggravator, set forth in 18 U.S.C. § 3592(c)(9), should be dismissed because the word

"substantial" is unconstitutionally vague, and the factor, more generally, violates the Eighth

Amendment by failing to narrow the category of defendants who are death eligible.  *See*

*Lowenfield*, 484 U.S. at 244.  The Defendant asserts that the terms "planning and premeditation"

by themselves do not narrow the class of eligible defendants, and "substantial," as the modifier

of that phrase, does not provide guidance to a jury as to "how much" or "what kind of" planning

and premeditation are necessary to rise to the level of "substantial."  According to the Defendant,

this lack of guidance to jurors must lead to inconsistent and arbitrary results and allows juries to

exercise "unfettered discretion."

 Multiple courts have been faced with "narrowing" and "vagueness" challenges to the

"substantial planning and premeditation" aggravator and have uniformly rejected those

challenges.  *United States v. Mitchell,* 502 F.3d 931, 978 (9th Cir. 2007); *United States v.*

*Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005) (the substantial planning and premeditation

aggravator  "obviously narrow[s] the class of murderers who could be eligible for the death

penalty because not every murder involves substantial planning or premeditation"); *United*

*States v. Tipton*, 90 F.3d 861, 895-96 (4th Cir. 1996), *cert. denied*, 520 U.S. 1253 (1997)

(considering the identical aggravator under 21 U.S.C.§ 848(n)(8)); *United States v. McCullah*, 76

F.3d 1087, 1109 (10th Cir. 1996), *reh'g denied*, 87 F.3d 1136 (1996), *cert. denied*, 520 U.S.

1213 (1997); (same); *United States v. Flores*, 63 F.3d 1342, 1372 (5th Cir. 1995), *reh'g denied*,

77 F.3d 481 (1995), *cert. denied*, 519 U.S. 825 (1996) (same); *Henderson*, 485 F. Supp. 2d at

867; *United States v. Taylor*, 316 F. Supp. 2d 730, 737 (N.D. Ind. 2004) ("The Court joins

numerous other courts that have found that this statutory aggravating factor has a common sense

core of meaning that a jury is capable of understanding and holds that the 'substantial planning

and premeditation' aggravating factor is not unconstitutionally vague."); *United States v. Matthews*, 246 F. Supp. 2d 137, 148 (N.D.N.Y 2002); *United States v. O'Driscoll,* 203 F. Supp. 2d 334, 344-45 (M.D. Pa. 2002); *United States v. Spivey,* 958 F. Supp. 1523, 1530 (D.N.M. 1997) (considering the identical aggravator under 21 U.S.C.§ 848(n)(8)); *United States v. McVeigh,* 944 F. Supp. 1478, 1490 (D. Colo. 1996); *United States v. Minerd*, 176 F. Supp. 2d 424, 439 (W.D. Pa. 2001) ("We find that this factor is sufficiently narrowing to provide the jury with guidance. Not every murder involves substantial planning and premeditation...we find that it is not unconstitutionally vague, and that the language focuses the jury on the degree of planning that went into the commission of this offense."); *United States v. Frank,* 8 F. Supp. 2d 253, 278 (S.D.N.Y. 1998) ("The substantial planning factor does not involve pejorative terms, but focuses the jury instead on the degree of planning associated with the crime.  While many murders may involve some planning, not every murder involves 'substantial' planning.)

The text of § 3592(c)(9) states:

Substantial planning and premeditation. The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

As noted above, a statutory aggravating factor must narrow the class of persons eligible for the death penalty and must not be unconstitutionally vague.  *Arave*, 507 U.S. at 474. Vagueness review is deferential and a statutory aggravating factors is only unconstitutionally vague if it does not possess some "'common-sense core of meaning...that criminal juries should be capable of understanding.'"  *Tuilaepa*, 512 U.S. at 973 (quoting *Jurek*, 428 U.S. at 279).

The Court finds no reason to diverge from  all other federal courts that have rejected similar challenges to the substantial planning and premeditation aggravator.  The Defendant's

arguments are not novel nor are they persuasive.  The Defendant attacks each word in the phrase: substantial, planning, and premeditation, claiming that "planning and premeditation" are a part of every intentional murder and that neither "substantial" nor "premeditation" serves to narrow the class.

In *United States v. Tipton*, the Fourth Circuit Court of Appeals rejected the defendants' vagueness challenge to the "substantial planning and premeditation" aggravating factors set forth in 21 U.S.C. § 848(e), an analogous death penalty statute.[4]  *Tipton*, 90 F.3d at 895.  The court noted:

> While, as the Supreme Court has recognized, "substantial" may have quite different, indeed almost contrary, meanings depending upon its context, see *Pierce v. Underwood*, 487 U.S. 552, 564 (1988) (either, e.g., "large," or, e.g., "in the main"); *Victor v. Nebraska*, 511 U.S. 1 (1994) (either "not seeming or imaginary," or "to a large degree"), *context*, including clarifying jury instructions, may supply the needed "common sense core of meaning . . . that criminal juries should be capable of understanding."

*Id.* (emphasis added).  Thus, in the total context in which "substantial" is used in § 848(e) (and, correspondingly, § 3592(c)(9)), as a modifier of "planning and premeditation," the Fourth Circuit concluded it "could only have been understood by the jury to mean a higher degree of planning than would have the words "planning and premeditation" alone--i.e., more than the minimum amount sufficient to commit the offense."  *Id.* at 896.  The district court's instruction to the jury, that "substantial planning means planning that is considerable, or ample for the commission of a crime at issue in this case: murder," was also proper.  *Id.*

---

[4] 21 U.S.C. § 848(n), which set forth the aggravating factors for a homicide committed under § 848(e), has since been deleted.  Section 848(n)(8) listed as an aggravating factor: "The defendant committed the offense after substantial planning and premeditation."

The Tipton court concluded:

We are therefore satisfied that the (n)(8) aggravating factor's use of the word "substantial" to modify "planning and premeditation" does not render § 848(n)(8) unconstitutionally vague, but instead, conveys with adequate precision a commonly understood meaning of "considerable" or "more than merely adequate," thereby ensuring that the (n)(8) factor served sufficiently to channel the jury's discretion in assessing eligibility for the death penalty.

