UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                              PLAINTIFF

v.

STEVEN DALE GREEN                                                     DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court upon the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Special Findings from the Indictment, and Strike the Notice of Intent to Seek the Death Penalty (Docket #96). The United States has responded (Docket #106). This matter is ripe for adjudication. For the following reasons, the Defendant's Motion is **DENIED.**

**BACKGROUND**

On February 16, 2005, Defendant Steven Green enlisted in the U.S. Army, 101st Airborne Division. In September 2005, he was deployed to Iraq. On April 14, 2006, the Defendant's Company Commander, Captain John Goodwin, notified him that Goodwin was initiating action to separate Green from the military for a personality disorder pursuant to Army Regulation 635-200 5-13. On April 2, 2006, Brigade Commander Colonel Todd Ebel requested Defendant's release from theater in Iraq on grounds of a discharge for personality disorder. After his arrival at Ft. Campbell, the Defendant was administratively out-processed and discharged from the Army on May 16, 2006.

Approximately five weeks after the Defendant's discharge, U.S. Army command in Mahmoudiyah, Iraq, first received information that the Defendant was involved in the rape and murder of an Iraqi family in Yousifiyah, Iraq. The Defendant's co-conspirators, who were all still

in the Army and subject to the Uniform Code of Military Justice ("UCMJ"), were interviewed by the Army's Criminal Investigation Division and criminally charged on June 6, 2006. On June 30, 2006, a sealed criminal complaint was filed in the Western District of Kentucky charging Defendant with numerous violations of the Military Extraterritorial Jurisdiction Act ("MEJA") for his role in the Yousifiyah offenses. The Defendant was arrested and made his initial appearance on July 3, 2006, in the Western District of North Carolina. An agreement was reached to waive venue. On November 7, 2006, an indictment was returned against the Defendant, charging him with sixteen counts of conspiracy, aggravated sexual abuse, premeditated murder, and firearm charges pursuant to MEJA, and an additional count of obstruction of justice under 18 U.S.C. § 1512(c)(1).

The Defendant's alleged co-conspirators Sergeant Paul Cortez, Specialist James Barker, and Private First Class Jesse Spielman, all tried for rape and murder, were convicted by courts-martial. Cortez was sentenced to life without parole while Barker and Spielman were sentenced to life with possibility of parole. All three sentences were reduced pursuant to plea agreements to 100, 90, and 110 years imprisonment, respectfully. All are eligible for parole in ten years.

By letter dated February 15, 2007, the Defendant volunteered to reenlist in the Army in order to subject himself to the military justice system. The Army declined to pursue this course of action.

On July 3, 2007, the Government filed its Notice of Intent to Seek the Death Penalty ("Notice of Intent"), pursuant to 18 U.S.C. § 3593(a) of the Federal Death Penalty Act.[1]

---

[1] 18 U.S.C. § 3593(a) states: If, in a case involving an offense described in section 3591 [18 USCS § 3591], the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--
 (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter [18 USCS §§ 3591

2

**DISCUSSION**

In this Motion, the Defendant presents several arguments as to why this Court should declare the Federal Death Penalty Act (FDPA) unconstitutional and dismiss both the "Special Findings" from the Indictment and the Notice of Intent to Seek the Death Penalty ("Notice of Intent"). Several of the Defendant's arguments are based on his contention that the weighing of aggravating and mitigating factors at the selection stage in a case where the defendant is eligible for the death penalty under the FDPA is a "fact" that must by found by the jury beyond a reasonable doubt. The Defendant also argues that the Notice of Intent and the "Special Findings" should be dismissed because the grand jury was not informed of the consequences of returning an indictment with "special findings, i.e., that the Defendant would become eligible for the death penalty. The Defendant argues, for various reasons, that *Ring v. Arizona*, 536 U.S. 584 (2002), rendered the FDPA facially unconstitutional. Finally, the Defendant argues that the FDPA violates due process by denying defendants the presumption of innocence as to the sentencing elements of the offense.

