UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                                                 PLAINTIFF

v.

STEVEN DALE GREEN                                                                         DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court upon the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike the Death Penalty Notice as Inadequate (Docket #97). The United States has responded (Docket #104). This matter is ripe for adjudication. For the following reasons, the Defendant's Motion is **DENIED.**

**BACKGROUND**

On February 16, 2005, Defendant Steven Green enlisted in the U.S. Army, 101st Airborne Division. In September 2005, he was deployed to Iraq. On April 14, 2006, the Defendant's Company Commander, Captain John Goodwin, notified him that Goodwin was initiating action to separate Green from the military for a personality disorder pursuant to Army Regulation 635-200 5-13. On April 2, 2006, Brigade Commander Colonel Todd Ebel requested Defendant's release from theater in Iraq on grounds of a discharge for personality disorder. After his arrival at Ft. Campbell, the Defendant was administratively out-processed and discharged from the Army on May 16, 2006.

Approximately five weeks after the Defendant's discharge, U.S. Army command in Mahmoudiyah, Iraq, first received information that the Defendant was involved in the rape and murder of an Iraqi family in Yousifiyah, Iraq. The Defendant's co-conspirators, who were all still in the Army and subject to the Uniform Code of Military Justice ("UCMJ"), were interviewed by

the Army's Criminal Investigation Division and criminally charged on June 6, 2006. On June 30, 2006, a sealed criminal complaint was filed in the Western District of Kentucky charging Defendant with numerous violations of the Military Extraterritorial Jurisdiction Act ("MEJA") for his role in the Yousifiyah offenses. The Defendant was arrested and made his initial appearance on July 3, 2006, in the Western District of North Carolina. An agreement was reached to waive venue. On November 7, 2006, an indictment was returned against the Defendant, charging him with sixteen counts of conspiracy, aggravated sexual abuse, premeditated murder, and firearm charges pursuant to MEJA, and an additional count of obstruction of justice under 18 U.S.C. § 1512(c)(1).

The Defendant's alleged co-conspirators Sergeant Paul Cortez, Specialist James Barker, and Private First Class Jesse Spielman, all tried for rape and murder, were convicted by courts-martial. Cortez was sentenced to life without parole while Barker and Spielman were sentenced to life with possibility of parole. All three sentences were reduced pursuant to plea agreements to 100, 90, and 110 years imprisonment, respectfully. All are eligible for parole in ten years.

By letter dated February 15, 2007, the Defendant volunteered to reenlist in the Army in order to subject himself to the military justice system. The Army declined to pursue this course of action.

On July 3, 2007, the Government filed its Notice of Intent to Seek the Death Penalty ("Notice of Intent"), pursuant to 18 U.S.C. § 3593(a) of the Federal Death Penalty Act.[1]

---

[1] 18 U.S.C. § 3593(a) states: If, in a case involving an offense described in section 3591 [18 USCS § 3591], the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--
  (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter [18 USCS §§ 3591 et seq.] and that the government will seek the sentence of death; and
  (2) setting forth the aggravating factor or factors that the government, if the defendant is

2

## DISCUSSION

In this Motion, the Defendant presents several arguments as to why both the Indictment and Notice of Intent to Seek the Death Penalty ("Notice of Intent") should be dismissed. While this Motion is styled as a Motion to Declare the Federal Death Penalty Act Unconstitutional, the Defendant has not presented any arguments as to why the FDPA is not constitutionally sound; therefore, the Court will not address the constitutionality of the FDPA. The Court will address the Defendant's contentions that the Indictment and Notice of Intent should be dismissed because they (1) provide insufficient notice, and (2) improperly allege that the Defendant committed the charged offenses with all four mental states set forth in 18 U.S.C. § 3591(a)(2)(A)-(D).

### A.  Factual Basis in Indictment and Notice of Intent to Seek the Death Penalty

The Defendant alleges that the "Special Findings" in the Indictment and the Notice of Intent are both insufficient to either apprise of him of the nature of the gateway intent and aggravating factors upon which the government will rely or enable him to prepare his defense to these allegations. The Defendant's general argument is that he is entitled to greater specificity in each document, and because neither the Indictment nor the Notice of Intent allege the factual basis for the gateway intent or aggravating factors, they must be dismissed.

