UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:06CR-19-R

UNITED STATES OF AMERICA                                        PLAINTIFF

v.

STEVEN DALE GREEN                                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court upon the Defendant's Motion to Declare the Federal

Death Penalty Act Unconstitutional Because it is Arbitrary; Violates Evolving Standards of

Decency; and is Applied in a Fundamentally Unfair Manner (Docket #98).  The United States

has responded (Docket #101).  This matter is ripe for adjudication.  For the following reasons,

the Defendant's Motion is **DENIED.**

## BACKGROUND

On February 16, 2005, Defendant Steven Green enlisted in the U.S. Army, 101st Airborne

Division.  In September 2005, he was deployed to Iraq.  On April 14, 2006, the Defendant's

Company Commander, Captain John Goodwin, notified him that Goodwin was initiating action to

separate Green from the military for a personality disorder pursuant to Army Regulation 635-200

5-13.  On April 2, 2006, Brigade Commander Colonel Todd Ebel requested Defendant's release

from theater in Iraq on grounds of a discharge for personality disorder.  After his arrival at Ft.

Campbell, the Defendant was administratively out-processed and discharged from the Army on May

16, 2006.

Approximately five weeks after the Defendant's discharge, U.S. Army command in

Mahmoudiyah, Iraq, first received information that the Defendant was involved in the rape and

murder of an Iraqi family in Yousifiyah, Iraq.  The Defendant's co-conspirators, who were all still

in the Army and subject to the Uniform Code of Military Justice ("UCMJ"), were interviewed by the Army's Criminal Investigation Division and criminally charged on June 6, 2006.  On June 30, 2006, a sealed criminal complaint was filed in the Western District of Kentucky charging Defendant with numerous violations of the Military Extraterritorial Jurisdiction Act ("MEJA") for his role in the Yousifiyah offenses.  The Defendant was arrested and made his initial appearance on July 3, 2006, in the Western District of North Carolina.  An agreement was reached to waive venue.  On November 7, 2006, an indictment was returned against the Defendant, charging him with sixteen counts of conspiracy, aggravated sexual abuse, premeditated murder, and firearm charges pursuant to MEJA, and an additional count of obstruction of justice under 18 U.S.C. § 1512(c)(1).

The Defendant's alleged co-conspirators Sergeant Paul Cortez, Specialist James Barker, and Private First Class Jesse Spielman, all tried for rape and murder, were convicted by courts-martial. Cortez was sentenced to life without parole while Barker and Spielman were sentenced to life with possibility of parole.  All three sentences were reduced pursuant to plea agreements to 100, 90, and 110 years imprisonment, respectfully.  All are eligible for parole in ten years.

By letter dated February 15, 2007, the Defendant volunteered to reenlist in the Army in order to subject himself to the military justice system.  The Army declined to pursue this course of action.

On July 3, 2007, the Government filed its Notice of Intent to Seek the Death Penalty ("Notice of Intent"), pursuant to 18 U.S.C. § 3593(a) of the Federal Death Penalty Act.[1]

---

[1]18 U.S.C. § 3593(a) states: If, in a case involving an offense described in section 3591 [18 USCS § 3591], the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice--

  (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter [18 USCS §§ 3591

2

**DISCUSSION**

The Defendant presents three separate arguments in this Motion.  First, he argues that the Federal Death Penalty Act (FDPA) is unconstitutional because the federal death penalty is infrequently sought and imposed, and therefore operates in an arbitrary, capricious, and unusual manner.  Second, the Defendant argues that the FDPA is unconstitutional because it violates evolving standards of decency under the Eighth Amendment.   Third, he contends that the FDPA is unconstitutional because it violates fundamental fairness.  The Court will address each of these arguments in turn.

**A.  Frequency of the Federal Death Penalty's Application**

The Defendant argues that the FDPA is unconstitutional because the federal death penalty is infrequently sought and imposed, and therefore operates in an arbitrary, capricious, and unusual manner.

The United States Court of Appeals for the First Circuit considered this argument in *United States v. Sampson*, 486 F.3d 13, 23 (1st Cir. 2007) (defendant argued "that because the federal death penalty is infrequently sought and even more infrequently carried out, its imposition is arbitrary, capricious, and therefore unconstitutional").  Like the defendant in *Sampson*, Defendant Green centers his argument around *Furman v. Georgia*, 408 U.S. 238 (1972) (per curium), in which the Supreme Court held that "the imposition and carrying out of the death penalty" in Georgia and Texas constituted "cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments."  *Furman*, 408 U.S. at 239-40.

