UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:06-CR-19-R

UNITED STATES OF AMERICA,                                                                         PLAINTIFF

v.

STEVEN D. GREEN,                                                                                          DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant Steven Green's Motion to Dismiss for Lack of Jurisdiction (Docket #99). The government has filed a response (Docket #107). Defendant has filed a reply (Docket #124). This matter is now ripe for adjudication. For the reasons that follow, Defendant's motion is DENIED.

**FACTUAL BACKGROUND**

Defendant Steven Green enlisted in the United States Army on February 16, 2005. He was deployed to Iraq in September, 2005. On April 14, 2006, Defendant's company commander, Captain John Goodwin, notified Defendant that Goodwin was initiating action to separate Green from the military for a personality disorder pursuant to Army Regulation ("AR") 635-200 5-13.

On May 9, 2006, Defendant received his separation orders, reassigning him to Fort Campbell for transition processing. The separation order stated that after processing, Defendant was discharged from the army on May 16, 2006, unless the order was otherwise changed or rescinded.

On May 11, 2006, Defendant completed his preseparation counseling checklist. Defendant later received an Installation Final Clearance Memorandum, which stated that Defendant had completed installation clearance, and was eligible for departure on May 16, 2006. On May 15, 2006,

Defendant's separation order was stamped "FINAL INSTALLATION CLEARANCE." On May 16, 2006, Defendant received his final pay, and was issued a DD Form 214, Certificate of Release or Discharge From Active Duty.

Approximately five weeks after Defendant received his DD Form 214, the U.S. Army command in Mahmoudiyah, Iraq, first received information that Defendant was involved in the rape and murder of an Iraqi family in Yousifiyah, Iraq. Defendant was arrested in North Carolina on June 30, 2006. He was then charged with a 16-count indictment under the Military Extraterritorial Jurisdiction Act ("MEJA").

## LEGAL BACKGROUND

MEJA extends Federal criminal jurisdiction to persons who commit criminal acts while a member of the Armed Forces, but are not tried for those crimes by military authorities and later cease to be subject to military control. It was enacted to close a "jurisdictional gap" that allowed such crimes to go unpunished. H.R. Rep. No. 106-778(I) (2000), 2000 WL 1008725, at *5.

MEJA provides that:

> Whoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than 1 year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States–
>
> > (1) while employed by or accompanying the Armed Forces outside the United States; or
> >
> > (2) while a member of the Armed Forces subject to chapter 47 of title 10 (the Uniform Code of Military Justice),
>
> shall be punished as provided for that offense.

18 U.S.C. § 3261(a).

The Uniform Code of Military Justice ("UCMJ") regulates the conduct of all persons serving

in the United States Armed Forces. Active duty members of the military are subject to the UCMJ. 10 U.S.C. §802(a)(1).

The parties agree that when Defendant's alleged offense occurred while Defendant was an active duty member of the United States Army subject to the UCMJ. However, there are limitations when a member of the armed forces is prosecuted under MEJA.

> No prosecution may be commenced against a member of the Armed Forces subject to chapter 47 of title 10 (the Uniform Code of Military Justice) under this section unless–
>
> > (1) such member ceases to be subject to such chapter; or
> >
> > (2) an indictment or information charges that the member committed the offense with one or more other defendants, at least one of whom is not subject to such chapter.

18 U.S.C. § 3261(d).

Defendant states that he is still a member of the United States Army, and therefore still subject to the UCMJ. As such, Defendant argues that his prosecution under MEJA is barred by 18 U.S.C. § 3261(d). The government argues that Defendant was validly discharged from the military, and therefore may be prosecuted in a civilian court under 18 U.S.C. § 3261(d)(1).

## ARMY REGULATIONS

Defendant argues that the Army failed to follow certain regulations during his separation from the military. Specifically, Defendant argues that his discharge process did not comply with army regulations, specifically AR 635-10 and AR 635-200. AR 635-10 is entitled *Personnel Separations – Processing Personnel for Separation*. AR 635-200 is entitled *Personnel Separations – Active Duty Enlisted Administrative Separations*. Defendant believes that the Army's failure to follow these regulations rendered his May 16, 2006 discharge from the Army invalid.

First, Defendant argues that the army failed to follow two provisions of AR 635-200, which controls the administrative separation of enlisted personnel. An administrative separation is defined in the regulation as "discharge or release from [active duty] upon expiration of enlistment or required period of service, or before, as prescribed by the Department of the Army or by law." Defendant was discharged under AR 635-200 Chapter 5, which concerns separation for the convenience of the government. Specifically, Defendant was discharged under AR 635-200 5-13, separation for personality disorder.

