UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

CRIMINAL ACTION NO. 5:06 CR-00019-R

UNITED STATES OF AMERICA                                                                      PLAINTIFF

v.

STEVEN D. GREEN                                                                                       DEFENDANT

### UNITED STATES' POST-HEARING BRIEF ON DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

Comes the United States, by counsel, to brief the Court following the hearing on defendant Steven Green's Motion to Suppress Statements. As the evidence at the hearing showed, Green's statements were voluntary and not in response to interrogation. Accordingly, the defendant's motion should be denied.

The facts of the case and the principal arguments of the United States are set forth in its Response to Defendant's Motion to Suppress Statements.[1] Res. to Def. Mot. of Oct. 7, 2008, Doc. No. 154. Considering the arguments in that Response and the evidence offered at the hearing, the United States respectfully submits that the sole issue on the motion before the Court is whether Green's statements upon arrest and during transport were made in response to "interrogation" under *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

---

1 The United States relies on its Response to support its argument that Green's statements were not the result of coercive police activity, and that the Sixth Amendment does not require suppression because the right to counsel had not attached when Green made the statements.

1

I.     *Miranda* Does Not Require Suppression of the Statements Because Green Was Not Interrogated.

*Miranda* protection under the Fifth Amendment extends only to those who, while in custody, are interrogated by persons they know are acting on behalf of the government. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). For purposes of *Miranda*, "interrogation" is defined as "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). The functional equivalent of express questioning consists of "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301.

A.     **FBI Special Agent Lando Did Not Interrogate Green Upon Arrest.**

At the hearing on this motion, the United States first called FBI Special Agent Christopher Lando. When Agent Lando was asked on direct why he did not read Green his *Miranda* rights, Lando testified that he "never questioned [Green]" and to his knowledge, "no one else asked [Green] any questions about the case." Supp. Hrng. Tr. at 25, Oct. 29, 2008. Granted, Lando stated that he asked Green (i) if he "could speak to his grandmother about what happened" (*id*. at 25), (ii) whether Green had any weapons on him during the search incident to arrest (*id*.), and (iii) whether "the seat belt [was] okay [or] too tight. . . ." *Id*. at 26. Under *Rhode Island v. Innis*, however, these inquiries (asked for officer safety and the comfort of Green and his upset grandmother) obviously do not constitute "questioning" or its functional equivalent designed to elicit an incriminating response. As Lando made clear: "No questions were [asked] regarding the charge for which [Green] was under arrest." *Id*. at 27.

2

      **B.**      **FBI Special Agent Kelley Did Not Interrogate Green During Transport.**

At the hearing, the United States also called FBI Special Agent Stuart Kelley. Agent Kelley testified primarily to the defendant's voluntary and spontaneous statements made during Green's transport to Asheville and Charlotte. Kelley said that he did not advise Green of his Fifth Amendment rights under *Miranda* for two reasons: (i) Green said that he did not want to speak to the FBI without an attorney present; and (ii) Kelley had no intention of questioning him. *See id*. at 37, 39. Nonetheless, Agent Kelley testified that Green initiated conversation during transport. *Id*. at 40, 50. In fact, given Green's initial indication that he did not want to talk to the FBI, Kelley was surprised that Green talked to the extent that he did during the drive to Asheville. *Id*. at 97.

At no time, however, did Agent Kelley attempt to interrogate or question Green and did not ask the defendant any questions related to the charges against Green. *Id*. at 45. Although Kelley stated that in response to some of Green's statements or questions, Kelley might have said something "like, you know, 'what do you mean,' or something along that line," but Kelley certainly did not ask any "questions of substance." *Id*. Furthermore, to the extent Kelley and Green engaged in conversation during the transport, "every conversation that [they] had [were] things that [Green] initiated." *Id*. at 48. On cross, Kelley made it clear: "[t]here was never a time that I initiated any conversation." *Id*. at 93.

When Green engaged Agent Kelley in conversation, Kelley responded to some of Green's statements. For example, when Green said, "you probably think I'm a monster," Kelley replied something along the lines of "I don't know," or "I don't know anything about you." *Id*. at 41. And Kelley stated that when Green said "[his] lieutenant got his face blown off," Kelley probably

said something like, "that's a very tragic thing." *Id*. at 84. And in response to Green's discussion of the careers of his family, Kelley remembers telling Green that his own father had worked for the railroad. *Id*. at 93.

Responses such as these to conversation wholly initiated by Green do not constitute questioning or the functional equivalent thereof. As the Supreme Court stated in *Miranda*, "[a]ny statement given freely and voluntarily without any compelling influences is of course admissible in evidence." *Miranda*, 384 U.S. at 478. Later, in *Rhode Island v. Innis*, the Court stated that the "subtle compulsion" under those facts did not create the atmosphere prohibited under *Miranda*. *See Innis*, 446 U.S. at 303. In this case, there are simply no facts to suggest that Kelley's polite responses created even "subtle compulsion" let alone an atmosphere of "compelling influence" during Green's transport. Furthermore, the law does not require an agent to sit in stony silence where a person placed under arrest initiates conversation, as Green did here. Similarly, Kelley had no obligation to stop Green from making voluntary statements or to warn him of the potential consequences of his spontaneous statements. *See Miranda*, 384 U.S. at 478 (police are not required to stop a person from making a statement he desires to make).

**II.    Conclusion**

The Supreme Court has made clear, "[v]olunteered statements of any kind are not barred by the Fifth Amendment. . . ." *Miranda*, 384 U.S. at 478. And "where a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible…" *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997).

In this case, Agents Lando and Kelley did not interrogate Green either at the time of his arrest or during his transport to Asheville or Charlotte. No agent involved in Green's arrest and

4

subsequent transport engaged in conduct which could be said to have created an atmosphere of compelling influence, nor did any agent apply an interrogator's pressure on Green. Rather, Green voluntarily made statements upon his arrest and initiated extensive conversation during transport. Admission of Green's statements to the FBI does not run afoul of *Miranda*'s protections, and the motion to suppress his statements should be denied.

                                                Respectfully submitted,

                                                DAVID L. HUBER  
                                                United States Attorney

                                                /s/ Marisa J. Ford  
                                                Marisa J. Ford  
                                                James R. Lesousky, Jr.  
                                                Assistant United States Attorneys  
                                                510 W. Broadway, 10th Floor  
                                                Louisville, Kentucky 40202  
                                                (502) 582-5911  
                                                marisa.ford@usdoj.gov  
                                                james.lesousky@usdoj.gov

                                                /s/   Brian D. Skaret  
                                                Brian D. Skaret  
                                                Trial Attorney  
                                                United States Department of Justice  
                                                Domestic Security Section  
                                                950 Pennsylvania Ave. NW, Ste. 7645  
                                                Washington, DC 20530  
                                                (202) 353-0287  
                                                brian.skaret@usdoj.gov

CERTIFICATE OF SERVICE

  I certify that on November 20, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to Scott T. Wendelsdorf, Federal Defender, Patrick J. Bouldin, Assistant Federal Defender, and Darren Wolff, counsel for defendant, Steven D. Green.

             /s/ Marisa J. Ford
             Assistant United States Attorney