UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:06-CR-00019-TBR

UNITED STATES OF AMERICA                                                               PLAINTIFF

v.

STEVEN DALE GREEN                                                                      DEFENDANT

**MEMORANDUM OPINION**

This matter comes before the Court upon Defendant Steven Dale Green's Motion to Suppress Statements (Docket #154). The Government has responded (Docket #158). A hearing was held on October 29, 2008. Following the hearing, the Government filed a Post-Hearing Brief (Docket #171). Defendant has responded (Docket #174). The Government has replied (Docket #182). This matter is now ripe for adjudication.

**BACKGROUND**

On Friday, June 30, 2006, law enforcement agents from the Federal Bureau of Investigation ("FBI") arrived at the home of Defendant Steven Dale Green's grandmother in Nebo, North Carolina. The agents were acting pursuant to an arrest warrant issued for Defendant. Upon identifying Defendant in the backyard of his grandmother's home, the agents approached and restrained him using handcuffs. Defendant stated that he wished the agents had called him because he would have turned himself in to the authorities.

As the agents escorted Defendant toward the front of the house and their vehicles, Special Agent Lando noticed Defendant's grandmother standing nearby, visibly upset. He asked Defendant if he could explain to her why Defendant was being arrested. Defendant initially said yes, but then changed his mind because he did not want to upset his grandmother further.

Prior to transporting Defendant to the detention center in Asheville, North Carolina, the

agents permitted Defendant to stand outside his grandmother's home and smoke a few cigarettes. At that time, Defendant stated that he did not want to answer any questions without an attorney present. The agents did not advise Defendant of his *Miranda* warnings. When Defendant finished smoking, the agents placed him in the backseat of one of their vehicles.

Special Agent Grafton drove the vehicle and Special Agent Kelley sat beside Defendant in the backseat. While on route to the detention center, Defendant began to talk. During the approximately forty-five minute drive, Defendant made a number of statements. Special Agent Kelley testified during the hearing that Defendant initiated all conversation. Defendant spoke primarily about his time in the military and his feelings about the Iraq War. Special Agent Kelley testified that he sometimes responded to what Defendant said, but never engaged Defendant in extensive questioning. No agent took notes of the conversation and no recording devices were used to capture it.

At the direction of the United States Attorney's Office, Defendant was transported on Monday, July 3, 2006 to the federal courthouse in Charlotte, North Carolina for his initial appearance. Special Agent Grafton again drove Defendant and Special Agent Kelley accompanied him in the backseat. Defendant was not advised of his *Miranda* warnings. The drive took approximately two hours. This time, the agents initiated conversation by asking Defendant about his stay in the detention center. Defendant responded, but afterward the conversation did not resume again for another twenty minutes. Defendant spoke next, asking about his prosecution and the judicial process. Special Agent Kelley responded, informing Defendant that he knew little about what would happen in his case.

On July 5, 2008, Agents Landon, Grafton, and Kelley, in collaboration with the other

agents who assisted in Defendant's arrest, completed a 302 report regarding Defendant's arrest and transportation from Nebo to Asheville to Charlotte.  The 302 report included bulleted topics of conversation between the agents and Defendant.  Statements made by Defendant were put in quotation marks, although they were solely the product of the agents' memories.  Defendant did not review or authorize the statements described in the 302 report.

Defendant now moves to suppress all statements allegedly made by him during his transportation on June 30 and July 3, 2006.  Defendant argues that the agents never advised him of his *Miranda* warnings and that he invoked the right to counsel when he informed them that he would not answer questions without an attorney present.  Defendant also argues that the agents unnecessarily delayed his initial appearance.  The Government responds that Defendant was never subjected to interrogation and his initial appearance was not unnecessarily delayed.

## DISCUSSION

### I. Fifth Amendment

The Fifth Amendment's privilege against self-incrimination protects a person suspected or accused of criminal activity by suppressing any statement "stemming from custodial interrogation" when law enforcement fail to comply with certain procedural safeguards, commonly referred to as *Miranda* warnings.  *Miranda v. Arizona*, 384 US. 436, 444 (1966).  The Fifth Amendment's protection extends to persons who are in custody and interrogated by persons they know are acting on behalf of the government.  *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).  The parties do not dispute that Defendant was in custody when he spoke with the FBI agents.  Therefore, the issue before the Court is whether or not Defendant was interrogated by the agents with whom he spoke.

An "interrogation" for purposes of *Miranda* includes "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The functional equivalent of express questioning consists of "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* The primary focus of this inquiry is the perception of the suspect, rather than the intent of the police. *Id.*

No interrogation occurs where a defendant speaks voluntarily. "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. . . . Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Thus, "where a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible despite the absence of *Miranda* warnings." *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997).

