UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO.: 5:06-CR-19-R

UNITED STATES V. STEVEN DALE GREEN

# JURY INSTRUCTIONS

## INTRODUCTION

Now that you have heard all the evidence in this case and the arguments of each side, it is my duty to give you instructions as to the law applicable to the issue of whether Steven Dale Green should be punished by death, or be imprisoned for life without the possibility of release.  Some of the legal principles that you must apply to this sentencing decision are the same as those you followed in reaching your guilty verdicts.  Others, however, are different.  I will give you a written copy of these instructions to take into the deliberation room with you.  You will also receive a Special Verdict Form to record your findings and the possible decisions you may render.  I will be reviewing this form with you at the conclusion of these instructions.

As reflected by your prior verdict, you have unanimously found the defendant, Steven Dale Green, guilty of the offenses of premeditated murder (Counts 3-6), murder committed in the perpetration of aggravated sexual abuse (Counts 7-10), and use of a firearm during a crime of violence (Counts 13-16).  By law, Congress has expressly provided that a person who commits these offenses be punished by death or by imprisonment for life without the possibility of release.  Because you have found the defendant, Steven Dale Green, guilty of these capital crimes, you must now decide – for each Count – whether justice requires imposition of the death penalty or life imprisonment without any possibility of release.

This is a decision left exclusively to the jury.  I will not be able to change any decision you reach regarding the death penalty or life imprisonment without the possibility of release.  You, and you alone, will decide whether or not Steven Dale Green should be sentenced to death or sentenced to life imprisonment without the possibility of release.  For this reason, I again stress the importance of your giving careful and thorough consideration to all of the evidence before you.  I also remind

you of your obligation to strictly follow the applicable law.  Regardless of any opinion you may have as to what the law may be – or should be – it would be a violation of your oaths as jurors to base your verdict upon any other view of the law than that given to you in instructions by the Court.

As in the guilt phase of the trial, you are the sole judges of the facts in the penalty phase of the case.  You may decide issues of credibility of witnesses and whether or not to accept any piece of evidence as true or what amount of weight to give it, if any.  In making all the determinations you are required to make in the penalty phase of the trial, you may consider all the evidence that was presented during the guilt phase of the trial as well as evidence that is presented at this penalty phase of the trial, including testimony, documents, and stipulations between the parties.  As in the guilt phase, the arguments of the attorneys and the comments and rulings of the Court are not evidence.  You may consider both direct and circumstantial evidence at this phase of the trial and you may use your common sense in determining whether aggravating or mitigating factors are established.

More detailed instructions will follow, but I will outline at this time the process by which you must reach your decision, which requires that you make and record certain findings in a particular order.

Before you may consider the imposition of the death penalty for any capital count, you must unanimously find beyond a reasonable doubt that the government has proved that Steven Dale Green was at least eighteen (18) years old at the time of the offense, the existence of at least one "gateway" or preliminary factor, and at least one statutory aggravating factor.   There are four possible "gateway" or preliminary factors which deal with the defendant's intent and role in committing the offense.

With regard to your findings, you may not rely solely on your guilty verdicts or your factual

3

determinations during the guilt phase of this case, but instead must decide this issue for yourselves again. Any finding that a preliminary or gateway factor has been proven as to a particular Count must be based on Steven Dale Green's personal actions and intent, not those of any of the others involved in the crimes.

Although it is left solely to you to decide whether the death penalty should be imposed, Congress has narrowed and channeled your discretion in specific ways by directing you to consider and weigh aggravating and mitigating factors present in the case. These factors guide your deliberations by focusing on certain circumstances surrounding the crime, and the personal traits, character, and background of the defendant.

Aggravating factors are those that tend to support the imposition of the death penalty. The government is required to specify the factors it relies on, and your deliberations are constrained by its choice. Even if you believe that the evidence reveals other aggravating factors, you may not consider them.