*Id.*

In *United States v. Henderson*, the Defendant, indicted for capital murder, also argued that "substantial," as used in 18 U.S.C. § 3592(c)(9), was unconstitutionally vague and that the aggravator violated the Eighth Amendment by failing to narrow the category of defendants who are death eligible.  *Henderson*, 485 F. Supp. 2d at 867.  The Court held that the aggravator genuinely narrows the category of defendants who are death eligible and "adequately 'assist[s] the jury in distinguishing those who deserve capital punishment from those who do not . . . .'" *Id.* (quoting *United States v. McVeigh*, 944 F. Supp. 1478, 1488 (D. Colo. 1996) (internal citation omitted)).  The court said, "[a]s stated by the court in *United States. v. Minerd*, 176 F. Supp. 2d 424, 439 (W.D. Pa. 2001), '[n]ot every murder involves substantial planning and premeditation.'" *Id.*  The court reasoned that only once the jury found the defendant guilty on the death eligible counts would it determine whether the defendant's "actions involved substantial planning and premeditation." *Id.*

The court also rejected the Defendant's vagueness challenge to the aggravator.  *Id.*  In doing so, it cited *United States v. Cooper*, 754 F. Supp. 617, 623 (N.D. Ill. 1990), where "the defendants raised the same argument in the context of 21 U.S.C. § 848(n)(8)" and the "court rejected the argument, holding that the words 'premeditation' and 'planning' are 'commonly employed' and 'universally understood.'" *Id.* (quoting *Cooper*, 754 F.Supp. at 623).  The court

12

also cited with approval the *Cooper* court's finding that the "substantiality requirement is frequently encountered and readily understood in a number of contexts in criminal law." *Id.* (citing *Cooper*, 754 F.Supp. at 623).   Thus, the *Henderson* court found that 18 U.S.C. § 3592(c)(9) "adequately narrows the number of death eligible defendants and is sufficiently comprehensible such that it is not void for vagueness." *Id.*

For all of these reasons, the Court will not dismiss the "substantial planning and premeditation" aggravating factor as set forth in the Notice of Intent, nor will declare 18 U.S.C. § 3592(c)(9) unconstitutional as requested by the Defendant.

**2. 18 U.S.C. § 3592(c)(6): Heinous, Cruel, or Depraved Manner of Committing Offense**

    **a. Narrowing and Vagueness**

The Defendant next argues that the "heinous, cruel, or depraved manner of committing offense" statutory aggravator, set forth in 18 U.S.C. § 3592(c)(6) and reproduced exactly in the Notice of Intent, should be dismissed because it is unconstitutionally vague on its face.  For the reasons set forth below, this argument must also fail.

The Government may give notice of this aggravator only if the alleged homicide "involved torture or serious physical abuse to the victim," making the homicide "especially heinous, cruel, or depraved."  18 U.S.C. § 3592(c)(6).  The Defendant argues that the "heinous, cruel, or depraved" portion of the factor alone is unconstitutionally vague and the limiting phrase "serious physical abuse" cannot save the factor from vagueness because this "limitation does not narrow the class of murders to which the factor applies."  According to the Defendant, "every murder by definition involves the infliction of serious physical abuse."  The Defendant, however, ignores the findings of other federal courts in reiterating this old argument.

13

As stated above, a statutory aggravating factor such as § 3592(c)(6) must narrow the class of persons eligible for the death penalty and must not be unconstitutionally vague. *Arave*, 507 U.S. at 474. Vagueness review is deferential and a statutory aggravating factors is only unconstitutionally vague if it does not possess some "'common-sense core of meaning...that criminal juries should be capable of understanding.'" *Tuilaepa*, 512 U.S. at 973 (quoting *Jurek,* 428 U.S. at 279).

Multiple courts have been faced with "narrowing" and "vagueness" challenges to the "heinous, cruel, or depraved manner " aggravator and have uniformly rejected those challenges. *United States v. Bernard*, 299 F.3d 467, 481-82 (5th Cir. 2002); *United States v. Chanthadara,* 230 F.3d 1237, 1261-63 (10th Cir. 2000); *United States v. Webster*, 162 F.3d 308, 354 (5th Cir. 1998); *United States v. Hall*, 152 F.3d 381, 413 (5th Cir. Tex. 1998), *reh'g denied*, 161 F.3d 10 (5th Cir. 1998), *cert. denied*, 526 U.S. 1117 (1999), *abrogated on other grounds*, *U.S. v. Martinez-Salazar*, 528 U.S. 304 (2000); *United States v. Jones*, 132 F.3d 232, 237 (5th Cir. 1998), *aff'd Jones v. United States*, 527 U.S. 373 (1999); *Minerd*, 176 F. Supp. 2d at 438; *Frank*, 8 F. Supp. 2d at 277 ("Although every murder involves some physical abuse, not every murder will involve 'torture or serious physical abuse to the victim.'").

Vagueness challenges to § 3592(c)(6) have essentially been foreclosed by *United States v. Jones*, where the Fifth Circuit Court of Appeals held that "[t]he language 'especially heinous, cruel, and depraved' without a limiting instruction would be unconstitutionally vague. *Jones,*132 F.3d at 249. However, the *Jones* court found that "[a]ny vagueness in the language...is cured by the limitation in the statute that the offense involve torture or serious physical abuse." *Id.* The court drew this holding from *Maynard v. Cartwright*, 486 U.S. 356

14

(1988), where the Supreme Court reviewed the Tenth Circuit's holding that Oklahoma's "*especially* heinous, atrocious, or cruel" aggravating circumstance was unconstitutionally vague. *Maynard*, 486 U.S. at 358-60 (emphasis added).

The Supreme Court in *Maynard* upheld the Tenth's Circuit's decision. *Id.* at 360. The Court stated that the word "especially" did not guide the jury's discretion because "to say that something is 'especially heinous' merely suggests that the individual jurors should determine that the murder is more than just 'heinous,' whatever that means, and an ordinary person could honestly believe that every unjustified, intentional taking of human life is 'especially heinous.'" *Id.* at 364. The Court went on to say that while the Tenth Circuit had noted cases in which a torture or serious physical abuse requirement "sufficed to validate an otherwise vague aggravating circumstance," it had "expressly refrained from directing the State to adopt any specific curative construction" of the Oklahoma aggravating circumstance at issue. *Id.* at 364-65.

Thus, the *Jones* court, in considering the defendant's challenge to the unanimously found statutory factor based upon § 3592(c)(6), concluded that any vagueness had been cured by the limiting instruction that to be considered "especially heinous, cruel, and depraved," the homicide must have "involved torture or serious physical abuse" to the victim. *Jones,* 132 F.3d at 249.

The *Jones* court also noted that beyond the statutory limitation, the district court's limiting instruction to the jury regarding the aggravating factor defined each term in the aggravating factor "which resolved any possible vagueness or ambiguity of the language." *Id.* at 250. The instruction read:

> To establish that the defendant killed the victim in an especially heinous, cruel, or depraved manner, the government must prove that the killing involved either torture or

15

serious physical abuse to the victim. The terms "heinous, cruel, or depraved" are stated in the disjunctive: any one of them individually may constitute an aggravating circumstance warranting imposition of the death penalty.