**A. Weighing of Aggravating and Mitigating Factors: Element of the Offense?**

To impose a death sentence under the FDPA, the capital jury must first determine that the defendant is guilty of the underlying death-eligible crimes. If a capital case reaches the sentencing phase, the jury's duties are divided into two stages: eligibility and selection. During the eligibility phase, the defendant becomes death-eligible only if the jury finds unanimously and beyond a reasonable doubt that: (1) the defendant was 18 years of age or more at the time of the

---

et seq.] and that the government will seek the sentence of death; and
   (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

offense, 18 U.S.C. § 3591(a); (2) the defendant had the requisite mental state when he committed the offense, 18 U.S.C. § 3591(a)(2)(A)-(D); and (3) at least one statutory aggravating factor listed at 18 U.S.C. §3592(c)(1)-(16) exists.

If the jury unanimously and beyond a reasonable doubt finds that all three of these exist, the selection phase begins. During the selection phase, the jury weighs the statutory aggravating factor or factors and non-statutory aggravating factors of which the government has given notice against mitigating factors to determine if the death penalty is warranted. *See* 18 U.S.C. § 3593(e). Non-statutory aggravating factors must be unanimously found by the jury beyond a reasonable doubt, while the defendant has the burden of proving mitigating factors by a preponderance of the evidence. 18 U.S.C. § 3593(c). However, "[t]he establishment of nonstatutory aggravating factors is neither necessary nor sufficient to authorize imposition of the death penalty." *United States v. Fields*, 483 F.3d 313, 325 (5th Cir. 2007), *cert denied,* 128 S. Ct. 1065 (2008).

If at least one mitigating factor is found, the jury then decides whether all the aggravating factors "sufficiently outweigh" the mitigating factor(s). 18 U.S.C. § 3593(e). Based upon its consideration of the aggravating and mitigating factors, the jury, by unanimous vote, recommends whether the defendant should be sentenced to death, to life imprisonment without possibility of release, or some other lesser sentence. *Id.*

The Defendant argues that this selection-stage weighing process violates the Sixth Amendment, as construed in *Ring v. Arizona*, 536 U.S. 584 (2002), because it does not require the jury to apply the reasonable doubt standard in deciding whether the aggravating factors outweigh the mitigators. The Defendant contends that the weighing process equates to a finding

4

of fact that increases the maximum punishment to which capital defendants are exposed, therefore constituting an element of the offense. If the weighing process is an element of the offense, the Sixth Amendment would require that it be found beyond a reasonable doubt.

In *Ring*, the United States Supreme Court applied *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to capital cases. *Ring*, 536 U.S. 584, 609. In *Apprendi*, the Court held that the due process clause of the Fifth Amendment and right to trial by jury under the Sixth Amendment require that any fact that can increase the maximum penalty must be charged and proven beyond a reasonable doubt. *Apprendi*, 530 U.S. at 476. Under *Apprendi*, facts and factors that can increase the maximum penalty are viewed as elements of the offense that must be charged by the grand jury and proved by the government. *Id.* The *Ring* Court extended the *Apprendi* logic to aggravating factors in capital cases which "operate as 'the functional equivalent of an element of a greater offense,' and must therefore be found by a jury because "[t]he right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years, but not the factfinding necessary to put him to death." *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.10).

Despite the Defendant's assertion, this rule does not require the jury to apply the reasonable doubt standard during the weighing process. This argument has been considered and rejected by the First, Fifth, Eight, Ninth, and Tenth Circuit Courts of Appeals, and a district court of the Sixth Circuit. *United States v. Fields*, 516 F.3d 923, 950 (10th Cir. 2008) (following *United States v. Barrett*, 496 F.3d 1079, 1107 (10th Cir. 2007)); *Fields*, 483 F.3d at 345-46; *United States v. Mitchell*, 502 F.3d 931, 993 (9th Cir. 2007); *United States v. Sampson*, 486 F.3d 13, 31 (1st Cir. 2007); *United States v. Purkey*, 428 F.3d 738, 748 (8th Cir. 2005); *United States*

*v. Galan*, 2007 U.S. Dist. LEXIS 73479, at *7-8 (N.D. Ohio Oct. 2, 2007) (citing with approval the Fifth Circuit's holding in *United States v. Fields* that weighing does not involve fact-finding).