The FDPA provides that a defendant may only be subject to a sentence of death if the jury first determines, beyond a reasonable doubt, that the government has established that the defendant had the mental state described in at least one of four gateway intent factors. 18 U.S.C. § 3591(2)(A)-(D) (2008). Further, a defendant may not be subject to a sentence of death unless

---

convicted, proposes to prove as justifying a sentence of death.

the government, at "a reasonable time before the trial or before acceptance by the court of a plea of guilty," files with the court and serves on the defendant a notice of intent "setting forth the aggravating factor or factors" upon which it intends to rely as grounds for the death penalty. 18 U.S.C. § 3593(a)(2). These "aggravating factors" are those statutory and non-statutory factors set forth in § 3592(c). The FDPA does not *require* that the Government identify any mental state in the Notice. *See* § 3593(a) (requiring only aggravating factor(s) to be identified).

Here, both the Indictment in its "Special Findings" section, returned on November 6, 2006, and the Notice of Intent, filed on July 3, 2007, set forth the four gateway mental states listed in § 3591 and the aggravating factors upon which the Government intends to rely.

The FDPA does not mention providing notice of the specific evidence that will prove the factors, and it has been held by several courts that the Government is in fact "*not* required to provide specific evidence in its notice of intent." *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir.1999), *cert. denied*, 529 U.S. 1022 (2000) (emphasis added); *see also United States v. Lecroy*, 441 F.3d 914, 929 (11th Cir. 2006). The *Battle* court held that the notice given to a defendant of the applicable aggravating factors is not the same as notice of the specific evidence that the government intends to present at a sentencing hearing. *Id.* (citing *United States v. Nguyen*, 928 F. Supp. 1525, 1545-46 (D. Kan. 1996) (holding Government's notice of intent permissible even though "it listed only the aggravating circumstances and provided no detail about the evidence the government intended to offer in support")).

The holding in *Battl*e has been adopted by both the Eighth and Fourth Circuits and has not been cited with disapproval by any court. The Fourth Circuit, in *United States v. Higgs*, held that "[t]he FDPA and the Constitution require that the defendant receive adequate notice of the

4

aggravating factor...not notice of the specific evidence that will be used to support it." *Higgs*, 353 F.3d 281, 325 (4th Cir. 2003), *cert. denied*, 543 U.S. 1004 (2004); *see also United States v. Lee*, 274 F.3d 485, 495 (8th Cir. 2001). *See United States v. Lujan*, 530 F. Supp. 2d 1224, 1268 (D.N.M. 2008) ("Adequate notice under the FDPA is satisfied where the government sets forth the aggravating factors that it intends to prove; § 3593 does not convey additional discovery rights."); *United States v. Solomon*, 513 F. Supp. 2d 520, 538 (W.D. Pa. 2007); *United States v. Taylor*, 2006 U.S. Dist. LEXIS 81202, at *30-32 (E.D. Tenn. Nov. 6, 2006) (adopting the holdings of both *Battle* and *Higgs*); *United States v. Wilson*, 493 F. Supp. 2d 364, 377 (E.D.N.Y. 2006) (denying defendant's motion for a bill of particulars as to aggravating factors, citing Battle, and determining that due process had been satisfied because the defendant was provided with adequate notice to prepare his defense); *United States v. Mayhew*, 380 F. Supp. 2d 936, 947-48 (S.D. Ohio 2005) (rejecting the defendant's argument that the government did not provide enough information in the notice of intent on the grounds that the government is not required to give notice of the specific evidence it will present in support of aggravating factors).

*Battle* pertained specifically to specific evidence of aggravating factors in a notice of intent, but its reasoning is equally applicable to a defendant's demand for a factual basis underlying each alleged mental state. *See United States v. Gooch*, 2006 U.S. Dist. LEXIS 91892, at *69-70 (D.D.C. Dec. 20, 2006) (citing *Battl*e, 173 F.3d at 1347; *Nguyen*, 928 F. Supp. at 1545-46). Further, the Defendant provides no support for his position that he needs an extensive factual basis for the mental state factors.

The Indictment sets forth the four gateway intent factors. The provisions of the FDPA must be considered in light of the entire procedural code, and 18 U.S.C. § 3361, relating to

indictments, refers directly to the Federal Rules of Criminal Procedure. Rule 7 of the Federal rules of Criminal Procedures directs the government to include in the indictment "the essential facts constituting the offense charged." The Supreme Court has stated that there are two criteria for deciding whether an indictment is sufficient: (1) "whether the indictment 'contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet;' and (2) 'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" *Russell v. United States*, 369 U.S. 749, 763-64 (1962) (internal quotes and quotations omitted).