---

et seq.] and that the government will seek the sentence of death; and

  (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

3

Like the defendant in *Sampson*, Defendant Green argues that the following statement in Justice Stewart's concurring opinion "constitutes the essence of *Furman*." *Sampson*, 486 F.3d at 23. The opinion states:

> These death sentences are cruel and unusual in the same way that being struck by lightning is cruel and unusual. For, of all the people convicted of rapes and murders,... many just as reprehensible as these, the petitioners are among a capriciously selected handful upon whom the sentence of death has in fact been imposed. My concurring Brothers have demonstrated that, if any basis can be discerned for the selection of these few to be sentenced to die, it is the constitutionally impermissible basis of race...I simply conclude that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed.

*Furman*, 408 U.S. at 309-10 (Stewart, J., concurring). Defendant Green also asserts that each of the five concurring Justices in the *Furman* majority noted the infrequency of death sentences. *See Furman*, 408 U.S. at 248 n. 11 (Douglas, J., concurring); *id.* at 291-95 (Brennan, J., concurring); *id.* at 309-10 (Stewart, J., concurring); *id.* at 312 (White, J., concurring); and, *id.* at 354 n.124 and 362-63 (Marshall, J., concurring). The Defendant argues that because the federal death penalty is rarely sought or imposed, the FDPA is no different from the statutes invalidated in *Furman*.

However, "in the thirty-four years since *Furman* was decided, the Court has made clear that its decision [in *Furman*] was not based on the frequency with which the death penalty was sought or imposed. Rather, the primary emphasis of the Court's death penalty jurisprudence has been the requirement that the discretion exercised by juries be guided so as to limit the potential for arbitrariness." *Sampson*, 486 F.3d at 23. In *Gregg v. Georgia*, 428 U.S. 153 (1976), the Court upheld Georgia's amended capital sentencing scheme and said of *Furman*:

> *Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that

4

discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action.

*Gregg*, 428 U.S. at 189 (opinion of Stewart, Powell, and Stevens, JJ.).

The Court in *Gregg* also made clear that

the concerns expressed in *Furman* that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information.

*Id.* at 195.

After *Gregg,* the Court "imposed a number of requirements on the capital sentencing process to ensure that capital sentencing decisions rest on the individualized inquiry contemplated in *Gregg*." *McCleskey v. Kemp*, 481 U.S. 279, 303 (1987). In *Kansas v. Marsh*, 126 S. Ct. 2516 (2006), the Supreme Court stated that together, *Furman* and *Gregg* establish that capital sentencing scheme must "(1) rationally narrow the class of death-eligible defendants; and (2) permit a jury to render a reasoned, individualized sentencing determination based on a death-eligible defendant's record, personal characteristics, and the circumstances of his crime." *Marsh*, 126 S.Ct. at 2524-25.

The Defendant has provided no evidence that the FDPA fails to meet either of these requirements. The FDPA's procedure for guiding the discretion of a jury in a capital case is well-summarized in *United States v. Nguyen*, 928 F. Supp. 1525, 1532 (D. Kan. 1996):

First, the jury must determine whether [the defendant] had the requisite intent to commit the death eligible offense. 18 U.S.C. § 3591(a). If the jury unanimously finds beyond a reasonable doubt that intent is established, it moves to the next step in the penalty process. If the jury does not so find, the deliberations are over and the death penalty may not be imposed.

5

Assuming the jury finds the requisite intent, it must then consider the statutory aggravating factors alleged by the government in its notice to seek the death penalty. The statutory aggravating factors from which the government may choose are listed at 18 U.S.C. §§ 3592(c)(1)-[(16)]. The jury must determine whether the government has proven at least one of the statutory factors alleged beyond a reasonable doubt. 18 U.S.C. § 3593(c). If the jury unanimously so finds, it moves to the next step of the penalty process. If not, the deliberations are over and the death penalty may not be imposed. 18 U.S.C. § 3593(d).

Assuming the jury finds at least one statutory aggravating factor, it must then consider that factor or factors, plus "any other aggravating factor for which notice has been provided," 18 U.S.C. § 3593(d) ("non-statutory aggravating factors"), and weigh them against any mitigating factors to determine whether the death penalty is appropriate. 18 U.S.C. § 3593(e). Non-statutory aggravating factors, like their statutory counterparts, must be unanimously found by the jury beyond a reasonable doubt, while mitigating factors need only be established by a preponderance of the evidence. Further, any juror persuaded that a mitigating factor exists may consider it in reaching a sentencing decision; unanimity is not required. 18 U.S.C. § 3593(c), (d).