AR 635-200 1-16 requires that a soldier being separated for personality disorder receive a written counseling statement from his commander before the soldier is discharged. Defendant argues that there is no evidence that he ever received a written counseling report before being discharged. However, the Developmental Counseling Form states that it is to be destroyed upon reassignment, separation at ETS, or upon retirement. It is not unexpected that the counseling form would not be in Defendant's file. In addition, the government has submitted a memorandum from Defendant's company commander, Captain John Goodwin, in which Captain Goodwin requests recommened Defendant's discharge from the Army. In the memorandum, under the section "evidence of rehabilitation," Captain Goodwin references an attached counseling packet. Therefore, there is sufficient evidence for the Court to find that Defendant's commanders did attempt to rehabilitate Defendant before discharging him, as required under AR 635 1-16.

AR 635-200 5-13 states that "[c]ommanders will not take action prescribed in this chapter in lieu of disciplinary action solely to spare a soldier who may have committed serious acts of misconduct for which harsher penalties may be imposed under the UCMJ." Defendant argues that a sergeant in his unit improperly encouraged him to seek separation from the army to avoid

punishment under the UCMJ. However, the regulation only applies to "commanders." The sergeant was not Defendant's commander.

"A commander is, therefore, a commissioned or warrant officer who, by virtue of grade and assignment, exercises primary command authority of a military organization or prescribed territorial area that under pertinent official directives is recognized as a 'command.'" AR 600-20 chapter 1-5(a). The sergeant, as a noncommissioned officer, was not Defendant's commander. Nor was the alleged encouragement an action to separate Defendant under AR 635-200 5-13.

The commander that took action to separate Defendant under AR 635-200 5-13 was Defendant's company commander, Captain Goodwin. No argument has been made that Goodwin was aware of serious act of misconduct at the time Defendant was separated from the army. The evidence before the Court indicates that Defendant's chain of command did not become aware of any alleged misconduct until several weeks after May 16, 2006, Defendant's alleged date of discharge.

Therefore, given this evidence, the Court cannot find that any failure to follow the requirements found in AR 635-200 occurred during Defendant's separation process.

Defendant also argues that the Army failed to follow AR 635-10, which controls Army procedure for processing personnel for separation. Defendant states that there is no evidence that he attended a preseparation services program required under AR 635-10 2-3. The preseparation services program is in the form of a mandatory briefing where videotapes are played informing soldiers of reenlistment and civilian job opportunities, as well as discussions concerning VA benefits and the transition to civilian life.

Defendant also states that there is no evidence that he was underwent the pretransition

processing sequence established by AR 635-10 2-4. This regulation requires various counselings and examinations prior to the separation of a servicemember.

Defendant states that his unit did not conduct a departure ceremony prior to his separation as required under AR 635-10 3-1. The regulation states that a command departure ceremony will be held for members transitioning from the unit with an honorable character of service.

Defendant argues that he never received various orientations, medical examination reviews and the presentation of certain informational packets. These requirements are found in AR 635-10 3-6 through 3-8.

Finally, Defendant argues that the army did not follow AR 635-10 3. This regulation requires the separating soldier to surrender his DD Form 2A, his active duty ID card. The government does not dispute that Defendant had a DD Form 2A on him at the time of his arrest.

## DISCUSSION

### I. Waiver of Jurisdiction

United States District Courts have subject matter jurisdiction over all offenses against the laws of the United States. 18 U.S.C. § 3231. The question of military jurisdiction has always been characterized as a question of personal jurisdiction. *See e.g., United States v. Howard*, 20 M.J. 363, 354 (C.M.A. 1985). The issue before the Court is whether 18 U.S.C. § 3264(d) prevents the Court from exercising personal jurisdiction over Defendant.

There is substantial authority that military authorities may waive jurisdiction over a member of the armed forces. *See People v. Powers*, 227 N.Y.S.2d 463, 464 (N.Y. County Ct. 1962) (citing various cases allowing the waiver of military jurisdiction). If the military has waived its jurisdiction over Defendant, there is nothing in MEJA preventing Defendant's prosecution by civilian

authorities.

The military's jurisdiction may be waived by delivering the defendant to civilian authorities. *Ex parte Sumner*, 158 S.W.2d 310, 311-12 (Tex Crim. App. 1942). This waiver must be by the proper authority. *Ex Parte King*, 246 F. 868, 873 (D.C. Ky 1917). The military may even waive its jurisdiction by failing to assume jurisdiction over a defendant. *Powers*, 227 N.Y.S.2d at 464. In this case, Defendant's command notified civilian authorities of Defendant's alleged crime. By purposefully allowing the Department of Justice to lead in the investigation and prosecution of Defendant, it is clear that even if Defendant were still a member of the armed forces, the proper military authorities waived their jurisdiction over Defendant.