In *Rhode Island v. Innis*, the Supreme Court considered whether a conversation between two police officers overheard by a defendant in custody in the backseat of their police vehicle constituted an interrogation for purposes of *Miranda*. 446 U.S. at 294. The officers expressed concern over whether handicapped children attending school in the area might find a shot gun believed to be hidden by the defendant. *Id.* Upon overhearing the conversation, the defendant interrupted the officers and told them where the shut gun was located. *Id.*

The Supreme Court concluded that the defendant was not subject to interrogation. *Id.* at 302. The officers had not expressly questioned the defendant and they could not have known that their conversation was likely to elicit an incriminating response from him. The Court determined that the defendant was not subjected to the "functional equivalent" of questioning

because "[t]here [was] nothing in the record to suggest that the officers were aware that the respondent was peculiarly susceptible to an appeal to his conscience concerning the safety of handicapped children. Nor [was] there anything in the record to suggest that the police knew that the [defendant] was unusually disoriented or upset at the time of his arrest." *Id.* at 302-03.

As in *Innis*, the FBI agents who arrested Defendant did not expressly question him during the drive from Nebo to Asheville on June 30, 2006. The record before the Court indicates that the minimal conversations that transpired between Defendant and Special Agent Kelley were initiated by Defendant. There is no indication that Special Agent Kelley encouraged Defendant in any way. However, the topics of conversation offered by Defendant were not small talk. They concerned the events that led to Defendant's arrest and his justification for his actions. Special Agent Kelley was trained to elicit statements from criminal defendants and he was aware of his obligation to provide Defendant with his *Miranda* warnings. The Court does not take lightly Special Agent Kelley's failure to provide Defendant with those warnings.

"'Interrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Innis*, 446 U.S. at 300. Special Agent Kelley testified that Defendant was noticeably agitated during the ride from Nebo to Asheville, but there is nothing in the record to suggest that his statements were the result of compulsion on the part of the agents involved in his arrest. Because the record indicates that Defendant volunteered the statements he made and there is no indication of compulsion on the part of the agents involved, the Court finds that Defendant's Fifth Amendment privilege against self-incrimination was not violated by the Government during his transportation on June 30, 2006.

Whether Defendant was subject to interrogation during his transportation from Asheville to Charlotte on July 3, 2006 is not as straight forward. The Court finds it curious that Defendant was transported from Asheville to Charlotte for his initial appearance. There is a federal courthouse located in Asheville and no testimony was provided as to why the transfer was made other than that it was done at the direction of the United States Attorney's Office in the Western District of North Carolina. Defendant was again not given his *Miranda* warnings.

Defendant's transportation on July 3, 2006 is further distinguishable in that Special Agent Kelley initiated conversation with Defendant about his stay in the Asheville detention center. While the Court understands Special Agent Kelley's questioning to have been innocuous in nature, it nonetheless teeters on the line of "subtle compulsion" discouraged in *Innis*. 446 U.S. at 303. However, nothing in the record indicates that Special Agent Kelley should have known that his questioning would elicit statements from Defendant about the judicial process and his case, nor was there any evidence that Defendant perceived Special Agent Kelley's inquiry to concern the judicial process or his case. This is further evident by the fact that twenty minutes of silence elapsed between the two before Defendant began to ask about his case. For these reasons, the Court finds that no interrogation occurred. Defendant's Fifth Amendment privilege against self-incrimination was not violated by the Government during his transportation on July 3, 2006.

## II. Sixth Amendment

The Sixth Amendment's right to counsel attaches only after "adversary judicial proceedings" have been initiated against the defendant, "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *United States v. Gouveia*, 467

U.S. 180, 187-88 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). In *Rothgery v. Gillespie County, Texas*, the Supreme Court reiterated that the right to counsel attaches at the initial appearance before a magistrate judge. 128 S.Ct. 2578, 2584 (2008). "Once the Sixth Amendment right attaches, any governmental attempt to elicit information from the accused without the defendant's lawyer present . . . is prohibited." *Mitzel v. Tate*, 267 F.3d 524, 532 (6th Cir. 2001) (citing *Michigan v. Jackson*, 475 U.S. 625, 632 (1986)).

     Defendant argues that the Government delayed the attachment of his Sixth Amendment right to counsel by transporting him from Asheville to Charlotte for his initial appearance. Had Defendant had his initial appearance in Asheville, then his Sixth Amendment right to counsel would have attached and the FBI agents would have been unable to elicit statements from him without an attorney present. Thus, Defendant argues that any statements made by him during his transportation on July 3, 2006 were obtained in violation of the Sixth Amendment and must be suppressed.