In the death penalty statute, a number of aggravating factors are listed. These are called "statutory aggravating factors." As I have told you, in addition to finding the existence of at least one "gateway" or preliminary factor beyond a reasonable doubt, before you may consider the imposition of the death penalty, you must find that the government has proved at least one of these statutory aggravating factors specifically listed in the death penalty statute, and your finding must be unanimous and beyond a reasonable doubt. In addition to statutory aggravating factors, there may also be aggravating factors not specifically set out in the death penalty statute. Again, your finding that any non-statutory aggravating factors exist must be unanimous and beyond a reasonable doubt.

There are also statutory and non-statutory mitigating factors. Mitigating factors are

4

considerations that suggest that a sentence of death should not be imposed. They need not justify or excuse the defendant's conduct, but they do suggest that a punishment of life imprisonment without possibility of release is an appropriate sentence.

The defendant has the burden of proving any mitigating factors. However, there is a different burden of proof as to mitigating factors. You need not be convinced beyond a reasonable doubt about the existence of a mitigating factor; you need only be convinced that it is more likely true than not true in order to find that it exists. A unanimous finding is not required. Any one of you may find the existence of a mitigating factor, regardless of the number of other jurors who agree. Unlike with aggravating factors, you are not limited in what you determine to be a mitigating factor or the weight to accord any mitigating factor or factors you find.

If you unanimously find that the defendant was at least 18 years old, that at least one gateway factors exists, and at least one statutory aggravating factor exists, you then must weigh the aggravating factors you have found to exist against any mitigating factors you have found to exist to determine the appropriate sentence. Even if you find no mitigating factor or factors exist, you must consider whether the aggravating factors you unanimously found beyond a reasonable doubt justify a sentence of death. As I said previously, I will give you more detailed instructions regarding the weighing of aggravating and mitigating factors.

Your task is more than simply to decide whether, which, or how many aggravating and mitigating factors are present in the case. You may not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater. You must evaluate and weigh such factors and ultimately make a unique individualized judgment about the justification for and appropriateness of the death penalty as a punishment for the defendant. In short, the law does

not presume that every person found guilty of committing premeditated murder, murder perpetrated

in the course of aggravated sexual abuse, or use of a firearm during a murder should be sentenced

to death, nor does the law presume that Steven Dale Green in particular should be sentenced to death.

Rather, your decision on the question of punishment is a uniquely personal judgment which the law,

in the final analysis, leaves up to each of you.

## INSTRUCTION NO. 1

Before you may consider whether the penalty of death, rather than life imprisonment without the possibility of release, is an appropriate sentence to be imposed for a particular Count, you must first consider whether the government has proved that the defendant was at least eighteen (18) years old at the time of the offense alleged in the particular Count.

You must consider each Count separately, and make a finding for that Count. When you have unanimously agreed on your answer to this question, the foreperson will check "YES" or "NO" on the appropriate lines on Section I of the Special Verdict Form. If you answer "NO", then conclude your deliberations on that Count and certify your decision as described in Section VII of the Special Verdict Form. If you answer "YES", then continue your deliberations and proceed to Section II of the Special Verdict Form for that Count.

## INSTRUCTION NO. 2

### Mental State Threshold

Before you may consider whether the penalty of death, rather than life imprisonment without the possibility of release, is an appropriate sentence to be imposed for a particular Count, you must first unanimously find beyond a reasonable doubt that the government has proved that the defendant committed the offense charged in the particular Count in one of the manners described below. There are four possible threshold mental state factors which deal with the defendant's intent and role in committing the offenses. In the penalty phase of the proceeding, your focus must be on the individual intent of Steven Dale Green, not on the collective intentions of all of the defendants or conspirators.

In this case, as to each capital offense, the government alleges four possible threshold mental state factors. The government alleges that the defendant:

1. intentionally killed the victim;

2. intentionally inflicted serious bodily injury that resulted in the death of the victim;

3. intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a result of the act; or

4. intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

These threshold mental state factors are to guide you in assessing the defendant's intent and role in committing the offenses. You must unanimously find that at least one of these mental state factors is proven by the government beyond a reasonable doubt as to each Count in order to further consider the imposition of the death penalty with respect to that Count. In other words, before you

can turn to the rest of your sentencing responsibilities as to any particular Count, you must first decide–as to that Count–whether one or more of these mental state factors has been proven beyond a reasonable doubt, and if so, which one.