"Heinous" means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as set apart from other killings.

"Cruel" means that the defendant intended to inflict a high degree of pain by torturing the victim in addition to killing the victim.

"Depraved" means that the defendant relished the killing or showed indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim.

"Torture" includes mental as well as physical abuse of the victim.  In either case, the victim must have been conscious of the abuse at the time it was inflicted; and the defendant must have specifically intended to inflict severe mental or physical pain or suffering upon the victim, apart from killing the victim.

"Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.  Serious physical abuse--unlike torture--may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted.  However, the defendant must have specifically intended the abuse apart from the killing.

Pertinent factors in determining whether a killing was especially heinous, cruel, or depraved include: infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; needless mutilation of the victim's body; senselessness of the killing; and helplessness of the victim.

The word "especially" should be given its ordinary, everyday meaning of being highly or unusually great, distinctive, peculiar, particular, or significant.

*Id.* at 250 n.12.

The *Jones* court concluded that the statutory limitation, along with this detailed instruction, "gave the jury an aggravating factor with a 'common-sense core meaning' that they were capable of understanding and the language of § 3592(c)(6) "was not unconstitutionally vague and did not lead to the arbitrary imposition of the death penalty in violation of the Eighth

16

Amendment." *Id.* at 250.

Recently, in *United States v. Sampson*, the First Circuit Court of Appeals, faced with the same challenge from a defendant facing a death sentence for "carjacking resulting in death," found that it agreed "with other courts of appeals that have found the FDPA's 'especially heinous, cruel, or depraved' factor not unconstitutionally vague when coupled with the type of limiting instruction given" by the district court[5], which was similar to the one given in *Jones*.

---

[5]The district court instructed:

As I told you earlier, as a matter of law, premeditated murder alone is not sufficient to make the death penalty a sentencing option. Something more is required.  More specifically, one of those "something mores" with regard to murder is that a murder must be committed in an especially heinous, cruel, or depraved manner.  However, a person of ordinary sensibility could fairly characterize almost every murder as heinous, cruel, or depraved, the Supreme Court has said. Therefore, something additional must be proven to make this a truly limiting factor and to assure reasonable consistency between cases.  In this case, the law provides that the killing can only be especially heinous, cruel, or depraved if it involved serious physical abuse . . . . In this case, "especially" has its usual meaning of highly or unusually great.  Each of the other relevant terms has a defined meaning for the purposes of the Federal Death Penalty statute. I'll now explain those meanings to you.

"Heinous" means shockingly atrocious.  In this case, a killing may be found to be especially heinous only as a result of any serious physical abuse that's proven.

"Cruel" means the defendant intended to inflict a high degree of pain.  In this case, a killing may be found to be especially cruel only as a result of any serious physical abuse that is proven.

"Depraved" means that the defendant relished the killing or showed indifference to the suffering of the victim.  Once again, in this case, a killing may be found to be especially depraved only as a result of any serious physical abuse that is proven.

"Serious physical abuse" has a particular legal meaning for the purpose of this case.  To prove that the killing . . . involved serious physical abuse, the government must prove that Mr. Sampson intended to inflict significant damage to [the deceased's] body beyond what Mr. Sampson thought was necessary to kill him.  In essence, the government must prove that Mr. Sampson intended to do more than kill [the deceased].  It must prove that he also intended to abuse his body above and beyond what was necessary to kill him.  Serious physical abuse can be inflicted either before or after death.  The victim does not have to be alive at the time the serious

17

486 F.3d 13, 38 (1st Cir. 2007) (citing, as those other courts of appeals, *Bourgeois*, 423 F.3d at

510; *Chanthadara*, 230 F.3d at 1262; *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 2000)

(§ 3592(c)(6) instruction was given with a limiting instruction extensively defining "heinous,

cruel and depraved")).

Like the *Jones* court, the *Sampson* court concluded that § 3592(c)(6) "avoids facial

vagueness by requiring that the offense involve serious physical abuse or torture." *Id.* Further,

by carefully defining "each of the relevant terms-heinous, cruel, depraved, and serious physical

abuse-in a manner that was easily understood," the district court afforded the jurors the

necessary "commonsense core of meaning." *Id.* (citing *Walton*, 497 U.S. at 653). Thus, the

court concluded, "[t]he narrowing accomplished by the statutory inclusion of the serious

physical abuse component, especially when combined with the district court's thorough

instructions, leaves no room to doubt the factor's constitutionality." *Id.*

The Defendant argues, in part, that the phrase "serious physical abuse" does not

---

physical abuse is inflicted.

Question 3A requires two steps. First, you must determine whether it has been proven beyond a
reasonable doubt that the killing . . . involved serious physical abuse, as I just defined it for you.
If you do not agree unanimously that this has been proven, you must answer question 3A no and
proceed to question 3B. If you do agree unanimously that serious physical abuse has been
proven, you must continue to the next step. In the second step, you must decide whether that
serious physical abuse proves that the crime was committed in an especially heinous, an
especially cruel, or especially depraved manner, as I defined those terms for you before.

You may not consider any aspect of the crime other than proven serious physical abuse in
determining whether the killing was especially heinous, especially cruel, or especially depraved.
However, just because an offense involves serious physical abuse does not necessarily mean that
it was committed in an especially heinous, cruel, or depraved manner. Rather, you must decide
whether any proven serious physical abuse rendered the killing especially heinous, especially
cruel, or especially depraved.

18

genuinely narrow the class of persons eligible for the death penalty because "every murder involves serious physical abuse to a victim."  However, as seen above in the *Jones* limiting instruction, the district court made it clear to the jury in its definition of "serious physical abuse" that "the defendant must have specifically intended the abuse apart from the killing."  *Jones,*132 F.3d at 250 n.12. Further, in *Sampson*, the jury was instructed:

> To prove that the killing . . . involved serious physical abuse, the government must prove that Mr. Sampson intended to inflict significant damage to [the deceased's] body beyond what Mr. Sampson thought was necessary to kill him.  In essence, the government must prove that Mr. Sampson intended to do more than kill [the deceased].  It must prove that he also intended to abuse his body above and beyond what was necessary to kill him.

*Sampson*, 486 F.3d at 36-38.

As both of these instructions were looked upon with approval by the reviewing courts, the Court believes that such an explanation of the definition of "serious physical abuse" in the context of § 3592(c)(6) resolves any possible risk of failing to narrow the class.

Here, obviously, this statutory aggravator has not been presented to a jury accompanied by the required detailed limiting instruction.  However, multiple courts have held that § 3592(c)(6) itself is not unconstitutionally vague as per the "serious physical abuse or torture limitation," and the court sees no reason to depart from these holdings.  *Sampson*, 486 F.3d at 38; *Jones*, 132 F.3d at 249.  Further, the Defendant has pointed to no case where a federal court has held that § 3592(c)(6), in its current incarnation, is unconstitutionally vague when paired with an appropriate limiting instruction.