The Fifth Circuit held in *United States v. Fields* that the *Apprendi/Ring* rule does not apply to the weighing process because "the jury's decision that the aggravating factors outweigh the mitigating factors is not a finding of fact. Instead, it is a 'highly subjective,' 'largely moral judgment' 'regarding the punishment that a particular person deserves...'" *Fields*, 483 F.3d at 346 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985)). "The *Apprendi/Ring* rule applies by its terms only to findings of fact, not to moral judgments." *Id.* (citing *Ring*, 536 U.S. at 602). As the Government states in its response, "the comparative weight of the aggravating and mitigating factors, and whether it justifies a death sentence, has no independent existence outside the minds of the jurors in the deliberation room**.**"

This holding of the Fifth Circuit in *Fields* was followed by the Tenth Circuit in *United States v. Barrett*, a case involving the death penalty scheme for continuing criminal enterprises and drug activities in 21 U.S.C. § 848. *Barrett*, 496 F.3d at 1107. In a recent FDPA case, the Tenth Circuit followed its *Barrett* decision and rejected the defendant's contention that the jury should have been instructed that it could impose th death penalty if it determined, beyond a reasonable doubt, that the aggravating factor or factors outweighed the mitigating factor or factors. *Fields*, 516 F.3d at 950 ("This issue is controlled by our decision in *Barrett*, which followed the Fifth Circuit in holding that a reasonable-doubt standard is not required in the weighing process").

The Ninth Circuit, in *United States v. Mitchell*, reasoned that at the selection stage "the jury's task is no longer to find whether factors exist; rather, each juror is to 'consider' the factors

6

already found and to make an individualized judgment whether a death sentence is justified." *Mitchell*, 502 F.3d at 993 (citing 18 U.S.C. § 3593(e)). Instead, the weighing of aggravating factors against mitigating factors "is an 'equation' that 'merely channels a jury's discretion by providing it with criteria by which it may determine whether a sentence of life or death is appropriate.'" *Id.* (quoting *Kansas v. Marsh*, 126 S. Ct. 2516, 2526 (2006)).

The *Mitchell* court went on, and stated that by extrapolating to its logical end the defendant's assertion that the beyond a reasonable doubt standard should be imposed upon this process, "the corollary obligation under the Fifth Amendment would presumably be triggered, and the 'fact' that aggravating factors outweigh mitigating factors would need to be found by the grand jury and charged in the indictment." *Id.* at 993-94 (citing *United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005) (en banc); *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) ("under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment")). That is highly problematic, the court concluded, because "the grand jury has no way of knowing what mitigating factors the defendant will urge." *Id.*

In *United States v. Sampson*, the First Circuit dismissed this argument on both statutory and constitutional fronts. *Sampson*, 486 F.3d at 31-32. Statutorily, the court said:

> The FDPA makes no mention of the reasonable doubt standard in the context of weighing aggravating and mitigating factors, see 18 U.S.C. § 3593(e), but it does reference the reasonable doubt standard in two proximate sections, see id. §§ 3591(a)(2), 3593(c). Because the inclusion of a term in one part of a statute is persuasive evidence that its omission elsewhere is deliberate, we hold that Congress did not intend the reasonable doubt standard to apply to the weighing process.

*Id.* at 31 (internal citation omitted).

Constitutionally, like the Defendant here, Sampson contended that the balance between aggravating and mitigating factors was a "fact" to be found by the jury beyond a reasonable doubt. *Id.* Like the courts discussed above, the First Circuit rejected this argument because Sampson "assume[d] without the slightest support, that the weighing of aggravating and mitigating factors is a *fact*." *Id.* at 32 (emphasis in original). Instead, "the requisite weighing constitutes a process, not a fact to be found. The outcome of the weighing process is not an objective truth that is susceptible to (further) proof by either party. Hence, the weighing of aggravators and mitigators does not need to be 'found.'" *Id.* (internal citations omitted).