The Court finds that the Indictment provides the Defendant with the essential information, especially when it is considered with the Notice of Intent. The Indictment and Notice of Intent are not vague; they provide a clear outline of the specific acts of which the Defendant is accused, the identities of the victims of his alleged acts, the basis for each of the Counts. They also clearly state, with detail, why the Government believes the death penalty may be imposed.

The Court notes that the Defendant, without support or elaboration, argues that the *Battle* "is obviously abrogated by *Ring v. Arizona*." In *Ring*, the Supreme Court held that the Sixth Amendment requires statutory aggravating factors to be found by a jury because they operate as the "functional equivalent of an element of a greater offense." *Ring v. Arizona*, 536 U.S. 584, 595-96, 609 (2002) (quoting *Apprendi* v. New Jersey, 530 U.S. 466, 494 n.19 (2000)). The Court overruled *Walton v. Arizona*, 497 U.S. 639 (1990), where the Court had held that a sentencing judge, sitting without a jury, could find "an aggravating circumstance necessary for

imposition of the death penalty." *Id.* at 609.  The Court fails to see how *Battle's* holding that a defendant is not entitled to specific evidence in the notice of intent is abrogated by *Ring*.

## B. Multiple Gateway Intent Factors

The Defendant argues that the mental state factors should be stricken from the Indictment and Notice of Intent because they do not provide him meaningful notice as to the mental state with which the Government contends he acted.  He contends that because the Indictment and Notice of Intent allege all four mental states set forth in § 3591(a)(2)(A)-(D), they fail to provide sufficient notice as required by the Fifth and Sixth Amendments.

Under the FDPA, the government must establish that the Defendant had the mental state described in at least one of four gateway intent factors, which require proof that the Defendant:

> (A) intentionally killed the victim;
>
> (B) intentionally inflicted serious bodily injury that resulted in the death of the victim;
>
> (C) intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act; or
>
> (D) intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

18 U.S.C. § 3591(a)(2)(A)-(D).  If the jury unanimously finds beyond a reasonable doubt that the government has proved at least one of these intent factors, the government must then prove the existence of at least one statutory aggravating factor enumerated in section 3592(c).  Then, and only then, may the jury weigh the existence of any statutory and non-statutory aggravating factors against any mitigating factors in order to arrive at a recommended sentence.  18 U.S.C. § 3593(e).

7

Thus, the gatekeeping factors are not aggravating factors but instead serve to limit the imposition of the death penalty only upon those committed an intentional killing. The "[s]atisfaction of these elements only begins the death penalty inquiry; it does not and cannot establish death penalty eligibility by itself." *United States v. Webster*, 162 F.3d 308, 355 (5th Cir. 1998). The gateway factors have no role in the weighing process through which jury makes its ultimate sentencing recommendation; they establish only a "preliminary qualification threshold." *Id.*; *United States v. Minerd,* 176 F. Supp. 2d 424, 445 (W.D. Pa. 2001); *United States v. Cooper*, 91 F. Supp. 2d 90, 110 (D.D.C. 2000). The gateway factors fall away once the jury determines that the government has proved at least one; the jury cannot impose the death penalty unless it unanimously determines that "all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist." 18 U.S.C. § 3593(e).

Contrary to the Defendant's assertion, the Government is not required to select only one of the four gatekeeping factors found for inclusion in the indictment. This proposition has been rejected by several courts, and makes no sense in light of the FDPA's statutory framework. *Webster*, 162 F.3d at 355 (because § 3591(a) does not set forth aggravating factors, but rather serves as a preliminary qualification threshold, it is not impermissible double counting of aggravating factors for a defendant to satisfy more than one via the same course of action); *United States v. Gooch*, 2006 U.S. Dist. LEXIS 91892, at *68-70 (D.D.C. Dec. 20, 2006); *United States v. Natson*, 444 F. Supp. 2d 1296, 1308 (M.D. Ga. 2006); *United States v. Sablan*, 2006 U.S. Dist. LEXIS 96150, at *56 (D. Colo. Apr. 18, 2006); *United States v. Cheever*, 423 F. Supp. 2d 1181, 1199 (D. Kan. 2006) ("...gateway intent factors are mere eligibility factors. The jury must find at least one in order for it to even consider recommending a death sentence. However,

once the jury finds that one of these mental states existed, the role of the gateway intent factors is complete, and the jury may not consider those factors in any of its subsequent findings");

*Cooper*, 91 F. Supp. 2d at 109-10.