*See also Jones v. United States*, 527 U.S. 373, 376-78 (1999).

Finally, the jury may impose the death penalty only if it unanimously determines that all the aggravating factors found to exist sufficiently outweigh all the mitigating factors found to exist. 18 U.S.C. § 3593(e). The jury has the power to recommend "whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." *Id*.

The FDPA sets forth a focused and clear bifurcated procedure where the jury is apprised of the relevant information and guided in the use of that information through a defined sequence of events to determine a death-eligible defendant's punishment. The Defendant does not argue that the FDPA does not meet the requirements of *Gregg*.

The Defendant also cites statistics showing the number of potential death-eligible defendants in the federal system versus the number of those defendants whose cases were authorized for capital prosecution versus those defendants who were actually sentenced to death,

6

versus the number of defendants executed in the federal system from 1988 to 2006 (three). Despite the Defendant's assertion that *Furman* stands for this proposition, the frequency with which the federal death penalty is sought does not render the FDPA unconstitutional. *McCleskey*, 481 U.S. at 308; *Sampson*, 486 F.3d at 24[2]; *United States v. Mitchell*, 502 F.3d 931, 984 (9th Cir. 2007.[3]; *United States v. Barnes*, 532 F. Supp. 2d 625, 632 (S.D.N.Y. 2008); *United States v. Solomon*, 2007 U.S. Dist. LEXIS 35070, at *5 (W.D. Pa. May 14, 2007) (the argument that because "the death penalty is rarely sought, or even more rarely imposed," the FDPA is unconstitutional, "has been explicitly rejected previously by a number of courts" (citing *United States v. Sampson*, 275 F. Supp.2d 49 (D. Mass. 2003); *United States v. O'Driscoll*, 203 F. Supp.2d 334 (M.D. Pa. 2002); *United States v. Hammer*, 25 F. Supp.2d 518 (M.D. Pa. 1998)).

The Supreme Court, in *Gregg*, made it clear that while capital punishment "is an extreme sanction, suitable to the most extreme of crimes," it is "not a form of punishment that may never be imposed, regardless of the circumstances of the offense, regardless of the character of the offender, and regardless of the procedure followed in reaching the decision to impose it." *Gregg*, 428 U.S. at 187.

Accordingly, the Defendant's motion is denied with respect to the argument that

---

[2]Citing United States Attorneys' Manual § 9-10.000, http://www.usdoj.gov/usao/eousa/ foia_reading_room/usam/title9/10mcrm.

[3]Stating, in a footnote: "The Department of Justice reported in 2000 that '[f]rom 1930 to 1999, state governments executed over 4,400 defendants. During the same time period, the federal government executed 33 defendants and has not carried out any executions since 1963.' U.S. Dep't of Justice, The Federal Death Penalty System: A Statistical Survey (1988-2000) 5 (2000). As of 2004, there have been three executions under the FDPA. See Joshua Herman, comment, Death Denies Due Process: Evaluating Due Process Challenges to the Federal Death Penalty Act, 53 DePaul L. Rev. 1777, 1895 n. 182 (2004)."

infrequent imposition of the death penalty under the FDPA renders it arbitrary and capricious.

**B.  Evolving Standards of Decency**

The Defendant next argues that the FDPA is unconstitutional because it violates evolving standards of decency under the Eighth Amendment.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  This Amendment "guarantees individuals the right not to be subjected to excessive sanctions.  The right flows from the basic 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'"  *Roper v. Simmons*, 543 U.S. 551, 560 (2005) (quoting *Atkins v. Virginia*, 536 U.S. 304, 311 (2002).

"The prohibition against 'cruel and unusual punishments,'...must be interpreted according to its text, by considering history, tradition, and precedent, and with due regard for its purpose and function in the constitutional design."  *Id.*  Determining what constitutes "cruel and unusual punishment" requires reference to "'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel an unusual."  *Id.* at 560-61 (quoting *Trop v. Dulles*, 356 U.S. 86, 100-101 (1958) (plurality opinion)).

The Supreme Court has recently determined that "evolving standards of decency" render unconstitutional the execution of mentally retarded defendants and juvenile offenders under eighteen.  *Atkins*, 536 U.S. at 321; *Roper*, 543 U.S. at 568.  The Defendant argues that these decisions, along with the declining number of death sentences and executions, combined with a few statistics regarding jurors and the death penalty, the status of the death penalty around the

world, and recent state moratoriums on the death penalty, together support the conclusion that

the death penalty does not comply with the "evolving standards of decency" in our society.