This result is supported by the MEJA's legislative history.

> Subsection (d) limits prosecutions under new section 3261 against persons who, at the time they committed the crime, were members of the Armed Forces. The committee recognizes that the military has the predominant interest in disciplining its members and subsection (d) enacts the general preference that military members be tried by court-martial for their crimes.

H.R. Rep. No. 106-778(I) (2000), 2000 WL 1008725, at *16. Subsection (d) was not meant to give defendant's a right to trial by court-martial. It instead protects the interests of the military, by giving it primary jurisdiction over offenses committed by its members. Because the provision is for the benefit of the military, it is understandable that the military would be able to waive its jurisdiction if doing so is in the best interests of the military.

Finally, there is some authority that Defendant does not even have standing to address this issue. "Moreover, if the civil authorities exercised jurisdiction over petitioner, without the consent of, and even over the protest of the military authorities, only the military authorities could raise the question by asserting their prior rights to possession of the petitioner." *Harris v. Hunter*, 170 F.2d

52, 53 (10th Cir. 1948).

Because these issues were not raised by either party, the Court believes that additional argument would be beneficial before relying on waiver of jurisdiction alone to decide this motion. Therefore, the Court will proceed to the merits of Defendant's motion.

## II. Statutory Requirements for Discharge From the Armed Forces

"It is black letter law that *in personam* jurisdiction over a military person is lost upon his discharge from the service, absent some saving circumstance or statutory authorization." *United States v. Howard*, 20 M.J. 363, 354 (C.M.A. 1985). "Court-martial jurisdiction over active duty personnel ordinarily ends on delivery of a discharge certificate or its equivalent issued pursuant to competent orders." Manual for Courts-Martial 202(a) Discussion (2).

A DD Form 214 is the equivalent of a discharge certificate. *United States v. King*, 27 M.J. 327, 329 (C.M.A. 1989). The DD Form 214 itself it not intended to have any effect on the termination of a member's military status. *United States v. Harmon*, 63 M.J. 98, 102 (C.A.A.F. 2006). Instead, it is the "delivery" of the DD Form 214 that serves as notice that the member's military status is terminated. "'Delivery' in this context has significant legal meaning. It shows that the transaction is complete, that full rights have been transferred, and that the consideration for the transfer has been fulfilled." *United States v. Howard*, 20 M.J. 353, 354 (C.M.A. 1985).

While physical delivery of a discharge certificate is generally considered the event that ends a servicemember's military status, "the discharge authority must have intended the discharge to take effect." *United States v. Harmom*, 63 M.J. 98, 101 (C.A.A.F. 2006). The receipt of a discharge certificate without the requisite intent to discharge a servicemember does not terminate court-martial jurisdiction. *United States v. Guest*, 46 M.J. 778, 780 (A. Ct. Crim. App. 1997).

Defendant does not argue that his discharge certificate was not given pursuant to competent orders. Nor does he raise any issue which would lead the Court to conclude that discharge authority did not intend to terminate Defendant's military status on May 16, 2006.

On the contrary, all of the evidence before the Court demonstrates that it was the intent of Defendant's commanders to discharge Defendant effective May 16, 2006. The decision involved not only Defendant's company commander, it also required the involvement of Defendant's Battalion commander and Brigade commander, who ultimately made the final decision to discharge Defendant. Defendant had orders stating that unless changed or rescinded, he would be discharged from the Army on May 16, 2006. He had a memorandum from the chief of in/out-processing stating that he was cleared to depart the installation on May 16. On May 16, 2006, he received his DD Form 214, which stated he was discharged from the Army.

Defendant argues that despite receiving a valid discharge certificate, he is still subject to court-martial jurisdiction. In support of this argument, Defendant cites *United States v. King*, 27 M.J. 327 (C.M.A. 1989).

While the UCMJ itself does not define the exact point in time when a discharge occurs, military courts have looked to 10 U.S.C. §§ 1168(a) and 1169. *United States v. Hart*, 66 M.J. 273, 275 (C.A.A.F. 2008). In general, military courts have required three elements to be satisfied before an early discharge from the armed forces is effective in removing the soldier from court-martial jurisdiction. *King*, 27 M.J. at 329. "To effectuate an early discharge, there must be: (1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a 'clearing' process as required under appropriate service regulation to separate the member from military service." *United States v. Harmon*, 63 M.J. 98, 101 (C.A.A.F. 2006).