     As the Government correctly points out in its brief, Defendant's statements were made prior to the initiation of adversarial proceedings. Defendant had not yet appeared before a judicial officer, nor had he been formally accused. Furthermore, Defendant cites no case law in support of his argument that a Sixth Amendment violation can occur during events proceeding a defendant's initial appearance. In the absence of case law to the contrary, the Court finds that Defendant's Sixth Amendment right to counsel did not attach during his transportation on July 3, 2006. Therefore, the Government's actions did not violate Defendant's Sixth Amendment right to counsel.

**III. Federal Rule of Criminal Procedure 5(a) and 18 U.S.C. § 3501(c)**

Federal Rule of Criminal Procedure 5(a) provides that, following his arrest, a defendant must be brought before a magistrate judge "without unnecessary delay" for his initial appearance. "Failure to comply with this requirement renders inadmissible statements obtained from an accused prior to his appearance before a magistrate." *United States v. Barlow*, 693 F.2d 954, 958 (6th Cir. 1982) (citing *Mallory v. United States*, 354 U.S. 449 (1957); *McNabb v. United States*, 318 U.S. 332 (1943)). Additionally, section 3501(c) provides that voluntary confessions are admissible despite delay unless the delay is over six hours and the trial judge determines it to be unreasonable. 18 U.S.C. § 3501(c).

At the hearing, Special Agent Kelley testified that a federal courthouse is located in Asheville and that both a district court and magistrate judge sit there. Defendant argues that the Government unnecessarily delayed his initial appearance by transporting him from Asheville to Charlotte in an effort to elicit more statements from him. Accordingly, any statements made by him during the delay must be suppressed.

In determining whether an unnecessary delay occurred, the Court must "hear evidence concerning the cause of the delay" and "scrutinize for reasonableness delays in excess of 6 hours which are not made necessary by transportation problems." *United States v. Christopher*, 956 F.2d 536, 538-36 (6th Cir. 1991) (quoting *United States v. Wilson*, 838 F.2d 1081, 1085 n. 2 (9th Cir.1988). Consideration should be given to the "totality of the circumstances." *Id.* at 539. Other considerations include the availability of a committing magistrate, the length of delay before the defendant is taken before a magistrate, and the police purpose or justification, if any, for the delay. *See United States v. Mendoza*, 473 F.2d 697, 702 (5th Cir. 1973).

Given the totality of the circumstances, Defendant was not unreasonably delayed in violation of Federal Rule of Criminal Procedure 5(a). Special Agent Kelley testified that Defendant was arrested during th evening hours of Friday, June 30, 2006. He was transported to Asheville because that is where the nearest detention center was located. Due to the late hour, Defendant could not have his initial appearance until the morning of Monday, July 3, 2006. Special Agent Kelley testified that he did not know whether a magistrate judge was present in the Asheville courthouse on Monday morning. He testified that he transported Defendant to Charlotte pursuant to the instructions of the U.S. Attorney's Office. During the hearing, Defendant offered no witness testimony or evidence to indicate that the circumstances were otherwise. In light of the fact that Defendant's arrest and initial appearance fell over the July Fourth holiday and that Defendant's total delay only amounted to two hours, the Court does not find this unreasonable.

Nor did the Government violate 18 U.S.C. § 3501(c). Section 3501(d) explains that "[n]othing contained in this section shall bar the admission in evidence of any confession made or given voluntarily by any person to any other person without interrogation by anyone, or at any time at which the person who made or gave such confession was not under arrest or other detention." 18 U.S.C. § 3501(d). Thus, the requirements of § 3501 do not apply to statements given voluntarily and in the absence of interrogation. The Court has already determined that Defendant was not subject to interrogation during his transportation on June 30 and July 3, 2006. Accordingly, the Court must focus on the voluntariness of Defendant's statements.

The Government bears the burden of proving by a preponderance of the evidence that a confession was voluntary. *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir.1992). A

confession was involuntary if all three elements are shown: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear the defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir.2003) (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir.1999)). Factors relevant to determining whether defendant's will was overborne include age, education, intelligence, awareness of rights, length of questioning, and use of physical punishments. *Id.* (internal citations omitted).

Here, there is no evidence that the FBI agents' actions were objectively coercive. Agents Landon and Kelley testified that they had no intention of questioning Defendant. Nor is there any evidence that Defendant's will was overborne. Defendant is an adult male who has completed his GED. There is no evidence that he was under the influence of alcohol or drugs at the time he made his statements. Finally, there is no evidence that police misconduct was the crucial motivating factor behind Defendant's decision to converse with the agents. Defendant does not even argue this point in his brief. Therefore, the Court finds that Defendant's statements were voluntary. Because his statements were voluntary and made in absence of interrogation, section 3501(d) is applicable.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion to Suppress Statements is DENIED.

An appropriate order shall follow.

*Thomas B. Russell*
Thomas B. Russell
Chief Judge, U.S. District Court

January 9, 2009