You must consider each Count separately and make findings for that Count. When you have unanimously agreed on your answers to the first four questions, the foreperson will check "YES" or "NO" on the appropriate lines on Section II of the Special Verdict Form for each of these four threshold mental state factors. If you answer "NO" with respect to all four questions, then conclude your deliberations on that Count and sign the Certification in Section VII of the Special Verdict Form. If you answer "YES" with respect to one or more of the questions, then continue your deliberations and proceed to Section III of the Special Verdict Form.

## INSTRUCTION NO. 3
### Statutory Aggravating Factors

Before you may consider whether the death penalty, rather than life imprisonment without the possibility of release, is an appropriate sentence for a particular Count, you must unanimously find beyond a reasonable doubt that the government has proved at least one of the following aggravating factors prescribed by Congress and alleged by the government in this case. Aggravating factors are considerations that tend to support the imposition of the death penalty.

In this case, the government claims the following statutory aggravating factors have been proven beyond a reasonable doubt.

1. The defendant committed the offenses in Counts 3, 7, and 13 in an especially heinous, cruel, or depraved manner in that it involved serious physical abuse to the victim, Abeer Al-Janabi, by raping her, shooting her in the face, and lighting her on fire.

Note: To establish that the defendant killed the victim in an especially heinous, cruel, or depraved manner, the government must prove that the killing involved serious physical abuse to the victim. You must not find this factor to exist unless you unanimously agree that serious physical abuse has been proved beyond a reasonable doubt. In other words, all twelve of you must agree that it involved serious physical abuse to the victim and was thus heinous, cruel, or depraved.

"Heinous" means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as to set it apart from other killings.

"Cruel" means that the defendant intended to inflict a high degree of pain by torturing the victim in addition to killing the victim.

"Depraved" means that the defendant relished the killing or showed indifference to the suffering of the victim, as evidenced by serious physical abuse of the victim.

"Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body. Serious physical abuse may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted. However, the defendant must have specifically intended the abuse in addition to the killing.

10

Pertinent factors in determining whether a killing was especially heinous, cruel, or depraved include: an infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; the needless mutilation of the victim's body; the senselessness of the killing; and the helplessness of the victim.

The word "especially" means highly or unusually great, distinctive, peculiar, particular, or significant, when compared to other killings.

2. The defendant committed the offenses in Counts 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 after substantial planning and premeditation to cause the death of the victim.

Note: "Planning" means mentally formulating a method for doing something or achieving some end. "Premeditation" means thinking or deliberating about something and deciding whether to do it beforehand. "Substantial" planning and premeditation means a considerable or significant amount of planning and premeditation.

You have previously convicted the defendant of "premeditated" murder. To find the mental state required in this instruction you must be convinced beyond a reasonable doubt that the defendant committed the offence above after "substantial planning and premeditation" to cause the death of the victim.

3. In Counts 3, 4, 7, 8, 13, and 14 the victim was particularly vulnerable due to youth.

Note: "Particularly" means especially, significantly, unusually, or high in degree. "Vulnerable" means subject to being attacked or injured by reasons of some weakness. Thus, to be "particularly vulnerable" means to be especially or significantly vulnerable, or vulnerable to an unusual or high degree.

"Youth" means that the victim was a child, a juvenile, a young person, or a minor, that is: any person who was, by reason of youthful immaturity or inexperience, significantly less able: (1) to avoid, resist, or withstand any attacks, persuasions, or temptations, or (2) to recognize, judge, or discern any dangers, risks, or threats.