If and when this aggravator is presented to the jury, it should be accompanied by a detailed limiting instruction of the sort described in *Jones* and *Sampson*, which will further ameliorate and avoid any vagueness concerns and afford the jurors a "common-sense core of

19

meaning." *Tuilaepa*, 512 U.S. at 973.

### b. Duplication

The Defendant also argues, for the first time in his reply, that "the heinous, cruel, or depraved manner" aggravating factor "overlaps with the essential elements of Counts 11 and 12 as well as ¶¶ 5-8 of the Notice of Intent to Seek Death Penalty and thereby allows the sentencing body to consider the aggravator more than once."  According to the Defendant, "the alleged rape of Abeer Kassem Hamza Al-Janabi is used as a independent crime, an aggravating circumstance, and a ground on which to seek the death penalty for the murders of all four members of the Al-Janabi family.  Such multiple use of the rape amounts to the unconstitutional double counting of an aggravator."

In Count 11, the Defendant is charged with the Aggravated Sexual Abuse of Abeer Kassem Hamza Al-Janabi, in violation of 18 U.S.C. § 2241(a), and in Count 12, the Defendant is charged with Aggravated Sexual Abuse with Children, in violation of 18 U.S.C. § 2241(c).  Paragraphs 5-8 of the Notice of Intent indicate that the Government will seek the death penalty, in part, for the crimes alleged in Counts 7-10 of the Indictment, which charge the Defendant with the unlawful killing of the four victims in the perpetration of aggravated sexual abuse.

The Defendant's argument rests on the presumption that the "serious physical abuse" alluded to by the Government in the Notice of Intent is the alleged rape of Abeer Kassem Hamza Al-Janabi.  However, because the Defendant did not raise this argument in his Motion, the Government has not responded.  Without further information as to the alleged "serious physical abuse," the Court declines to speak to the merits of the Defendant's argument at this time.

For example, Count 17 of the Indictment alleges that the Defendant obstructed justice by

20

burning the body of Abeer Kassem Hamza Al-Janabi after she had been killed as described in

Counts 3 and 7.[6]  While the Court draws no conclusions, it is possible that this is the "serious

physical abuse" that the Government intends to proffer as a statutory aggravating factor if the

jury unanimously finds the Defendant guilty of Counts 3, 7, and 13.[7]  The alleged burning of the

victim's body could constitute "serious physical abuse" as used in the "heinous, cruel, or

depraved" manner aggravator, although that is a proposition that will likely require futher

argument.  *See Jones*, 132 F.3d at 250 n.12 ("Serious physical abuse . . . may be inflicted either

before or after death."); *United States v. Sampson*, 335 F. Supp. 2d 166, 204 (D. Mass. 2004)

("...the infliction of serious physical abuse is evidence that the defendant was especially

depraved because he relished the killing, even if the abuse occurred after the victim was

unconscious or dead. If, on the other hand, the victim was conscious, serious physical abuse is

evidence that the defendant was especially cruel because he intended to inflict a high degree of

pain in addition to killing the victim. Either way, serious physical abuse also makes a killing

especially heinous, setting the murder apart from other killings in a particularly shocking way.").

*But see United States v. Pretlow*, 779 F. Supp. 758, 773 (D.N.J. 1991) (finding the aggravating

factor not unconstitutionally vague to the extent it required proof that the defendant subjected the

---

[6]In Count 3, the Defendant is charged with the premeditated murder of Abeer Kassem Hamza Al-Janabi.  In Count 7, the Defendant is charged with the felony murder of  Abeer Kassem Hamza Al-Janabi.

[7]The aggravator, as set forth in the Notice of Intent, states: "The defendant committed the offenses alleged in Counts 3, 7, and 13 in an especially heinous, cruel, and depraved manner in that the offenses involved serious physical abuse to Abeer Kassem Hamza Al-Janabi."  The Government clearly intends to offer this as a statutory aggravating factor only as to Counts 3, 7, and 13.  The "substantial planning and premeditation" aggravator will be offered as to each of the death-eligible Counts.

victim to serious physical abuse prior to his death, but not discussing the merits of using the aggravator for post-mortem physical abuse).

Further, the alleged burning of the victim's body does not constitute a separate Count, nor is it a ground on which the Government seeks the death penalty.  Thus, the Defendant's duplication argument would be without merit if this is the "serious physical abuse."

## C.  The Defendant's Challenges to the Non-statutory Aggravating Factors

### 1.  Unlawful Delegation of Legislative Authority

The Government listed two non-statutory aggravating factors in the Notice of Intent to Seek the Death Penalty:

> (1) Witness Elimination: the defendant killed the victim and witnesses of the alleged rape to eliminate them as possible witnesses to his crimes.

> (2) Victim Impact Evidence: The defendant caused injury, harm and loss to the family of each victim as evidenced by his or her "personal characteristics as a human being and the impact of [his or her] death on [his or her] family;" In addition, the injuries caused by the defendant extend to "the two minor children orphaned as a result of their parents' death and to those presently caring for the children."

As noted above, the FDPA is a weighing statute, which requires the jury to balance statutory and non-statutory aggravating factors against mitigating factors to determine if the death penalty is warranted.  *See* 18 U.S.C. § 3593(e).  Non-statutory aggravating factors, like aggravating factors, must be unanimously found by the jury beyond a reasonable doubt.  18 U.S.C. § 3593(c).  A jury never considers non-statutory factors unless it first unanimously determines that at least one statutory aggravating factor exists.  "The establishment of nonstatutory aggravating factors is neither necessary nor sufficient to authorize imposition of the death penalty."  *United States v. Fields*, 483 F.3d 313, 325 (5th Cir. 2007).  It is the existence of

22

a statutory aggravating factor alone that allows a defendant to become eligible for the death

penalty, because they "circumscribe the class of persons eligible for the death penalty." *Zant v.*

*Stephens*, 462 U.S. 862, 878 (1983).

The jury only considers non-statutory aggravating factors "in selecting an appropriate

sentence once a defendant is found eligible for the death penalty, but they are not, and cannot be,

used to determine that eligibility." *Field*s, 483 F.3d at 325.  The establishment of a statutory

aggravating factors serves to narrow the class of defendants eligible for the death penalty; once

that class is established, the jury weighs the statutory, non-statutory, and mitigating factors in

order to determine whether or not the death-eligible defendant will be sentenced to death.  Non-

statutory factors "serve to characterize the defendant and individualize the defendant's

sentence." *Regan*, 228 F. Supp. 2d at 753.