Although none of these decisions are binding on this Court, they are clear evidence of a consensus among the federal courts that the weighing of aggravating and mitigating factors at the selection stage is not a "fact" that must by found by the jury beyond a reasonable doubt in deciding whether death is the appropriate punishment in a given case. Therefore, contrary to the Defendant's assertion the FDPA is not constitutionally defection for its failure to require that the jury must find beyond a reasonable doubt that aggravation outweighs mitigation in order to impose a death sentence upon a defendant.

**B.  The Indictment**

   **1.  Effect of "Special Findings"**

The Defendant argues that the Notice of Intent should be dismissed, and the Indictment's "Special Findings" should be stricken, because the grand jury was not informed of the consequences of returning an indictment with "special findings," i.e. that by returning the indictment, the Defendant would be held to answer to an offense punishable by death. The Defendant argues that nothing on the face of the Indictment indicates that the grand jury was

aware that it was being asked to determine whether the Defendant should be held to answer for a capital offense.

In response, the Government argues that Supreme Court precedent, as applied in various federal courts, makes clear that the Indictment Clause of the Fifth Amendment does not require the government to inform the grand jurors of the potential penalties that attach to their special findings. Instead, an indictment need only charge the elements necessary to constitute the offense, and need not charge the ultimate punishment sought for the offense committed.

This Court, in this action, has already held that the Government was not required to inform the grand jury that its decision to return "special findings" as to aggravating factors would make Defendant eligible for capital punishment. *United States v. Green*, 2007 U.S. Dist. LEXIS 17300, at *12 (W.D. Ky. Mar. 9, 2007). In rejecting the Defendant's Motion to Dismiss the Indictment on various grounds, including the Defendant's argument that "the prosecution may have improperly instructed the grand jury if the grand jury was not informed that its decision to return 'special findings' as to aggravating factors would make Defendant eligible for capital punishment, the Court stated:

> An indictment need only charge the elements necessary to constitute the offense and need not charge the ultimate punishment sought for the offense committed. Specifically, the Supreme Court has stated:
>
>> It is generally sufficient that an indictment set forth the offense in the words of the statute itself, so long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished."
>
> *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)).
>
> In *United States v. Haynes*, the defendant argued that grand jury could not fulfill its role as a check on prosecutorial power because there was no indication that the grand jury

knew that its special findings might make defendant eligible for the death penalty. 269 F. Supp. 2d 970, 981 (W.D. Tenn. 2003). The court finding no authority in support of the defendant's proposition and rejecting defendant's argument, stated:

> The grand jury's role is not to decide whether probable cause supports the imposition of a particular sentence against a charged individual; rather the grand jury check on prosecutorial power stems from its independent factual determination of the existence of probable cause for the essential elements of the charged offense.

*Id.* (citing *Branzburg v. Hayes*, 408 U.S. 665, 686-87 (1972); *Stirone v. United States*, 361 U.S. 212, 217-19 (1960)).

*Id.* at *11-12.

The Court finds no reason to disturb its previous holding on this issue. Prosecutors are not required to inform a grand jury that the decision to return "special findings" as to aggravating factors will make a defendant eligible for capital punishment.

**2. Does the Indictment allege all of the elements of a capital crime?**

The Defendant argues that the Indictment should be dismissed because the government did not present the third element necessary for the grand jury to make the decision as to whether he "should be subject to the death penalty, *i.e.*, whether the aggravating factors outweigh the mitigating factors sufficiently to justify a sentence of death." This is simply a continuation of the Defendants's argument that the weighing of aggravating and mitigating factors at the selection stage constitutes an element of the offense that must be found by the jury beyond a reasonable doubt. As the Court has found that this argument is without merit based on the clear consensus among the federal courts that the weighing of aggravating and mitigating factors at the selection stage is not a "fact" that must by found by the jury beyond a reasonable doubt, it must reject this argument as well.