> As the factors play no role in the weighing process:
>
> under the statutory framework, it makes no difference whether the jury agrees that one of the factors has been proved or whether all have been proved. Agreement on just a single factor moves the jury to consideration of the aggravating and mitigating factors under § 3592. Furthermore, even if the jury finds that more than one of the intentions have been established, this cannot tip the balance towards a sentence of death because the gatekeeping factors under the FDPA are not weighed.

*Minerd,* 176 F. Supp. 2d at 445.

The Court finds that there is nothing unconstitutional about the Government including all four gateway intent factors in the Indictment and Notice of Intent. If the jury makes a preliminary threshold finding of intent by finding that at least one of the factors exists, it will then proceed to consider the aggravating and mitigating factors, but it will not be able to weigh the gatekeeping factors. "Because these factors are not weighed by the jury, Defendant is not prejudiced by inclusion in the indictment of more than one of the factors." *Sablan*, 2006 U.S. Dist. LEXIS 96150, at *58 (citing *Minerd*, 176 F. Supp. 2d at 445 (holding that "even if the jury finds that more than one of the intentions have been established, this cannot tip the balance towards a sentence of death because the gatekeeping factors under the FDPA are not weighed").

## C. Statutory and Non-Statutory Aggravating Factors

The Defendant's final argument is that the statutory and non-statutory aggravating factors fail to provide adequate notice because they "merely set forth the language of the statute in vague, generic terms and contain no factual allegations."

The Defendants takes issue with only two of the four statutory aggravating factors: that

9

the offenses were committed in "an especially heinous, cruel, and depraved manner, in that it involved torture and serious physical abuse," and that the killings were "substantially planned and premeditated."  The Court held in its Memorandum Opinion denying the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Aggravators, and Dismiss the Government's Death Penalty Notice, citing a wealth of precedent, that neither the "substantial planning and premeditation" statutory aggravator, set forth in § 3592(c)(9), nor the "heinous, cruel, or depraved manner of committing offense" statutory aggravator, set forth in § 3592(c)(6), is unconstitutionally vague, nor do they violate the Eighth Amendment by failing to narrow the category of defendants who are death eligible.

The Defendant argues in this Motion that the aggravating factors are vague, not because of the wording of the aggravators themselves, but because the government did not provide evidentiary detail along with the aggravators.  As the Court held above, the Defendant is not constitutionally entitled to specific evidence regarding the aggravating circumstances.  *Battle*, 173 F.3d at 1347.

The Defendant also argues that the "victim impact" non-statutory aggravating factor is unconstitutionally vague because it uses "such general terms as "personal characteristics" and "family," without specifying those characteristics or what family.  The victim impact aggravating factor, as used in the Notice of Intent, states:

Victim Impact Evidence

1. The defendant caused injury, harm and loss to the family of Abeer Kassem Hamza Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

2. The defendant caused injury, harm and loss to the family of Hadeel Kassm Hamza Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of

her death on her family.

3.  The defendant caused injury, harm and loss to the family of Kassem Hamza Rachid Al-Janabi, as evidenced by his personal characteristics as a human being and the impact of his death on his family.

4.  The defendant caused injury, harm and loss to the family of Fakhriya Taha Mohsine Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

5.  The injuries caused by the defendant extend especially to the two minor children orphaned as a result of their parents' death and to those presently caring for the children.

In its Memorandum Opinion denying the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional, Dismiss Aggravators, and Dismiss the Government's Death Penalty Notice, the Court denied the Defendant's request to strike the victim impact evidence is aggravator but ordered the Government to produce more information on the aggravator by September 1, 2009.  The Court believes this brief, when produced, will alleviate the Defendant's arguments regarding any alleged vagueness with the victim impact aggravator, and negates the Court's need to further address the Defendant's argument in this Motion.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike the Death Penalty Notice as Inadequate is **DENIED**.

An appropriate order shall issue.