However, while it may be possible that there has been a shift in the national attitude

concerning capital punishment,[4] the Supreme Court decided this issue in *Gregg* and found that

imposing the death penalty as a punishment for murder is not unconstitutional per se:

> [W]e are concerned here only with the imposition of capital punishment for the crime of
> murder, and when a life has been taken deliberately by the offender, we cannot say that
> the punishment is invariably disproportionate to the crime . . . . We hold that the death
> penalty is not a form of punishment that may never be imposed, regardless of the
> circumstances of the offense, regardless of the character of the offender, and regardless of
> the procedure followed in reaching the decision to impose it.

*Gregg*, 428 U.S. at 187.

The Supreme Court's holding has not altered in the more than thirty years that have

passed since *Gregg*.  "If the Supreme Court has directly decided an issue, the lower courts must

reach the same result 'unless and until [the] Court reinterpret[s] the binding precedent.'"  *United

States v. O'Reilly*, 2007 U.S. Dist. LEXIS 62122, at *38 ( E.D. Mich. Aug. 23, 2007) (quoting

*Agostini v. Felton*, 521 U.S. 203, 238 (1997).  Therefore, the question of whether or not the

United States should continue to utilize the death penalty in this country because it violates

evolving standards of decency is not one for this Court to decide

## C.  Consistency of the Federal Death Penalty's Application

The Defendant argues that the FDPA is unconstitutional because it violates fundamental

fairness.  In support, he cites the Supreme Court's decision in *Eddings v. Oklahoma* as requiring

---

[4]The Court takes no position on whether such a shift exists.  Further, determining
whether such a shift exists would require a much more extensive and in depth study of the issue
than the few statistics presented by the Defendant in his Motion.

"that capital punishment be imposed fairly, and with reasonable consistency, or not at all."

*Eddings*, 455 U.S. 104, 112 (1982).  The Defendant argues federal juries impose the death

penalty without fairness or consistency and predictability.  In support, he presents a three-page

list of cases "intended  to show there is no discernable basis for why a relatively few defendants

receive death sentences while most do not."  *United States v. Taylor*, 2008 U.S. Dist. LEXIS

5316, at *10-11 (E.D. Tenn. Jan. 24, 2008) (defendant made same argument, citing similar

support); *see also Barnes*, 532 F. Supp. 2d at 633-34 (similar argument using *Eddings* made and

rejected).

This argument is virtually a reiteration of the Defendant's prior argument that the FDPA

is unconstitutional because the federal death penalty is sought and imposed in an arbitrary,

capricious, and unusual manner.  However, "*Eddings*, like *Furman*, is concerned with fair and

consistent *sentencing*."  *Id.* at *11 (emphasis in original).  After setting forth the above quote, the

Supreme Court in *Eddings* immediately went on to explain that:

> By requiring that the sentencer be permitted to focus "on the characteristics of the person
> who committed the crime," *Gregg*, [428 U.S. at 197], the rule in *Lockett* [*v. Ohio*, 438
> U.S. 586 (1978)] recognizes that "justice... requires...that there be taken into account the
> circumstances of the offense together with the character and propensities of the
> offender."  *Pennsylvania v. Ashe*, 302 U.S. 51, 55 (1937).  By holding that the sentencer
> in capital cases must be permitted to consider any relevant mitigating factor, the rule in
> *Lockett* recognizes that a consistency produced by ignoring individual differences is a
> false consistency.

*Eddings*, 455 U.S. at 112.

The Defendant presents no evidence and makes no argument that the FDPA's *procedures*

are unfair or inconsistent.  Instead, he "emphasizes the effect of the FDPA, which is an

unavailing argument.  Inconsistent results are not unconstitutional."  *Taylor*, 2008 U.S. Dist.

LEXIS 5316, at *11 (citing *McCleskey*, 481 U.S. at 307 n.28).  The Supreme Court held in

*McCleskey* that "[t]he Constitution is not offended by inconsistency in results based on the objective circumstances of the crime.  Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt."  *McCleskey*, 481 U.S. at 307 n.28.

"The Constitution requires fair and consistent sentencing *proceedings*," and the Defendant has not shown the FDPA violates that requirement.  *Taylor*, 2008 U.S. Dist. LEXIS 5316, at *11 (emphasis added). Accordingly, the Defendant's motion is denied with respect to the consistency with which the federal death penalty is imposed.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional Because it is Arbitrary; Violates Evolving Standards of Decency; and is Applied in a Fundamentally Unfair Manner is **DENIED**.

An appropriate order shall issue.

11