Defendant concedes that he received a valid discharge certificate and a final accounting of pay. Defendant's sole argument is that the third *King* factor was not met because he never completed the clearing process required to separate him from military service.

However, every case involving the *King* factors has had the commander attempt to revoke the defendant's discharge, or the defendant did some fraudulent act that invalidated the discharge. In those cases, the *King* factors were needed to determine the timing of a defendant's discharge to see if the military's assertion of personal jurisdiction over the defendant was valid. In every case, the discharge authority took some action that demonstrated the commander did not intend the discharge to take place as previously ordered. *United States v. Hart*, 66 M.J. 273 274 (C.A.A.F. 2008) (discharged revoked before final pay completed); *United States v. Harmon*, 63 M.J. 98 (C.A.A.F. 2006) (discharge not yet effective when commander placed a valid legal hold on the defendant's discharge); *United States v. Williams*, 53 M.J. 316, 317 (C.A.A.F. 2000) (valid legal hold placed before discharge was effective); *United States v. Melanson*, 53 M.J. 1, 4 (C.A.A.F. 2000) (discharge revoked before becoming effective).

As stated previously, the intent of the commander in effectuating a discharge is an important consideration in whether a discharge is effective in terminating court-martial jurisdiction. In the above cases, a defendant's commander demonstrated a clear intent to revoke the defendant's discharge. In present case, there is nothing in the record that would indicate that Defendant's commanders intended to revoke Defendant's discharge, or in any way prevent Defendant from being discharged. The record reflects a clear intention by Defendant's commanders to discharge Defendant effective May 16, 2006.

Furthermore, there is nothing preventing a commander from discharging a servicemember

10

even if court-martial jurisdiction is established, and the military has begun its prosecution of a defendant. The authority to retain a servicemember on active duty pending court-martial is discretionary and not self-executing. *Smith v. Vanderbush*, 47 M.J. 56, 58 (C.A.A.F. 1997).

The military's determination that Defendant has been discharged, and is no longer subject to court-martial jurisdiction, is entitled to some deference. "The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 645 U.S. 83, 93 (1953). "[T]he policy of non-intervention in the affairs of the military is based on the recognition that the military is best left to solve its own problems within its administrative system." *Rank v. Gleszer*, 288 F. Supp. 174, 175 (D.C. Colo. 1968).   .

Finally, even if Defendant's commanders had attempted to revoke the discharge after May 16, 2006, the Court finds that Defendant completed the clearing process as contemplated by *King*.

The clearing process is also known as outprocessing. *United States v. King*, 37 M.J. 520, 522 (A.C.M.R. 1993) (holding that defendant was still under military jurisdiction because he had not yet completed his discharge outprocessing). *See also United States v. Melanson*, 50 M.J. 641, 644 (A. Ct. Crim. App. 1999) (defendant has completed clearing process involved in outprocessing from unit, but had failed to complete clearing process involved in separating from the Army due to status as a soldier still in a foreign country).

The record before the Court is clear that Defendant completed his outprocessing. Defendant had received an installation clearance memorandum from the chief of in/out processing, stating that Defendant had completed the clearing process. In addition, upon the completion of the clearing

process, Defendant's separation orders were stamped "FINAL INSTALLATION CLEARANCE." This is sufficient evidence for the Court to find that Defendant completed his outprocessing as contemplated by *King*.

The regulations cited by Defendant, while related to the separation process, are not part of the administrative clearing process required for discharge. The regulations in this case involve ceremonies and briefings intended to aid a soldier's transition to civilian life. However, these are not the sort of regulations that military courts have examined when determining if a defendant has completed the clearing process.

When establishing that the clearing process is necessary for an effective early discharge, the Court of Military Appeals in *King* relied on *United States v. Cole*, 24 M.J. 18, 24 (C.M.A. 1987). *King*, 27 M.J. at 329. The clearing process in Cole involved the preparation of a form used by a servicemember who was clearing post. *Cole*, 24 M.J. at 24. This form was necessary for the servicemember to receive his DD Form 214. *Id.* at 24 n.7. In the present case, no argument has been made that Defendant failed to complete the proper administrative forms authorizing the receipt of his DD Form 214.

The clearing process also involves the authorization to depart the military post. *United States v. Howard*, 20 M.J. 353, 354-55 (C.M.A. 1985) (commander made informed decision to discharge defendant when he "authorized him to pick up his discharge certificate, as well as his DD Form 214 and travel pay, and allowed him to be released form the boundaries of the military reservation.").[1] In this case, it is undisputed that Defendant was authorized to depart from the

---

[1] Although decided before *King*, later courts have acknowledged that *Howard* analyzed the three *King* requirements. *United States v. Melanson*, 53 M.J. 1, 4 (A. Ct. Crim. App. 2000).

boundaries of the military reservation.