The vulnerability of the victim must have been such that it contributed to the death of the victim, meaning that there was a connection between the victim's youth and the offense committed upon the victim. However, the requirement of a connection between the victim's youth and her death does not mean that the prosecution must prove that the defendant knew of the victim's youth and targeted her because of it. Rather, it means that the prosecution must prove that, once targeted, the victim was significantly more vulnerable to the crime committed because of her youth.

4. In Counts 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 the defendant intentionally killed more than one person in a single criminal episode.

11

Note: "Intentionally killing" a person means killing a person on purpose, that is: willfully, deliberately, or with a conscious desire to cause a person's death (and not just accidentally or involuntarily).

"A single criminal episode" is an act or series of related criminal acts which occur within a relatively limited time and place, or are directed at the same persons, or are part of a continuous course of conduct related in time, place, or purpose.

A person of sound mind and discretion may be presumed to have intended the ordinary, natural, and probable consequences of his knowing and voluntary acts. Thus, you may infer from the defendant's conduct that the defendant intended to kill a person if you find: (1) that the defendant was a person of sound mind and discretion; (2) that person's death was the ordinary, natural, and probable consequence of the defendant's acts; and (3) that the defendant committed these acts knowingly and voluntarily. But once again, you are not required to make such an inference.

You must consider each Count separately and make findings for that Count. The government must prove at least one of these statutory factors beyond a reasonable doubt as to a particular Count. For each statutory aggravating factor, indicate by answering "YES" or "NO" on the appropriate lines in Section III (Statutory Aggravating Factors) of the Special Verdict Form whether you have unanimously found the factor to have been proved beyond a reasonable doubt. If you answer "NO" with respect to all the factors that apply to a particular Count, then conclude your deliberations for that Count and sign the Certification in Section VII of the Special Verdict Form for that Count. If you answer "YES" with respect to one or more of these factors, then continue your deliberations for that Count and proceed to Section IV of the Special Verdict Form.

**INSTRUCTION NO. 4**
**Non-Statutory Aggravating Factors**

If you unanimously find at least one of the statutory aggravating factors proved beyond a reasonable doubt as to a particular Count, you must consider whether the government has proved the existence of any non-statutory aggravating factors. You must unanimously agree that the government has proved beyond a reasonable doubt the existence of any of the alleged non-statutory aggravating factors before you may consider such factor in your deliberations on the appropriate punishment for the defendant in this case.

In addition to any statutory aggravating factors you have found, the law permits you to consider and discuss only the non-statutory aggravating factors specifically claimed by the government and listed below. You must not consider any other factors in aggravation which you conceive of on your own.

The non-statutory aggravating factors the government has alleged in this case are:

1. As to Counts 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, and 16 the defendant killed the victim and witnesses of his alleged rape, including Abeer Al-Janabi, Hadeel Al-Janabi, Kassem Al-Janabi, and Fakhriya Al-Janabi, in order to eliminate these victims as possible witnesses to his crimes.

2. As to Counts 3, 7, and 13 the defendant caused injury, harm, and loss to the family of Abeer Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

3. As to Counts 4, 8, and 14 the defendant caused injury, harm, and loss to the family of Hadeel Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

4. As to Counts 5, 9, and 15 the defendant caused injury, harm, and loss to the family of Kassem Al-Janabi, as evidenced by his personal characteristics as a human being and the impact of his death on his family.

5. As to Counts 6, 10, and 16 the defendant caused injury, harm, and loss to the family of

13

Fakhriya Al-Janabi, as evidenced by her personal characteristics as a human being and the impact of her death on her family.

6. As to Counts 5, 6, 9, 10, 15, and 16 the injuries caused by the defendant extend especially to the two minor children orphaned as a result of their parents' death and to those presently caring for the children.

With regard to the alleged non-statutory aggravating factors, you may not consider such a factor in your sentencing decision if you do not unanimously find that the government has proved beyond a reasonable doubt that it is a fact or circumstance that tends to support imposition of the death penalty.

I emphasize again, because these are the only other aggravating factors cited by the government on which I instruct you, they are by law the only other aggravating factors that you may consider.