Despite this, the Defendant claims that in practice, this process "breaks down."   He

seems to draw this assertion from a line in *United States v. Davis*, where the United States

District Court for the Eastern District of Louisiana stated:

> ...while the statutory factors provide the threshold for death penalty consideration, they
> ultimately become indistinguishable from non-statutory factors in the final weighing by
> the jury.  In the same pot with the carefully crafted factors enunciated by Congress go the
> potential hodge-podge of other factors drawn up by the individual government
> prosecutors.

*Davis*, 904 F.Supp. 554, 559 (E.D.La. 1995).  Upon this sentence, the Defendant crafts his

argument that statutory and non-statutory aggravators are "subject to the same stringent

requirements" and must both (1) adequately channel the sentencer's discretion by narrowing the

category of convicted defendants eligible to receive the death penalty, and minimizing the risk of

arbitrary and capricious action; (2)  be "particularly relevant to the sentencing decision;" (3)

meet the "heightened standard of reliability" the Supreme Court has required in death penalty cases; and (4) not be vague, duplicative, or overbroad, or confuse, prejudice, or mislead the jury. The Defendant argues that because non-statutory aggravating factors "become indistinguishable from statutory factors in the jury's ultimate consideration of whether to impose the death penalty," this results in an unconstitutional delegation of legislative authority.

What the Defendant does not explain is that the *Davis* court was discussing whether this "hodge-podge" resulted in an unconstitutional delegation of legislative authority, and concluded that it did not. *Id.* Nowhere does the *Davis* court state that statutory and non-statutory aggravating factors are subject to the "same stringent requirements." *See id.* Instead, statutory and non-statutory aggravators serve different purposes and are employed at separate stages of the sentencing process.

The Defendant's argument is hardly novel. Many defendants have argued that the provision within 18 U.S.C. § 3592(c) authorizing the government to pursue non-statutory aggravating factors is an unconstitutional delegation of legislative power, and this argument has been rejected by every court to which it has been made  by the application of the "intelligible principle" test to this alleged delegation. *See United States v. Mistretta*, 488 U.S. 361, 372 (1989) (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928) and stating, "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'"); *see United States v. Paul,* 217 F.3d 989, 1003 (8th Cir. 2000) *United States v. Jones*, 132 F.3d 232, 239-40 (5th Cir. 1998); *United States v. McCullah*, 76 F.3d 1087, 1106-07 (10th Cir. 1996).

24

Yet, the Defendant persists in his argument that 18 U.S.C. § 3592(c) provides no guidance to prosecutors in determining how to define or select non-statutory aggravating factors in a particular case, and that the only real boundary is the imagination of the prosecutor. According to the Defendant, "the statute's standardless procedure creates an impermissible risk that the death penalty will be imposed arbitrarily and capriciously, in violation of the Eighth Amendment."  Contrary to all precedent, including the *Davis* case, the Defendant argues that non-statutory aggravating factors constitute an unlawful delegation of legislative authority.

The *Davis* court did conclude that the equal weighing of statutory and non-statutory aggravating factors, which are designated by prosecutors and not by the statute, against mitigating factors is a delegation of legislative authority.  *Id.*  However, the court went on to say that such a delegation "is not per se improper" because "Congress can legislate in broad terms, leaving discretion to other branches in implementation, as long as Congress sets out an 'intelligible principle' to guide that discretion."  *Id.* (citing *J.W. Hampton, Jr. & Co.,* 276 U.S. 394; *Touby v. United States*, 500 U.S. 160 (1991)).  The court concluded that the FDPA does set forth an intelligible principle and the delegation of authority is proper because:

> The statutory list of aggravating and mitigating factors focus on circumstances of the crime and the character of the offender, including his past criminal history, his capacity and relative culpability in the offense.  Proposed nonstatutory aggravating factors should be consistent with the type and severity of the statutory factors.  The requirement of pretrial notice to the defendant and judicial review of the relevancy, reliability and constitutionality of proposed nonstatutory factors provide additional checks on the prosecutor's discretion.

*Id.* (citing *United States v. Pretlow*, 779 F. Supp. 758, 766-67 (D.N.J. 1991)).

While the Sixth Circuit Court of Appeals has not been faced with a similar non-delegation challenge, in the Sixth Circuit case *United States v. Mayhew*, 380 F. Supp. 2d 936

25

(S.D. Ohio 2005), the defendant, like the Defendant here, filed several pre-trial motions challenging the FDPA and the use of statutory and non-statutory aggravators.  There, the defendant argued that "the FDPA violates the non-delegation doctrine by allowing the prosecution, a part of the Executive branch, to choose arbitrarily as many nonstatutory aggravating factors as it deems appropriate."  *Mayhew*, 380 F.Supp.2d at 943.

The *Mayhew* court rejected the defendant's non-delegation challenge by reference to *United States v. Jones*, 132 F.3d 232 (5th Cir. 1998).  *Id.* at 943-44.  In *Jones*, the Fifth Circuit Court of Appeals held that the Congressional delegation of authority to the Department of Justice to define non-statutory aggravating factors "is sufficiently circumscribed by 'intelligible principles' to avoid violating the nondelegation doctrine."  *Jones*, 132 F.3d at 239.  The court went on to provide four examples of the limitations placed on the prosecution in exercising delegated authority:

> (1) The FDPA limits the scope of aggravating factors to those for which prior notice has been given by the prosecution.  *See* 18 U.S.C. § 3593(a).
>
> (2) The death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating nonstatutory aggravating factors. For example, due process requires that information submitted as aggravating genuinely narrow the class of persons eligible for the death penalty.  *See* Zant, 462 U.S. at 877.
>
> (3) The district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information.  *See* 18 U.S.C. § 3593(c).
>
> (4) The requirement that the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider the non-statutory factors further limits the delegated authority.  *See* 18 U.S.C. § 3593(d). The requirement of at least one statutory aggravating factor secures sufficient Congressional guidance in classifying death-eligible offenders.

*Jones*, 132 F.3d at 240.

The Fourth Circuit Court of Appeals, in *United States v. Higgs*, found that the FDPA

26

does not even "delegate a legislative function to the prosecutor." *Higgs*, 353 F.3d 281, 321 (4th Cir. 2003). The court reasoned that "the prosecutor's discretion with regard to defining what is a death-eligible offense is wholly circumscribed by the statute's requirement that the jury unanimously find at least one intent factor and one statutory aggravating factor before the defendant becomes death eligible." *Id.* "Only after the selection of those critical, legislatively-defined factors is made is the prosecutor afforded discretion to argue that additional nonstatutory aggravators combine with the statutory aggravators to outweigh any mitigating factors that have been submitted for consideration." *Id.*

The *Higgs* court went on to say that even to the extent the prosecutor's discretion to proffer nonstatutory factors could be viewed as a delegation of legislative power, that delegation is constitutional because it is circumscribed by intelligible principles. *Id.* at 321-22 (citing*Tipton*, 90 F.3d at 895; *United States v. Paul*, 217 F.3d 989, 1003 (8th Cir. 2000), *cert denied*, 122 S.Ct. 71 (2001) ("The prosecutor's authority to define nonstatutory aggravating factors is a constitutional delegation of Congress' legislative power."); *Jone*s, 132 F.3d at 239-40 (same); *McCullah*, 76 F.3d at 1106 (holding that "the prosecutorial discretion to promulgate non-statutory aggravating factors falls squarely within the permissible delegation of power to the Executive Branch")).