**C. The effect of *Ring v. Arizona* on the FDPA**

**1. Has Ring rendered the FDPA facially unconstitutional?**

When Congress enacted the FDPA in 1994, the prevailing rule, set forth by the Supreme Court in *Walton v. Arizona*, 497 U.S. 639 (1990), was that "'the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.'" *Walton*, 487 U.S. at 648 (quoting *Hildwin v. Florida*, 490 U.S. 638 (1989) (per curiam)). Instead, such findings could be made by a judge. *Id.* at 647. The Court in *Walton* held that statutory aggravating factors could be found by a sentencing judge because they were not "essential elements" of an offense. *Id*. at 648-49.

The Court revisited *Walton* in *Jones v. United States*, 526 U.S. 227 (1999). There, the Court considered whether the federal carjacking statute "defined three distinct offenses or a single crime with a choice of three maximum penalties, two of them dependent on sentencing factors exempt from the requirements of charge and jury verdict." *Jones*, 526 U.S. at 229. The Court held that it established three separate offenses, and therefore the facts necessary to trigger the escalating maximum penalties had to be decided by the jury. *Id.* at 251-52. In response to the dissenting opinion, the Court stated the principle behind its view that if the statute was read to define a single crime, it might be unconstitutional: "Under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 243 n. 6. The Court said of *Walton* that it "characterized the finding of aggravating facts falling within the traditional scope of capital sentencing as a choice between a greater and a lesser penalty, not as a process of raising the ceiling of the sentencing range available." *Id.* at 251.

In 2000, the Court decided *Apprendi v. New Jersey*. There, the trial judge had sentenced the defendant to two years over the maximum that would have applied but for the judge's determination that a racial bias sentence enhancement applied. *Apprendi*, 530 U.S. at 470-71. The Court held that Apprendi's sentence violated his right to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi*, 530 U.S. at 477. The Court reasoned that "if a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact -no matter how the State labels it-must be found by a jury beyond a reasonable doubt." *Ring,* 536 U.S. at 602 (discussing *Apprendi*, 530 U.S. at 482-483). The *Apprendi* Court reconciled its decision with *Walton*, reasoning that as long as it is the jury that finds "the defendant guilty of all the elements of an offense which carries as its maximum penalty the sentence of death, it may be left to the judge to decide whether that maximum penalty, rather than a lesser one, ought to be imposed.'" *Apprendi*, 530 U.S. at 497 (quoting *Almendarez-Torres*, 523 U.S. 224, 257 n. 2 (1998) (Scalia, J., dissenting) (emphasis deleted)).

In *Ring v. Arizona*, however, the Court explicitly overruled *Walton*, holding that *Apprendi* and *Walton* were irreconcilable. *Ring*, 536 U.S. at 609. There, the Court considered Arizona's death penalty statute, which did not allow the imposition of a death sentence unless at least one aggravating factor was found beyond a reasonable doubt, yet did not require that those factors be found by a jury. *Id.* at 595-96. The Court held that the Sixth Amendment requires statutory aggravating factors to be found by a jury because they operate as the "functional equivalent of an element of a greater offense." *Id.* at 595-96, 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). The Court overruled *Walton* "to the extent that it allows a sentencing judge, sitting

without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." *Id.* at 609.

The issue of whether the Indictment Clause of the Fifth Amendment requires aggravating factors to be charged in the indictment for a defendant to become eligible for the death penalty was neither raised nor addressed by the Court in *Ring* because *Ring* was a state death penalty case. *See id* at 588.

In his motion, the Defendant raises the no-longer-novel argument that *Ring* rendered the FDPA facially unconstitutional because it does not *require* the government to allege, and the grand jury to charge, the necessary aggravating factors in the indictment. He asserts that the Court held in *Ring* that "mental state and statutory and even non-statutory aggravating factors operate as elements of a great offense of capital murder," and "in federal cases, where the Indictment Clause of the Fifth Amendment applies, all the elements of federal capital murder must be alleged by indictment." According to the Defendant, this is a flaw that cannot be fixed by simply allowing the grand jury to allege the aggravating factors in the indictment. Instead, he argues, only Congress can cure the deficiency in the FDPA.