The requirements contemplated in the relevant case law for the completion of the clearing process occurred before Defendant's May 16, 2006 discharge. Defendant had completed the necessary administrative procedures to receive his DD Form 214. He had completed the necessary administrative procedures to sign out from his unit. He was authorized to depart Fort Campbell on May 16, 2006. All of these events occurred by the completion of Defendant's outprocessing.

Given the above analysis, the Court finds that Defendant was validly discharged from the United States Army on May 16, 2006. As Defendant was no longer subject to the UCMJ at the commencement of this prosecution, 18 U.S.C. § 3261(d) does not deprive the Court of jurisdiction over Defendant.

### III. Constitutional Limitations of Court-Martial Jurisdiction

If Defendant were correct in his argument that the statutory requirements of a valid military discharge failed to occur, he would still not be entitled to relief based on the facts before the Court. Defendant's interpretation of the requirements of a valid discharge from the military do not satisfy the constitutional requirements of court-martial jurisdiction. *See United States v. Reid*, 46 M.J. 236, 238 (C.A.A.F. 1997) ("Within constitutional parameters, the power to exercise court-martial jurisdiction is a matter governed by statute.").

In *United States ex re. Toth v. Quarles*, 350 U.S. 11 (1955) the Supreme Court found that Article I, Section 8, Clause 14 of the United States Constitution, which grants Congress the power to "make Rules for the Government and Regulation of the land and naval Forces," establishes the outer limits of court-martial jurisdiction over discharged soldiers. In *Toth*, the Supreme Court found that military jurisdiction could not "be extended to civilian ex-soldiers who had severed all

relationship with the military and its institutions." *Id*, at 14.

The issue is whether Article I of the United States Constitution authorizes Congress to empower the military to try Defendant by court-martial. The Court must determine if Defendant, on the basis of the record before the Court, "can be considered an actual member of the armed forces for the purposes of trial and punishment by court-martial." *Cole*, 24 M.J.18, 21 (C.M.A. 1987) (citing *Toth*, 350 U.S. at 14). The Supreme Court has not established a bright line rule, but proceeds on a case-by-case basis. *Id.* at 22.

The Court initially notes that Defendant's arguments focus on his discharge process, rather than his current connection to the armed forces. But the key issue under *Toth* was that court-martial jurisdiction could not be extended to an ex-soldier who had severed his relationship with the military. Without some connection between Defendant and the military after Defendant's alleged discharge date, the Court cannot find that court-martial jurisdiction extends to Defendant.

The Supreme Court also cautioned that when determining the outer reaches of military jurisdiction, courts should be mindful of whether allowing military jurisdiction under those facts would allow a large number of otherwise discharged soldiers to be subject to trial and punishment by court-martial without regard to status as civilians. *Toth*, 350 U.S. at 19. Under Defendant's interpretation of the statutory rules for discharge from the military, all that is necessary for the military to subject thousands of otherwise validly discharged soldiers to trial and punishment by court-marital is that they did not attend every briefing during their discharge process.

In addition, under Defendant's interpretation there would be no limit to the offenses with which an otherwise validly discharged servicemember could be charged. Military courts have upheld the constitutionality of court-martial jurisdiction over the offense of fraudulent separation.

14

*United States v. Cole*, 24 M.J. 18 (C.M.A. 1987). In finding the courts-martial had the power to try such offenses, it was noted that unlike in *Toth*, where "a vast number and variety of offenses could be immediately tried by court-martial, only those who a court-martial finds were fraudulently separated from active duty face this travail." *Id.* at 23. If a court-martial had jurisdiction over Defendant under the facts of this case to try Defendant for murder, then there would be no limit to what offenses an otherwise validly discharge soldier could be tried under if there were any irregularities in his discharge process. Such an expansion of court-martial jurisdiction is unconstitutional under *Toth*.

Given the evidence before the Court, Defendant was a civilian ex-soldier who had severed all relationship with the military and its institutions. The Court finds that the exercise of court-martial jurisdiction over Defendant would be unconstitutional under the facts and circumstances of this case. As such, Defendant was not under the jurisdiction of the UCMJ at the commencement of this prosecution.

## CONCLUSION

For the above reasons, Defendant's Motion to Dismiss for Lack of Jurisdiction is DENIED. An appropriate order shall issue.