You must consider each Count separately and make findings for that Count. For each non-statutory aggravating factor, indicate by answering "YES" or "NO" on the appropriate lines in Section IV (Non-Statutory Aggravating Factors) of the Special Verdict Form whether you have unanimously found the factor to have been proved beyond a reasonable doubt, and continue your deliberations as to that particular Count.

### INSTRUCTION NO. 5
### Mitigating Factors

Before you may consider the appropriate punishment for a particular Count, you must consider whether the defendant has established the existence of any mitigating factors. A mitigating factor is a fact about the defendant's life or character, or about the circumstances surrounding the offense that would suggest, in fairness, that a sentence of death is not the most appropriate punishment, or that a lesser sentence is the more appropriate punishment.

Unlike aggravating factors, which you must unanimously find proved beyond a reasonable doubt in order to consider them in your deliberations, the law does not require unanimous agreement with regard to mitigating factors. Any juror persuaded of the existence of a mitigating factor must consider it in this case. Further, any juror may consider a mitigating factor found by another juror, even if he or she did not find that factor to be mitigating.

It is the defendant's burden to establish any mitigating factors, but only by a preponderance of the evidence. This is a lesser standard of proof under the law than proof beyond a reasonable doubt. A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so. In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is, more likely than not, true. In Section V (Mitigating Factors) of the Special Verdict Form you are asked to report the total number of jurors that find a particular mitigating factor established by a preponderance of the evidence.

15

**INSTRUCTION NO. 6**
**Mitigating Factors Enumerated**

The mitigating factors which the defendant asserts he has proved by a preponderance of the

evidence are:

1. Sgt. Paul Cortez, equally culpable in the crime, will not be punished by death.  This is a statutory mitigating factor.

2. Spc. James Barker, equally culpable in the crime, will not be punished by death.  This is a statutory mitigating factor.

3. PFC Green's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.  This is a statutory mitigating factor.

4. PFC Green committed the offense under severe mental or emotional disturbance.  This is a statutory mitigating factor.

5. The defendant did not have a significant prior history of other criminal conduct.  This is a statutory mitigating factor.

6.  In its criminal prosecutions of Sgt. Paul Cortez, Spc. James Barker, and PFC Jesse Spielman for their involvement in the murders, the United States imposed terms of imprisonment that will make each of them eligible for parole in 10 years.

7. Steven Green offered to reenlist in the Army.  If allowed back in the Army, PFC Green would have again been subject to the Uniform Code of Military Justice and could have been fully prosecuted and punished in the military system for the murders, as were Sgt. Paul Cortez, Spc. James Barker, PFC Jesse Spielman, and PFC Bryan Howard. Steven Green offered to re-enter the Army and subject himself to prosecution and punishment for the murders under the Uniform Code of Military Justice.  The United States Army declined to accept his offer to reenlist.

8. After Green was discharged, the United States could have tried Paul Cortez, James Barker, Jesse Spielman, and the defendant together in this court under civilian law and procedures before a civilian judge and jury for their involvement in the murders; or the Army could have accepted Green's offer to reenlist and tried all of them in military court under the law and procedures of the Uniform Code of Military Justice before a military judge and jury.

9. This case should have been tried in the military justice system under the Uniform Code

16

of Military Justice, as were the cases of Sgt. Paul Cortez, Spc. James Barker, PFC Jesse Spielman, PFC Bryan Howard, and Sgt. Anthony Yribe.

10. Sgt. Paul Cortez, Spc. James Barker, PFC Jesse Spielman, PFC Bryan Howard, and Sgt. Anthony Yribe were offered favorable plea agreements and lenient sentences.

11. PFC Green's combat stress was a substantial factor that contributed to the offenses.

12. The Army command and Combat Stress Control personnel knew that PFC Green was at a high risk of homicidal conduct against Iraqi citizens due to his combat stress, but returned him to the field without proper treatment or follow up.