The non-delegation argument was also raised in *United States v. Mitchell*, where the Ninth Circuit Court of Appeals held:

> Assuming (without deciding) that such an authorization even constitutes a delegation of legislative power, it would be "'permissible so long as there are intelligible principles' by which to exercise the delegated authority." *United States v. Jensen*, 425 F.3d 698, 707 (9th Cir. 2005) (citing *United States v. Mistretta*, 488 U.S. 361, 371 (1989)), cert denied, 547 U.S. 1056 (2006). Mitchell insists that the government is "limited only by its imagination" in deciding what qualifies as an aggravator. That is incorrect. As the Fifth

> Circuit pointed out in rejecting this identical argument, there are a number of limitations
> on the government's power to pursue non-statutory aggravators, including that the
> defendant must have been given notice of the factor, see 18 U.S.C. § 3592(c); that the
> Supreme Court has articulated several constitutional limitations on the use of aggravating
> factors; that "the district court functions as a gatekeeper to limit the admission of useless
> and impermissibly prejudicial information"; and that "the jury find at least one statutory
> aggravating factor beyond a reasonable doubt before it may consider the non-statutory
> factors." *Jones*, 132 F.3d at 239-40; *see also United States v. Frank*, 8 F. Supp. 2d 253,
> 266 (S.D.N.Y. 1998).

*Mitchell*, 502 F.3d at 979.

The defendant in *United States v. McCullah* raised a non-delegation challenge to the

identically worded provision in 21 U.S.C. § 848 allowing the government to charge

non-statutory aggravating factors in connection with a CCE. *McCullah*, 6 F.3d at 1106. The

Tenth Circuit stated, citing *Mistretta*, that "the Supreme Court has long recognized that the

federal sentencing function is 'a peculiarly shared responsibility among the Branches of

Government and has never bee*n* thought of as the exclusive constitutional province of any one

Branch.'" *Id.* (quoting *Mistretta*, 488 U.S. at 39). The court stated that the "prosecutorial

discretion to promulgate non-statutory aggravating factors falls squarely within the permissible

delegation of power to the Executive Branch." *Id.*

Once the selection phase of the sentencing stage of a capital proceeding begins, "the

focus is on 'an *individualized* determination on the basis of the character of the individual and

the circumstances of the crime.'" *Id.* (quoting *Zant*, 462 U.S. at 879 (emphasis in original)). The

*McCullah* court went on to say:

> In light of this purpose, Congress, recognizing that it could not adequately account for all
> the possible aggravating and mitigating factors inherent in any particular homicide,
> allowed factors to be considered which it did not specifically enumerate in the statute.
> *See* 21 U.S.C. 848(h)(1)(B), (m)(10). To achieve the goal of individualized sentencing,
> Congress has properly delegated some degree of discretion to the Executive Branch,
> limited by the directive that the factors must be "aggravating" and further constrained by

28

the requirement of notice.  *See* 21 U.S.C 848(h)(1)(B).  The established notion of "aggravating factors", coupled with the principle of individualized sentencing and notice, provides an "intelligible principle"  to which the executive branch must conform its exercise of the delegated power. *See Mistretta*, 488 U.S. at 372.  Further, the limited nature of the delegated power should also be noted; an (n)(1) statutory aggravating factor must be present for a defendant to be death-eligible, and only then do the non-statutory factors come into play.  *See* 21 U.S.C. 848(k).

*Id.*

Statutory aggravating factors are used to determine eligibility for the death penalty, and in doing so they "have a distinct constitutional function: narrowing the range of conduct for which the death penalty may even be considered."  *Fields*, 516 F.3d at 944 (citing *Buchanan v. Angelone*, 522 U.S. 269, 275-76 (1998) (contrasting eligibility and selection stages of sentencing); *Tuilaepa*, 512 U.S. at 971-75 (same)).  Non-statutory aggravating factors have no place in the eligibility determination and "are relevant only in the weighing process at the ensuing sentence-selection stage."  *Id.*  Once a jury has taken a defendant through the required steps, and reached the selection stage,  "the critical constitutional imperative is no longer narrowing the range of potential defendants eligible for the death penalty  but, rather, ensuring that the jury focuses on the particular case before it and makes 'an individualized determination' whether the death-eligible defendant 'should in fact receive that sentence . . . on the basis of [his] character . . . and the circumstances of the crime.'" *Id.* (quoting *Tuilaepa*, 512 U.S. at 972 (internal quotation marks omitted)).

Given this wealth of precendent, the Court finds that non-statutory aggravating factors do not constitute an unlawful delegation of legislative authority.  Even if it could be argued that the presentation of non-statutory aggravating factors involves a delegation of authority to the Executive Branch, it is clear that a prosecutor's power to define and include non-statutory

29

aggravating factors is not without an intelligible principle, as the prosecution must act within congressionally mandated and court-imposed constraints.  *Mistretta*, 488 U.S. at 372.  The delegation is therefore not a forbidden delegation of legislative power.  *Id.*

## 2.  Violation of the Ex Post Facto Clause

Article I, Section 9 of the United States Constitution provides that "No . . . ex post facto Law shall be passed."  The *Ex Post Facto* Clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"  *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 41 (1990)).  The Defendant argues that allowing the prosecution to identify non-statutory aggravating factors is a violation on the prohibition on *ex post facto* laws because "18 U.S.C. §3592 permits the prosecution to manufacture out of whole cloth aggravating circumstances to be applied retroactively to crimes committed before the aggravating circumstances are identified."