The Defendant's facial challenge to the FDPA is unpersuasive, and every court that has considered this argument has rejected it. *See United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007); *United States v. Brown*, 441 F.3d 1330 (11th Cir. 2006); *United States v. Allen*, 406 F.3d 940 (8th Cir. 2005); *United States v. Robinson*, 367 F.3d 278 (5th Cir. 2004); *United States v. D-3 Kevin Watson*, 2007 U.S. Dist. LEXIS 62057 ( E.D. Mich. Aug. 23, 2007). "A facial challenge to a legislative Act is...the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be

valid.." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The first circuit to consider this facial challenge to the FDPA in the wake of *Ring* was the Fifth Circuit in *United States v. Robinson*. There, the court held:

> The FDPA is not facially unconstitutional under the Indictment Clause. Although Robinson is correct to point out that nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment, he fails to note that there is nothing in that law inhibiting such a charge. The government can easily comply with both its constitutional obligations (by first going to the grand jury) and its statutory obligations (by later filing a § 3593(a) notice of intention to seek the death penalty). As a result, the statute is not facially unconstitutional.

*Robinson*, 367 F.3d at 290. The Fifth Circuit's holding was adopted by the Eleventh Circuit in *United States v. Brown*, 441 F.3d at 1367 and the Eight Circuit in *United States v. Allen*, 406 F.3d at 949 ("While it is true that the FDPA directs the government to charge these factors in a notice of intent to seek the death penalty, nothing in the Act precludes the government from also submitting them to the grand jury for inclusion in the indictment. This is the practice that the Department of Justice has adopted after *Ring*, and it preserves the constitutionality of FDPA prosecutions.").

More recently, the First Circuit, in *United States v. Sampson*, noted that the omission of any mention of the grand jury in the FDPA is understandable in light of the prevailing *Walton* rule at the time the statute was enacted. *Sampson*, 486 F.3d at 20. The court discussed the evolution of *Ring*, and stated "in the wake of *Ring*, Supreme Court precedent now firmly establishes that the mental culpability and aggravating factors required by the FDPA must- in addition to being included in the government's notice to seek the death penalty-be presented to a grand jury, charged in the indictment, and proved beyond a reasonable doubt." *Id.* at 21. The court noted the uniform rejection of the *Ring* v. FDPA argument by other circuits and held:

> there is no irredeemable conflict between the FDPA and *Ring*. The FDPA does not, as Sampson suggests, grant to prosecutors exclusive authority for determining the likely existence of aggravating factors. No provision of the FDPA prohibits a grand jury from considering those factors necessary for imposition of a death sentence. The statute simply is silent with respect to the function of the grand jury. It thus is not rendered facially unconstitutional by *Ring*.

*Id.*

The *Sampson* court also rejected the defendant's reliance on *United States v. Jackson*, 390 U.S. 570 (1968), also advanced by the Defendant here. *Id.* at 22. The Defendant argues, like Sampson, that allowing the government to allege, and the grand jury to charge, aggravating factors in the indictment is impermissible because those procedures have no basis in the FDPA.

In *Jackson*, the Supreme Court invalidated the death penalty provision of the Federal Kidnaping Act, which permitted only a jury to impose a death sentence. *Jackson*, 390 U.S. at 591. The argument was that the Act violated the defendant's right to a jury trial by effectively encouraging, in order to avoid a death sentence, either a guilty plea or waiver of the right. *Id.* at 572-73. The government urged that the statute could be saved by reading it to allow a judge, in the event of a guilty plea or bench trial, to convene a "special jury" to determine whether the death penalty was warranted. *Id.* The Court rejected this suggestion, stating that it could not "create from whole cloth a complex and completely novel procedure and...thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality." *Id.* at 580.

The *Sampson* court held that it was not required to "create from whole cloth a complex and completely novel procedure," because "the role of the grand jury in charging the elements of an offense has long been established." *Sampson*, 486 F.3d at 22 (citing *Hamling v. United States*, 418 U.S. 87, 117-18 (1974); *Russell v. United States*, 369 U.S. 749, 763-64 (1962)).