13. PFC Steven Green was suffering from psychological impairments which were identified by the United States Army and could have and should have been properly treated, but were not.

14. The Army should have declared PFC Green's platoon and squad to be not combat ready and withdrawn them from TCP duty.

15. Failure of the Army command to provide adequate command, control, and supervision of 1st Platoon and 1st Squad contributed to the murders.

16. PFC Green's platoon and squad suffered greater casualties and losses than other units.

17. Failure of the Army command to recognize the unusually harsh and stressful conditions faced by 1st Platoon and 1st Squad contributed to the murders.

18. Failure of the Army command to adequately support 1st Platoon and 1st Squad contributed to the murders.

19. PFC Green's military superiors played a leadership role in planning, authorizing, and executing the murders.

20. PFC Green committed the offenses while under the influence and control of his military superiors, Sgt. Cortez and Spc. Barker.

21. PFC Green promptly confessed his involvement in the murders to Sgt. Anthony Yribe, his military superior and the head of the official Army team investigating the killings.

22. Had Sgt. Anthony Yribe taken the proper and required steps to report PFC Green's timely confessions, PFC Green would have been prosecuted, tried, and sentenced by a military court under the Uniform Code of Military Justice.

17

23. Steven Green never lied to his military superiors about his involvement in the murders, while Sgt. Paul Cortez, Spc. Barker, PFC Spielman, PFC Bryan Howard, and Sgt. Anthony Yribe repeatedly did so.

24. Army personnel engaged in a cover-up of the murders.

25. PFC Steven Green was 20 years of age on March 12, 2006.

26. PFC Steven Green suffered from neurological and psychological problems that impaired his ability to function properly under the extreme stresses present in the Triangle of Death.

27. Steven Green suffers from a brain dysfunction which has impaired his ability to function in the absence of strong support and guidance.

28. Steven Green was subjected to emotional and physical abuse as a child.

29. Steven Green was subject to neglect as a child.

30. Steven Green was deprived of the parental guidance and protection he needed.

31. Steven Green's schoolwork and behavior markedly improved when he was in a supportive and structured environment.

32. Steven Green has a positive relationship with many people who care for and love him.

33. Steven Green joined the United States Army in a time of war, knowing that he would be sent into life threatening combat.

34. Steven Green did well at boot camp and was a good solider who served honorably until an unusually high number of horrific losses of his friends, fellow soldiers, and respected leaders at the hands of insurgents overwhelmed and broke him.

35. Steven Green sought help for his psychological deterioration, but received substandard care.

36. Steven Green may be rehabilitated if sentenced to life in prison without the possibility of release.

37. If Steven Green is not sentenced to death, he will remain in prison for the rest of his life without the possibility of release and will die in prison.

38. If Steven Green receives the death penalty, extended family members and friends will suffer harm.

18

39. Other factors in PFC Steven Green's background, record, or character or any other circumstance of the offense that any juror finds mitigate against imposition of the death sentence. This is a statutory mitigating factor.

With regard to the alleged non-statutory mitigating factors, you may not consider such a factor in your sentencing decision if you do not find that the defendant has proved by a preponderance of the evidence that it is a fact or circumstance that tends to support imposition of a sentence less than death.

You are are permitted to consider <u>anything</u> else about the commission of the crime or about the defendant's background or character that would mitigate against the imposition of the death penalty. If there are any such mitigating factors, whether or not specifically argued by defense counsel, which are established by a preponderance of the evidence, you are free to consider them in your deliberations.

You must consider each Count separately and make findings for that Count. In Section V (Mitigating Factors) of the Special Verdict Form you should report the number of jurors who find by a preponderance of the evidence that a particular mitigating factor exists for that Count. There are spaces in Section V (Mitigating Factors) of the Special Verdict Form to identify any additional mitigating factors that any one of you finds. It is not necessary, however to specifically articulate such additional factors. If you think there is some other mitigating factor present, but are simply not able to put it into words so that you can write it down on a list, you should still give that factor your full consideration.