This exact argument was rejected recently in *United States v. O'Reilly*, 2007 U.S. Dist. LEXIS 62122 ( E.D. Mich. Aug. 23, 2007), where the defendant argued "that the FDPA violates the Ex Post Facto Clause because it 'permits the Government to define, create if you will, aggravating circumstances to be applied retroactively to crimes committed before the circumstances are articulated.'"  *O'Reilly*,  2007 U.S. Dist. LEXIS 62122, at *18.  As the *O'Reilly* court noted, this argument as been repeatedly rejected by the federal courts.  *See Higgs*, 353 F.3d at 322; *United States v. Cheever*, 423 F. Supp. 2d 1181, 1207-08 (D. Kan. 2006); *United States v. Regan*, 228 F. Supp. 2d 742, 748 (E.D. Va. 2002; *United States v. Plaza*, 179 F. Supp. 2d 444 (E.D. Pa. 2001); *United States v. McVeigh*, 944 F. Supp. 1478, 1485 (D. Colo. 1996); *see also United States v. Purkey*, 428 F.3d 738, 749 (8th Cir. Mo. 2005) ("Non-statutory

aggravating factors do not increase the maximum punishment to which a defendant is subject. They are neither sufficient nor necessary under the FDPA for a sentence of death.  Their purpose is merely to aid the sentencer in selecting the appropriate sentence from  the available options, on the basis of the character of the [defendant] and the circumstances of the crime." (internal citations omitted)).

The Court's previous discussion of the nondelegation doctrine makes it clear that the "elements" of a capital crime under the FDPA include only the gateway intent factors and one or more statutory aggravating factors.  "Once the jury makes those findings, a defendant is eligible for the death penalty, and the penalty that he faces cannot be increased any further. Non-statutory aggravators do not even come into play until after the jury has found a defendant eligible for the death penalty.  They neither change the definition of the underlying crime, nor do they increase the potential punishment.*"  Cheever*, 423 F. Supp. 2d at 1207-08; *O'Reilly*, 2007 U.S. Dist. LEXIS 62122, at *19 ("The prosecution does not rewrite the elements of the crime when it identifies nonstatutory factors.  Similarly, the use of nonstatutory factors does not increase the punishment for the crime.").

Non-statutory aggravating factors cannot violate the Ex Post Facto Clause because they in no way serve to *increase* the punishment a death-eligible defendant may receive.  This is exemplified by the fact that non-statutory aggravating factors need not be included in the indictment, unlike statutory factors.  *Mitchell*, 502 F.3d 931 (2007); *United States v. Brown*, 441 F.3d 1330, 1368 (11th Cir. Ga. 2006); *Purkey*, 428 F.3d at 749-50; *Bourgeoi*s, 423 F.3d at 507-08; *Higgs*, 353 F.3d at 298-99 ("[n]onstatutory aggravating factors and mitigating factors are weighed by the jury to make theindividualized determination to impose the death sentence

upon a defendant who has already been found eligible. They do not increase the possible punishment or alter the elements of the offense.").

Therefore, because non-statutory aggravating factors do not expose the Defendant to any increased punishment and "are neither sufficient nor necessary under the FDPA for a sentence of death," *Purkey*, 428 F.3d at 749, they do not help define the crime and do not violate the Ex Post Facto Clause.

### 3. Victim Impact Non-Statutory Aggravator

The Defendant next argues that a victim impact evidence non-statutory aggravator must be both an "aggravating" circumstance (meaning, to him, that it must be "worse" than mere murder) and it must describe a circumstance "other" than the crime itself, citing 18 U.S.C. § 3592(c) (jury may find "any other aggravating factor for which notice has been given").  He asserts that the victim impact aggravator in the Notice of Intent must be dismissed because it does not meet these standards.  Further, the Defendant argues that the factor is not "aggravating" because "every murder of a family member causes 'injury, harm, and loss' to the victim's family that is irreparable," and thus does not make the crimes with which the Defendant is charged "worse" than every other murder.  For the reasons discussed below, the Court finds that the Defendant's arguments are without merit.

In *Payne v. Tennessee*, the United States Supreme Court ruled that the Eighth Amendment erects no per se bar to the admission of victim impact evidence during the sentencing phase of a defendant's capital trial.  *Payne*, 501 U.S. 808, 827 (1991) ("We thus hold that if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar.").  Evidence

demonstrating that "the victim is an individual whose death represents a unique loss to society and in particular to his family" and evidence concerning the harm caused to the victim is generally admissible.  *Id*. at 825.

The Defendant acknowledges *Payne* as well as 18 U.S.C. §3593(a), which explicitly states that a Notice of Intent "may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."  However, he maintains that the Government has not properly plead in the Indictment or Notice of Intent that the victim impact factor is both "aggravating" and "other."

The Defendant's insistence that a non-statutory aggravating factor such as a victim impact aggravator must be both "aggravating" and "other" is confusing.  Non-statutory aggravating factors are authorized by the concluding sentence of § 3592(c), which states, after listing the sixteen statutory aggravating factors:

> The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

As argued by the Government in response, this reference to "other" aggravating factors means "any aggravating factor not included in the list of the sixteen statutory factors."  This is exactly why non-statutory aggravating factors exist, may be proffered by prosecutors, and are subsequently included for the jury's consideration at the selection stage.  As the Government points out, "victim impact is not included among the sixteen factors and, therefore, necessarily falls into the 'other' category."

In *Jones v. United States*, the United States Supreme Court concluded that victim impact

33

evidence is an "appropriate subject[] for the capital sentencer's consideration."  *Jones*, 527 U.S. 373, 402 (1999).  In *Jones*, the defendant, whom the jury unanimously recommended be sentenced to death, challenged as overbroad the two non-statutory aggravators that the jury unanimously found had been proved.  *Id.* at 377-79.   One factor set forth victim impact evidence and the other victim vulnerability evidence.  *Id.* at 378.  The Court noted that while it had previously found that a statutory aggravating factor "can be overbroad if the sentencing jury 'fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty,'" *Id.* at 401 (quoting *Arave*, 507 U.S. at 474), it had never "specifically considered what it means for a factor to be overbroad when it is important only for selection purposes and especially when it sets forth victim vulnerability or victim impact evidence."  *Id.*

The court acknowledged that "[o]f course, every murder will have an impact on the victim's family and friends," and when viewed in that light victim impact and victim vulnerability factors would seem to "fall within the Eighth Amendment's proscription against overbroad factors."   *Id.*  However, that could not be true because:

> [e]ven though the *concepts* of victim impact and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized.  And such evidence is surely relevant to the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty.

*Id.* at 401-02 (emphasis in original).

At both the eligibility stage, where at least one statutory factor must be proved, and the selection stage, where the statutory factor or factors are considered along with nonstatutory and mitigating factors, the process must be "'neutral and principled so as to guard against bias or caprice in the sentencing decision.'"  *Id.* at 402 (quoting *Tuilaepa*, 512 U.S. at 973).  The *Jones*

Court concluded that "[s]o long as victim vulnerability and victim impact factors are used to direct the jury to the individual circumstances of the case, we do not think that principle will be disturbed.  Because [the victim impact and victim vulnerability factors] directed the jury to the evidence specific to this case, we do not think that they were overbroad in a way that offended the Constitution." *Id.*

The victim impact evidence non-statutory aggravator proffered by the Government in the Notice of Intent states:

Victim Impact Evidence

1.  The defendant caused injury, harm and loss to the family of Abeer Kassem Hamza Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

2.  The defendant caused injury, harm and loss to the family of Hadeel Kassm Hamza Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

3.  The defendant caused injury, harm and loss to the family of Kassem Hamza Rachid Al-Janabi, as evidenced by his personal characteristics as a human being and the impact of his death on his family.