15

Further, to the extent that *Ring* also requires that the jury find beyond a reasonable doubt any statutory aggravating factors, the FDPA already provides for the beyond a reasonable doubt standard. *See* 18 U.S.C. §§ 3591(a)(2), 3593(c).

For these reasons, the Court finds that *Ring* does not render the FDPA unconstitutional on its face.

### 2. Relaxed Evidentiary Standard

The Defendant also argues that the FDPA violates the Constitution because 18 U.S.C. § 3593(c) provides that when the jury is determining death penalty eligibility during the sentencing phase, the Federal Rules of Evidence (FRE) do not apply:

> Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.

The Defendant argues that the admission of evidence not constrained by the FRE renders the procedures for determining death eligibility unreliable.

The Supreme Court of the United States has rejected the notion that stringent evidentiary rules should apply at capital sentencing hearings, stressing instead the importance of the jury or the sentencing judge having a full and complete body of information available for consideration. As the Court stated in *Williams v. New York*:

> Highly relevant-if not essential- to [a judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Williams*, 337 U.S. 241, 247 (1949).  The Supreme Court reaffirmed this principle in *Gregg v.*

*Georgia*, stating that "so long as the evidence introduced and the arguments made at the pre-sentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes a sentencing decision." *Gregg*, 428 U.S. 153, 203-04 (1976).

The Defendant's specific argument has been rejected by the Second, Fourth, Fifth, Eight, Ninth, and Tenth Circuit Courts of Appeals. *United States v. Mitchell,* 502 F.3d 931, 979-80 (9th Cir. 2007); *United States v. Barrett,* 496 F.3d 1079, 1109 (10th Cir. 2007) (upholding the same evidentiary standard as it is used in 21 U.S.C. § 848(j)); *United States v. Fulks,* 454 F.3d 410, 437-38 (4th Cir. 2006); *United States v. Fell*, 360 F.3d 135 (2d Cir. 2004); *United States v. Lee,* 374 F.3d 637, 648 (8th Cir. 2004); *United States v. Jones*, 132 F.3d 232, 241-42 (5th Cir. 1998), *aff'd*, 527 U.S. 373 (1999). These courts have made it clear that to achieve the required "heightened reliability" at capital sentencing, *more* evidence should be admitted as to aggravating and mitigating factors. *More* evidence is admissible by relaxing the evidentiary standard from that required by the FRE. Numerous district courts have also held that the evidentiary standard set forth in §3593(c) meets constitutional requirements. *See United States v Haynes*, 269 F. Supp. 2d 970, 983-87 (W.D. Tenn. 2003); *United States v. Battle*, 264 F. Supp. 2d 1088, 1105-07 (N.D. Ga. 2003); *United States v. Johnson*, 239 F. Supp. 2d 924, 944-46 (N.D. Iowa 2003) (upholding the same evidentiary standard as it is used in 21 U.S.C. § 848(j)); *United States v. Matthews*, 246 F. Supp. 2d 137, 141-46 (N.D.N.Y 2002); *United States v. Regan*, 221 F. Supp. 2d 672, 681-83 (E.D. Va. 2002); *United States v. Minerd*, 176 F. Supp. 2d 424, 435-36 (W.D. Pa. 2001); *United States v. Cooper*, 91 F. Supp. 2d 90, 98 (D.D.C. 2000); *United States v. Frank*, 8 F. Supp. 2d 253, 267-71 (S.D.N.Y. 1998); *United States v. Nguyen*, 928 F. Supp. 1525,

1546-47 (D. Kan. 1996); *United States v. McVeigh*, 944 F. Supp. 1478, 1487 (D. Colo. 1996).