### INSTRUCTION NO. 7
### Weighing the Factors

You will only be required to determine the appropriate sentence as to a particular Count if you find unanimously and beyond a reasonable doubt that the defendant, Steven Dale Green, was 18 at the time the offense was committed, that the defendant acted with the requisite intent, and that the government has proved the existence of at least one statutory aggravating factor. If you do find that all these prerequisites are met as to a particular Count, you then determine whether the government proved beyond a reasonable doubt the existence of the non-statutory aggravating factors submitted to you, and whether the defendant proved by a preponderance of the evidence the existence of any mitigating factors. You will then engage in a weighing process.

In determining the appropriate sentence, all of you must weigh the aggravating factor or factors that you unanimously found to exist – whether statutory or non-statutory – and each of you must weigh any mitigating factor or factors that you individually found to exist. You shall consider whether the aggravating factors or factors found to exist sufficiently outweigh the mitigating factor or factors found to exist to justify a sentence of death, or in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, you the jury, by unanimous vote, shall determine whether Steven Dale Green should be sentenced to life imprisonment without the possibility of release or death.

In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy. Your deliberations should be based upon the evidence you have seen and heard and the law on which I have instructed you. Again, whether or not the circumstances in this case justify a sentence of death is a decision that the law leaves entirely to you.

The process of weighing aggravating and mitigating factors against each other in order to determine the proper punishment is not a mechanical process. In other words, you should not simply count the number of aggravating and mitigating factors and reach a decision based on which number is greater; you should consider the weight and value of each factor.

The law contemplates that different factors may be given different weights or values by different jurors. Thus, you may find that one mitigating factors outweighs all aggravating factors combined, or that the aggravating factors proved do not, standing alone, justify imposition of a sentence of death. If one or more of you so find, you must return a sentence of life in prison without possibility of release. Similarly, you may unanimously find that a particular aggravating factor sufficiently outweighs all mitigating factors combined to justify a sentence of death. You and you alone are to decide what weight or value is to be given to a particular aggravating or mitigating factor in your decision-making process.

In order to bring back a verdict deciding the penalty to be imposed upon the defendant in this case, all twelve of you must unanimously vote in favor of that penalty.

If you unanimously conclude that the aggravating factor or factors found to exist sufficiently outweigh any mitigating factor or factors found to exist to justify a sentence of death, or in the absence of any mitigating factors, that the aggravating factor or factors alone are sufficient to justify a sentence of death, and that therefore death is the appropriate sentence in this case for that particular Count, you shall record your determination that a sentence of death shall be imposed in Section VI (Sentencing Decisions), Decision Form A of the Special Verdict Form.

If you determine that death is not justified, you shall complete Part VI (Sentencing Decision), Decision Form B of the Special Verdict Form.

If, despite all reasonable efforts to reach unanimous agreement, you are unable to reach a unanimous decision on either a sentence of death or a sentence of life imprisonment without the possibility of release, you shall record this fact in Section VI (Sentencing Decisions) Decision Form C of the Special Verdict Form.   In such an event, the Court will impose a sentence of life imprisonment without the possibility of release.

**INSTRUCTION NO. 8**

Whatever findings you make with respect to aggravating and mitigating factors, the result of the weighing process is never foreordained.  For that reason a jury is never required to impose a sentence of death.  At this last stage of your deliberations, it is up to you to decide whether, for any proper reason established by the evidence, you choose not to impose such a sentence on the defendant.

## INSTRUCTION NO. 9

You must consider each Count separately.  If, after weighing the aggravating and mitigating factors, you unanimously determine that a sentence of death shall be imposed for that Count, then the Court is required to sentence the defendant to death as to that Count.  If you unanimously determine that a sentence of life imprisonment without the possibility of release shall be imposed, then the Court is required to sentence the defendant accordingly for that Count.  If despite all reasonable efforts and after due deliberation you cannot come to unanimous agreement as to a particular Count, the Court will impose a sentence of life imprisonment without the possibility of release for that Count.