4.  The defendant caused injury, harm and loss to the family of Fakhriya Taha Mohsine Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

5.  The injuries caused by the defendant extend especially to the two minor children orphaned as a result of their parents' death and to those presently caring for the children.

If this case reaches the sentencing phase, the Court believes this evidence will help to inform the jury about the individual circumstances of the case.  As the United States Supreme Court has determined that this type of evidence is constitutionally admissible, the Defendant's request to strike the non-statutory aggravating factor of victim impact evidence is denied.

Perhaps in acknowledgment of the fact that the FDPA expressly allows for victim impact

evidence, see 18 U.S.C. § 3593(a), and there is no constitutional basis on which to grant his request to dismiss the victim impact non-statutory aggravator, in his reply the Defendant argues that the Court should order the Government to provide a more detailed summary of the victim impact evidence that it intends to introduce.

Possibly anticipating this request[8], in its response the Government asserts that nothing more is required, because (1) Green has been given Notice of the Government's intent to seek the death penalty along with specific notice of the aggravating factors upon which it intends to rely; (2) the Indictment identifies the victims and outlines the specific conduct by the Defendant that warrants application of the threshold intent factors and statutory agravators; and (3) the Notice of Intent sets forth the aggravating factors that the Governments intends to prove at trial, including the victim impact factor.

While the Notice of Intent references the harm to the family of each victim, and makes specific reference to the injuries to the two minor children orphaned as a result of their parents' death and to those presently caring for the children, the Notice is still somewhat general.  The Court believes that in this case, it will be necessary, at some point before the trial, for the Government to provide more specific information to the Defendant on the nature of the information it will provide as victim impact evidence.  The Court believes that this will be necessary in order to allow the Defendant to adequately prepare responses to sentencing phase evidence, and in order to allow the Court to determine if a pre-sentencing hearing will be necessary to review that evidence.

_____

[8]The Government actually stated "To the extent Green's argument could be construed as a request for more specificity as to the victim impact proof to be offered by the United States, it should be denied."

In making this decision, the Court follows other courts that have required the Government to produce more information on the victim impact aggravator.  *United States v. Wilson,* 493 F. Supp. 2d 364, 378 (E.D.N.Y. 2006); *United States v. Plaza,* 179 F. Supp. 2d 464, 474-75 (E.D. Pa. 2001)*; United States v. Bin Laden*, 126 F. Supp. 2d 290, 304 (S.D.N.Y. 2001); *United States v. Cooper*, 91 F. Supp. 2d 90, 111 (D.D.C. 2000)*; United States v. Glover*, 43 F. Supp. 2d 1217, 1225 (D. Kan. 1999)

"The category of 'victim impact' is vast. The Defendant is entitled to have some sense of how this will be proved an aggravating factor that the jury could consider in coming to an '*individualized* determination on the basis of the character of the individual and the circumstances of the crime' of whether [the Defendant] should receive a death sentence. *Wilson*, 493 F. Supp. 2d at 378 (quoting *Zant*, 462 U.S. at 879 (emphasis in original)).

This case is obviously unique.  The families of the victims are located overseas in a country in which the United States is currently engaged in military operations.  It is this feature of the case that compels the Court to require more specific victim impact information, but at the same time also restrains the Court from placing a time limit on the production at this time.  *See Bin Laden,* 2126 F.Supp.2d at 304 (ordering the Government to provide a limited bill of particulars "specifying the particularized categories of 'injury, harm, and loss' that will be proffered at sentencing, whether it be suffered by a victim or a victim's family," in part because the lengthy estimated duration of the trial's liability phase and the very large number of victims (most all located abroad) would require the Defendant to invest a substantial amount of time and energy preparing for sentencing).  While the Government has indicated its opposition to an order requiring it to produce a summary of its victim impact evidence, it has not suggested a reason

37

why it would be unable to produce a summary.  However, the Court does not know the amount

time and resources producing such a summary will entail.

Thus, the Court orders the Government to provide a brief detailing the circumstances of

obtaining such information and what it will require.  The Government must provide this brief, to

the extent such information is known or reasonably anticipated, by September 1, 2009.

### 4.  Witness Elimination Non-Statutory Aggravator

The Defendant's final argument is that the Court should dismiss the witness elimination

non-statutory aggravator set forth by the Government in the Notice of Intent because it can be

applied in "almost every murder" and does not narrow the class of defendants eligible for capital

punishment.  The aggravator, as set forth in the Notice of Intent, states:

> Witness Elimination
>
> Defendant killed the victim and witnesses of his alleged rape, including Abeer Kassem
> Hamza Al-Janabi**,** Hadeel Kassm Hamza Al-Janabi**,** Kassem Hamza Rachid Al-Janabi,
> and Fakhriya Taha Mohsine Al-Janabi, in order to eliminate these victims as possible
> witnesses to his crimes.

The Defendant offers little argument to support this proposition, other than that it is

overbroad because "the murder of any person necessarily results in elimination of a witness" and

the factor therefore applies to every defendant eligible for the death penalty.

As the Court explained above, only the statutory aggravating factors are required to

perform the required narrowing function while the  non-statutory factors serve as additional

information for the sentencer.  *Henderson*, 485 F. Supp. 2d at 868.  Non-statutory aggravating

factors may only be considered if they are unanimously found, but they play no part in the jury's

eligibility determination.  Instead, they **"**serves the purpose of ensuring an individualized

sentence that minimizes the risk of arbitrary and capricious action" at the selection phase.  Id.

38

Thus, the Defendant's argument that the witness elimination non-statutory aggravating factor should be dismiss because it does not narrow the class of defendant's eligible for capital punishment is without merit.  Further, the Court does not agree that the witness elimination aggravator may be applied "in almost every murder."  As the Government stated in response, "some murderers are motivated to kill their victims for financial gain or for some revenge." There are myriad reasons that may motivate one person to kill another.  To kill a person in order to eliminate them as a witness to a crime is a specific purpose.  The witness elimination non-statutory aggravator is valid and the Government may offer proof of the aggravator to the jury, and, if proved, will help to insure an individualized sentence that minimizes the risk of arbitrary and capricious action.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Aggravators, and Dismiss the Government's Death Penalty Notice is **DENIED**.

An appropriate order shall issue.