Given this wealth of persuasive authority, the Court finds no reason to engage in an independent analysis of this argument. The Second Circuit's holding in *Fell* has been adopted and repeated by numerous courts, and the Court will reproduce it here:

> Congress has the authority to set forth rules of evidence in federal trials subject only to the requirement that the rules comport with the Constitution, and it may "modify or set aside any judicially created rules of evidence and procedure that are not required by the Constitution." *Dickerson v. United States*, 530 U.S. 428, 437 (2000); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Tot v. United States*, 319 U.S. 463, 467 (1943). It was this authority that allowed Congress to promulgate the FRE in the first place, and it is this authority that permits Congress to forgo their application under the FDPA. So long as the FDPA Standard provides a level of protection that ensures that defendants receive a fundamentally fair trial, the act satisfies constitutional requirements. That requirement is certainly met, given that the balancing test set forth in the FDPA is, in fact, more stringent than its counterpart in the FRE, which allows the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403 (emphasis added). Thus, the presumption of admissibility of relevant evidence is actually narrower under the FDPA than under the FRE.

*Fell*, 360 F.3d at 145.

The Court finds no reason to break from this overwhelming consensus among the federal courts that the relaxed evidentiary standard in § 3593(c) is not unconstitutional, and in fact, provides more protection to a capital defendant by providing for the most individualized sentence possible. The FDPA standard provides a level of protection that ensures that defendants receive a fundamentally fair trial and that it is not unconstitutional.

### D.  Presumption of Innocence

Finally, the Defendant argues that the FDPA denies defendants the presumption of innocence as to the sentencing elements of the offense, in violation of due process rights. The Defendant claims that under the FDPA, not only is he deprived of the presumption of innocence,

but the jury is "told the defendant is guilty." Notably, the defendant in *United States v. Cheever*, 423 F. Supp. 2d 1181 (D. Kan. 2006) made this same claim, to which the court responded: "On the contrary, the jury is not told the defendant is guilty. If the case proceeds to a penalty phase, it will be because the jury has found defendant guilty on at least one of the murder counts." *Cheever*, 423 F.Supp.2d at 1195 n.12.

In support of his argument, the Defendant cites *Taylor v. Kentucky*, 436 U.S. 478 (1978), where the Court "noted that an instruction on the presumption of innocence is somewhat redundant if a jury is instructed on the government's burden of proof beyond a reasonable doubt," yet "also observed that such an instruction can help a lay juror's understanding of the government's burden and the defendant's corresponding lack of a duty to prove anything." *Cheever*, 423 F.Supp.2d at 1196 (citing *Taylor*, 436 U.S. at 484-85).

The Court agrees with the court in *Cheever*, which stated that an instruction on the presumption of innocence at the penalty phase would not help the jury as in Taylor, but would "cause the jury more confusion." *Id.* This is because "at the penalty phase of an FDPA proceeding, the jury has already found the defendant guilty of the underlying murder charge." *Id.*
A presumption of innocence charge "would tell the jury that this guilty person is still somehow presumed innocent. Innocent of what? The jury's decision-life or death-would have no rational connection to the concept of innocence, which means freedom from guilt." *Id.*

In a case such as this, the jury only reaches the sentencing phase if it unanimously finds the defendant guilty on an underlying charge. The jury must then unanimously find that the defendant is eligible for the death penalty before it selects whether or not to impose the penalty.

A presumption of innocence instruction "would then necessarily give rise to some other instruction that endeavors to explain what it means for a guilty person to be considered innocent and how the jury is to perform the mental gymnastics necessary to meaningfully employ that presumption in its deliberations." *Id.*

> If this case reaches the sentencing phase:
>
> the jury will be instructed in no uncertain terms that it is the government's burden to prove, if it can, to a unanimous jury beyond a reasonable doubt everything required to make defendant eligible for the death penalty, and everything required for the jury to return a recommendation of death, as contemplated by both the FDPA and the Constitution. The jury will also be instructed in unequivocal terms that defendant has no burden or duty to prove anything (unless, or course, defendant elects to present evidence in mitigation, in which case the jury will be instructed on the preponderance standard, lack of a unanimity requirement to consider mitigating factors, etc.). Under those circumstances, defendant will not be deprived of his constitutional right to a fair trial.

*Id.*

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Special Findings from the Indictment, and Strike the Notice of Intent to Seek the Death Penalty is **DENIED**.

An appropriate order shall issue.