If you unanimously determine that a sentence of death shall be imposed for any Count, and I therefore impose a sentence of death as to that Count, then the defendant will be sentenced to death, even if a sentence of life imprisonment without the possibility of release is imposed on any other Count or Counts.

## INSTRUCTION NO. 10

It is your duty to discuss the issue of punishment with one another in an effort to reach agreement, if you can do so. Each of you must decide this remaining question for yourselves, but only after full consideration of the evidence with the other members of the jury. While you are discussing this matter, do not hesitate to re-examine your own opinion, and to change your mind if you become convinced that you are wrong. But do not give up your honest beliefs as to the weight or the effect of the evidence solely because others think differently or simply to conclude your deliberations.

**INSTRUCTION NO. 11**

Steven Green did not testify.  You may not attach any significance to this fact or even discuss it in the course of your deliberations.  A defendant has no obligation to testify or to present any other evidence.  There is no burden upon a defendant to prove that he should not be sentenced to death. The burden is entirely on the government to prove that a sentence of death is justified.

## INSTRUCTION NO. 12

In considering whether a sentence of death is justified, you shall not consider the race, color, religious beliefs, national origin, or gender of the defendant or of any victim. You are not to impose a sentence of death unless you conclude that you would do so no matter what the race, color, religious beliefs, national origin, or gender of the defendant or the victims may be.

Whatever sentencing decision you reach, each of you is required by law to sign a certification attesting to the fact that you have followed this Instruction. The certification is set out in Section VII of the Special Verdict Form for each Count.

## INSTRUCTION NO. 13

I have prepared a form entitled "Special Verdict Form" for each Count to assist you during your deliberations. You are required to record your decisions as to each Count on this Form.

Section I of the Special Verdict Form contains space to record your findings on the defendant's age; Section II contains space to record your findings on the requisite mental state; Section III contains space to record your findings on statutory aggravating factors. Section IV contains space to record your findings on non-statutory aggravating factors. Section V of the Special Verdict Form contains space to record your findings on mitigating factors. Section VI is where you should record your ultimate decision as to what penalty should be imposed as to each Count, and each juror should sign the form. Section VII contains the certificate relating to the right to justice without discrimination, which I have previously discussed in Instruction No. 12.

## INSTRUCTION NO. 14

I have now outlined for you the rules of law applicable to your consideration of the death penalty and the processes by which you should determine the facts and weigh the evidence. In a few minutes you will retire to the jury room for your deliberations. The first thing you should do is select a foreperson. The foreperson may be the same person that served you during the guilt phase or someone else. He or she will preside over your deliberations and will speak for you here in Court.

As I told you in the guilt phase, do not talk to the jury officer, or to me, or to anyone else, except each other, about this case. If it becomes necessary during your deliberations to communicate with me, you may send me a note through the jury officer signed by your foreperson or by one or more members of the jury. No member of the jury should ever attempt to communicate with me on anything concerning the case except by a signed writing or here in open Court. Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.

When you have concluded your deliberations for all of the Counts, advise the jury officer outside your door that you are ready to return to the courtroom. It is proper to add a final caution. Nothing that I have said in these instructions – and nothing I have said or done during the trial – has been said or done to suggest to you what I think your decision should be. What decision you reach is your exclusive duty and responsibility.

# INSTRUCTION
## Supplement to Introduction

As set forth in earlier instructions, and in the preliminary penalty phase instructions, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.  Possible doubts or doubts based purely on speculation are not reasonable doubts.  A reasonable doubt is a doubt based on reason and common sense.  It may arise from the evidence, the lack of evidence, or the nature of the evidence.

Proof beyond a reasonable doubt means proof that is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives.

A preponderance of the evidence is a lesser standard of proof under the law than proof beyond a reasonable doubt.  A factor is established by a preponderance of the evidence if its existence is shown to be more likely so than not so.  In other words, a preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, produces in your mind the belief that what is sought to be established is, more likely than not, true.